# COLLECTIVE EXHIBIT C

THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985

THE ORIGINAL OF THIS INSTRUMENT
IS IN THE POSSESSION OF
SILVERBERG, ROSEN, LEON & BEHR
ATTORNEYS-AT-LAW
LOS ANGELES, CALIFORNIA
FOR SAFEKEEPING

## ARTICLE ONE

### CREATION OF TRUST

JAY LIVINGSTON and LYNNE E. LIVINGSTON, hereinafter collectively and individually referred to as the "Settlors" or "Settlor", depending upon the context, hereby transfer and deliver to themselves, in trust, the property described in Schedule "A" attached to this instrument. As used herein, the term "Trustee" shall refer to JAY LIVINGSTON and LYNNE E. LIVINGSTON, and to any other person or entity serving as Trustee or Co-Trustee hereunder.

## ARTICLE TWO

### CHARACTER OF PROPERTY

2.1     Community Property.  Any community property transferred to this Trust and the proceeds therefrom shall remain the community property after its transfer, and shall be referred to herein as the "community estate."  The Trustee shall have no more extensive power over the community estate than either Settlor would have had under California Civil Code Sections 5125 and 5127 had this Trust not been created.  This limitation shall terminate upon the death of either Settlor.

2.2     Quasi-Community and Separate Property.  Any quasi-community property and separate property of either Settlor transferred to this Trust and the proceeds thereof shall remain quasi-community property and separate property, respectively, during the joint lifetimes of the Settlors; subject, however, to such terms and conditions of this instrument as are not inconsistent with such character, and shall be referred to as the "quasi-community estate" and the "separate estate," respectively.

05-168

Case 3:22-cv-01004-BEN-BLM   Document 1-4   Filed 07/14/22   Page 2 of 96 PageID #: 26

Collective Exhibit C

## ARTICLE THREE
### DISPOSITION OF TRUST ESTATE

All property held in trust pursuant to this instrument shall sometimes be referred to as the "Trust Estate," and shall be held, administered and distributed as provided below.

3.1 **Disposition During Joint Lifetimes of Settlors.** During the joint lifetimes of the Settlors, the Trustee shall pay to them the net income of the community estate and shall pay to each Settlor the net income of that Settlor's separate estate and quasi-community estate. At the written request of either Settlor, the Trustee shall distribute to them as their community property so much of the principal of the community estate as shall be requested; at the written request of the respective Settlor, the Trustee shall distribute to such Settlor so much of the principal of such Settlor's separate estate and quasi-community estate as shall be requested. The Settlors shall have the same duty to use community income and principal received under this Trust for the benefit of the Settlors as they would have with respect to any other community property.

3.2 **Disposition Upon Death of First Settlor.** Upon the death of the first Settlor to die (hereinafter referred to as the "Deceased Settlor"), and subject to the provisions of subparagraphs c., d., e. and f. below, the Trustee shall allocate the Trust Estate, including any additions made to the Trust Estate by reason of the Deceased Settlor's death, into two (2) separate trusts, designated the "Survivor's Trust" and the "Residual Trust".

LAW OFFICES
ROSENBERG, RUBIN, LEON & BEHR
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

a.  The Survivor's Trust shall consist of:

(1)  The Surviving Settlor's interest in the community estate;

(2)  The Surviving Settlor's separate and quasi-community estate, if any; and

(3)  The entire remaining balance of the Trust Estate, subject, however, to the adjustment described in the following sentence.  If, after taking into account all allowable deductions (other than the federal estate tax marital deduction), the unified credit, the credit for state death taxes (to the extent the use of such credit does not increase the death tax payable to any state), and the credit for prior transfers (except to the extent such credit relates to a transferor who survived the Deceased Settlor), the maximum federal estate tax marital deduction allowable in the Deceased Settlor's estate exceeds that required to result in no federal estate tax due on such estate, the amount allocated to the Survivor's Trust pursuant to this subparagraph (3) shall be reduced so as to equal the least amount of the marital deduction which will result in no federal estate tax due from the Deceased Settlor's estate.

(i)  This amount, as finally determined above, may be satisfied in cash or in kind, or partly in each, with assets eligible for the marital deduction; provided, however, that assets allocated in kind shall be deemed to satisfy this amount on the basis of their values at the date or dates of distribution to the Survivor's Trust.

(ii) In addition, the Surviving Settlor may disclaim all or a portion of the allocation to the Survivor's Trust under this subparagraph (3), pursuant to the provisions of Internal Revenue Code §2518, as amended from

05-168

LAW OFFICES
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

time to time. Any portion of this allocation to which such disclaimer by the Surviving Settlor applies shall be added to and maintained as a separate share of the Residual Trust; provided, however, that the Surviving Settlor shall have no discretionary power or authority to distribute or cause distribution of any principal of or income attributable to such disclaimed portion to any beneficiary thereunder, and all such power and authority shall vest in the Trustees other than the Surviving Settlor, in the order of priority set forth herein.

b.    The Residual Trust shall consist of the balance of the Trust Estate. Notwithstanding any of the foregoing to the contrary, any policy of life insurance on the life of the Surviving Settlor and which is contained in the Trust Estate and which constitutes the separate or quasi-community property of the Deceased Settlor shall be allocated to the Residual Trust.

c.    The Trustee may, in the Trustee's discretion, pay out of the Deceased Settlor's community, quasi-community or separate estate not appointed pursuant to subparagraph d. below, the Deceased Settlor's last illness and funeral expenses, attorneys' fees and other costs incurred in administering the Deceased Settlor's probate estate, other obligations incurred for the Deceased Settlor's support and (subject to Paragraph 7.7 below) any estate or inheritance taxes (including interest and penalties) occasioned by the Deceased Settlor's death. The Trustee may purchase real or personal property from and make loans or advancements to the personal representative of the Deceased Settlor's estate, which shall bear reasonable interest, unless waived by the Trustee, and may be secured or unsecured. The Trustee shall

05-168

LAW OFFICES
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

not be liable for any loss resulting by reason of the exercise of this discretion or the waiver of interest.

d. The Deceased Settlor may appoint by Will, specifically referring to and exercising this general power of appointment, up to the whole of the Deceased Settlor's community, quasi-community or separate estate, to such one or more persons or entities, including the Deceased Settlor's own estate, either outright or in trust, and on such terms or conditions as the Deceased Settlor may specify by such Will.

e. The Trustee shall make the following distributions as soon as practicable after the death of the Deceased Settlor. Such distributions shall be made from the Deceased Settlor's community, quasi-community or separate estate, to the extent not otherwise appointed pursuant to subparagraph d. immediately above.

(1) If LYNNE E. LIVINGSTON is the Deceased Settlor:

(a) To MIGNON EVERETT, the mother of LYNNE E. LIVINGSTON, the sum of Ten Thousand Dollars ($10,000).

(b) To MARIANNE LYALL, the sister of LYNNE E. LIVINGSTON, the sum of Five Thousand Dollars ($5,000).

(c) To ANN TORRENCE, the Settlors' housekeeper, the sum of One Thousand Dollars ($1,000).

(2) If JAY LIVINGSTON is the Deceased Settlor:

(a) To TRAVILYN LIVINGSTON, the Settlors' daughter, the sum of Five Thousand Dollars ($5,000).

(b) To LAURA FRANCIS (also known as TAMMY LIVINGSTON), the granddaughter of the Settlors, the sum of Five Thousand Dollars ($5,000).

05-168

LAW OFFICES
GREENBERG, COHEN, LEON & BEHR
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Case 3:22-cv-00517-BEN-MSB Document 1-2 Filed 07/14/22 Page 6 of 96 PageID #: 30

(c) To VERA DRAZEN, the sister of JAY
LIVINGSTON, the sum of Five Thousand Dollars ($5,000).

(d) To ANN TORRENCE, the Settlors'
housekeeper, the sum of One Thousand Dollars ($1,000).

(3) If any of the individuals named above in
this subparagraph e. should fail to survive the Deceased
Settlor (as identified in this subparagraph e.), the gift to
such deceased individual shall lapse.

f. Upon the death of the Deceased Settlor
(irrespective of the identity of the Deceased Settlor), any
and all of the Deceased Settlor's right, title and interest as
a composer of musical compositions, including but not limited
to copyrights, all composer royalties from ASCAP and other
performing rights societies, music publishers, record com-
panies, motion pictures, stage productions, television
programs, etc. and from all contracts pertaining thereto
(hereinafter collectively referred to as the "Music
Interests"), shall be allocated by the Trustee to a separate
trust to be administered herein and known as the "Music
Interests Trust", to be held, administered and distributed as
provided in Paragraph 3.7 and following of this instrument.

## ADMINISTRATION OF THE SURVIVOR'S AND RESIDUAL TRUSTS

3.3    Payments of Income to Surviving Settlor.   The
Trustee shall pay to or apply for the benefit of the Surviving
Settlor during the Surviving Settlor's lifetime, monthly or at
other convenient intervals, but in no event less frequently
than quarter-annually, the entire net income of both the
Survivor's Trust and the Residual Trust.

3.4    Discretionary Payments of Principal to Surviving
Settlor.  If the Trustee shall deem such income payments to be

LAW OFFICES
SILVERBERG, ROSEN, LEON & BEHR
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

insufficient, and subject to the restrictions set forth above in subparagraph a(3) of Paragraph 3.2 regarding the Special Trustee of the Residual Trust, the Trustee shall, from time to time, pay to or apply for the benefit of the Surviving Settlor such sums out of principal as the Trustee in the Trustee's discretion shall deem necessary for the Surviving Settlor's proper support, health and maintenance, after taking into consideration, to the extent the Trustee deems advisable, the Surviving Settlor's other income or resources, outside the Trust Estate, known to the Trustee and reasonably available for these purposes. Such payments out of principal shall be made first out of the Survivor's Trust until it is exhausted, and thereafter out of the Residual Trust, except that all or any part of such payments may be made from the Residual Trust, without exhausting the Survivor's Trust Trust, if for any reason the Trustee shall deem this advisable.

3.5 <u>Survivor's Power to Appoint Survivor's Trust.</u>

a. During the Surviving Settlor's lifetime, the Trustee shall distribute so much of the principal of the Survivor's Trust, up to the whole thereof, to such one or more persons or entities, including the Surviving Settlor and the creditors of the Surviving Settlor, and on such terms and conditions, either outright or in trust, as the Surviving Settlor shall appoint from time to time by a written instrument delivered to the Trustee.

b. On the death of the Surviving Settlor, the Trustee shall distribute the balance then remaining, if any, of the Survivor's Trust, including both principal and any accrued or undistributed income, to such one or more persons or entities, including the Surviving Settlor's own estate, and on such terms and conditions, either outright or in trust, as the Surviving

LAW OFFICES
SILVERBERG, ROSEN, LEON & BEHR
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Settlor shall appoint by a Will specifically referring to and exercising this general power of appointment. Any of the Survivor's Trust not effectively appointed by the Surviving Settlor in this manner shall be disposed of in accordance with Paragraph 3.6 below; however, the Trustee may, in the Trustee's discretion, first pay out of the Survivor's Trust not so appointed the Surviving Settlor's last illness and funeral expenses, attorneys' fees and other costs incurred in administering the Surviving Settlor's probate estate, other obligations incurred for the Surviving Settlor's support, and (subject to Paragraph 7.7 below) any estate or inheritance taxes (including interest and penalties) occasioned by the Surviving Settlor's death. The Trustee may purchase real or personal property from and may make loans or advancements to the personal representative of the Surviving Settlor's estate, which loans or advancements shall bear reasonable interest, unless waived by the Trustee, and which may be secured or unsecured, in the Trustee's discretion. The Trustee shall not be liable for any loss resulting by reason of the exercise of this discretion or waiver of interest.

3.6    **Distribution of Residual Trust Upon Survivor's Death**. On the death of the Surviving Settlor, the Trustee shall divide the entire remaining balance of the Survivor's Trust and the Residual Trust, all of which is hereafter referred to as the "Trust Estate," as follows:

a.    The Trustee shall allocate to the Music Interests Trust the interest of the Trust Estate, if any, in those composer's rights described in subparagraph f. of Paragraph 3.2 above, all of which interests shall be held and administered together with the assets thereof as provided in Paragraphs 3.8 and 3.9 below of this instrument.

LAW OFFICES

A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

b.   If MIGNON EVERETT survives the Surviving Settlor, the Trustee shall distribute to her the Trust Estate's interest, if any, in the residential real property located at 28180 Danbury Drive, Sun City, California.  If MIGNON EVERETT fails to survive the Surviving Settlor, such residence shall be distributed to H. A. EVERETT.  If neither MIGNON EVERETT nor H. A. EVERETT survive the Surviving Settlor, such residence shall be distributed, in equal shares, to TRAVILYN LIVINGSTON and LAURA FRANCIS, or to the survivor thereof if only one of them survives both Settlors.  If none of such individuals survives the Surviving Settlor, this gift shall lapse.  Should distribution of such residence be made to either MIGNON EVERETT or H. A. EVERETT, the Trustee shall pay from the assets from the Trust Estate any encumbrances of record against such property existing at the time of the death of the Surviving Settlor.  If neither MIGNON EVERETT nor H. A. EVERETT is to receive distribution of such residence pursuant to this subparagraph, then distribution of such residence shall be made subject to any encumbrances of record against such property at the time of the Surviving Settlor's death.

c.   The interest of the Trust Estate in LIVINGSTON & EVANS, INC., a Music Publishing Company, shall be distributed to TRAVILYN LIVINGSTON if she survives the Surviving Settlor.  If she does not survive the Surviving Settlor, this gift shall be distributed to LAURA FRANCIS, if she survives the Surviving Settlor.  If neither of such individuals survives the Surviving Settlor, this gift shall lapse.

d.   The Trust Estate's interest, if any, in that residential real property located at 782 Tortuoso Way, Los Angeles, California, together with all furniture and furnishings contained in such residence, shall be distributed, in equal

LAW OFFICES
SILVERBERG ROSEN LEON & BEHR
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Case 3:22-cv-00532   Document 1-3   Filed 07/14/22   Page 10 of 96 PageID #: 34

shares, to TRAVILYN LIVINGSTON and LAURA FRANCIS. If either of such individuals fails to survive the Surviving Settlor, this gift shall be distributed to such of TRAVILYN LIVINGSTON and LAURA FRANCIS as survives the Surviving Settlor. If neither of such individuals survives the Surviving Settlor, this gift shall be distributed one-half (1/2) to such of MIGNON EVERETT and MARIANNE LYALL as survive the Surviving Settlor, and one-half (1/2) to such of ALAN LIVINGSTON and VERA DRAZEN as survive the Surviving Settlor. If both of either (i) MIGNON EVERETT and MARIANNE LYALL or (ii) ALAN LIVINGSTON and VERA DRAZEN shall fail to survive the Surviving Settlor, such individuals' share of this gift shall be distributed to the other two (2) beneficiaries of this gift (or the Survivor thereof if only one (1) of the others survives the Surviving Settlor). If none of the individuals named above survives the Surviving Settlor, this gift shall lapse. This gift shall be subject to any encumbrances of record against such property at the time of the Surviving Settlor's death.

e. The Trust Estate's interest, if any, in those real properties located in Carter County, Oklahoma, and Cherokee Village, Arkansas, shall be distributed one-half (1/2) to MIGNON EVERETT, and the remaining one-half (1/2), in equal shares, to such of TRAVILYN LIVINGSTON and LAURA FRANCIS as survive the Surviving Settlor. If MIGNON EVERETT fails to survive the Surviving Settlor, the Trust Estate's entire interest in such real properties shall be distributed, in equal shares, to such of TRAVILYN LIVINGSTON and LAURA FRANCIS as survive the Surviving Settlor. If neither TRAVILYN LIVINGSTON nor LAURA FRANCIS survives the Surviving Settlor, this gift shall be distributed to MIGNON EVERETT. If none of the individuals named herein survive the Surviving Settlor, this gift shall lapse. This gift shall be

LAW OFFICES
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

subject to any encumbrances of record against such properties at the time of the Surviving Settlor's death.

    f.    There shall be distributed from the Trust Estate those gifts specified in subparagraph e. of Paragraph 3.2 above, as though the Surviving Settlor were the Deceased Settlor.

    g.    The remaining balance of the Trust Estate, after payment of or provision for the foregoing gifts made pursuant to this Paragraph 3.6, shall be distributed, in equal shares, to TRAVILYN LIVINGSTON and LAURA FRANCIS. If TRAVILYN LIVINGSTON fails to survive the Surviving Settlor, her gift shall lapse and shall augment the gift to LAURA FRANCIS pursuant to this subparagraph. If LAURA FRANCIS fails to survive the Surviving Settlor but is survived by issue who do survive the Surviving Settlor, LAURA's share of this gift (or the entire gift, if TRAVILYN LIVINGSTON fails to survive the Surviving Settlor) shall be distributed to such of her issue who survive the Surviving Settlor, by right of representation. If neither LAURA nor any of her issue survive the Surviving Settlor, this entire gift shall be distributed to TRAVILYN LIVINGSTON.

## ADMINISTRATION OF THE MUSIC INTERESTS TRUST

    3.7    **Administration During Surviving Settlor's Lifetime.** During the lifetime of the Surviving Settlor, the Music Interests Trust shall be divided into two (2) shares: the "Spousal Share" and the "Share for Issue". The Spousal Share shall consist of Eighty percent (80%) of the corpus of the Music Interests Trust; the Share for Issue shall consist of the balance of the trust. The net income from each such share of the Music Interests Trust shall be distributed monthly or in other convenient installments, but not less frequently than quarter-annually, as follows:

LAW OFFICES

a. All of the net income of the Spousal Share shall be distributed to the Surviving Settlor.

b. Fifty percent (50%) of the Share for Issue shall be distributed to TRAVILYN LIVINGSTON.

c. The remaining Fifty percent (50%) of the Share for Issue shall be distributed to LAURA FRANCIS.

d. If either TRAVILYN LIVINGSTON or LAURA FRANCIS is not then living, or should either of them die prior to full distribution of the Music Interests Trust, such deceased individual's portion of the net income of the Share for Issue shall be distributed to such deceased individual's then-living issue, by right of representation. If there are no then-living issue of such deceased individual, such individual's share of the net income shall be distributed to the Surviving Settlor.

3.8 <u>Administration Upon Death of the Surviving Settlor</u>. Upon the death of the Surviving Settlor, and thereafter, the entire net income of the Music Interests Trust shall be distributed monthly or in other convenient installments, but not less frequently than quarter-annually, as follows:

a. To MARIANNE LYALL, Five percent (5%) thereof. If MARIANNE LYALL is not then living, or should she later die, her share of the net income shall be distributed to MIGNON EVERETT, if she is then living, or if she is not then living, in accordance with subparagraph d. below of this Paragraph 3.8.

b. To MIGNON EVERETT, Five percent (5%) thereof. If MIGNON EVERETT is not then living, or should she later die, her share of the net income shall be distributed to MARIANNE LYALL, if she is then living, or if she is not then living, in accordance with subparagraph d. below of this Paragraph 3.8.

Case 3:22-cv-00522  Document 3  Filed 07/14/22  Page 13 of 96 PageID #: 37
LAW OFFICES
PROVERBERG, ROSEN, LILLON & BECKER
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

c.    To VERA DRAZEN, Five percent (5%) thereof.  If
VERA DRAZEN is not then living, or should she later die, her
share of the net income shall be distributed, in equal shares,
to ALAN LIVINGSTON and JAMES DRAZEN; provided, however, that
if either of such individuals is not then living or should he
later die, such deceased individual's share of the net income
shall be distributed to such individual or individuals as may
be appointed by such deceased individual in his Will,
specifically referring to and exercising this power of
appointment; provided, further, that if such deceased
individual fails to exercise such power of appointment, his
share of the net income shall be distributed to his issue,
living from time to time, by right of representation or, if
there are no such issue, such income shall be distributed in
accordance with the provisions of subparagraph d. immediately
below.  No such power of appointment may be exercised in favor
of the estate of the deceased individual or the creditors of
such deceased individual's estate.

d.    The remaining net income shall be distributed,
in equal shares, to TRAVILYN LIVINGSTON and LAURA FRANCIS;
provided, however, that if either of such individuals is not
then living, or should she later die, such deceased individual's
share of the net income shall be distributed to her issue
living from time to time, by right of representation;
provided, further, that if there are no such issue of such
deceased individual, such deceased individual's share of the
net income shall be distributed to the other of them or to
such other individual's issue (by right of representation) if
such other individual is also deceased.  If both of such
individuals and all of their issue are deceased or shall later
die, their share of the net income of the Music Interests

05-168

-13-

Case 3:22-cv-00522  Document 1-3  Filed 07/14/22   Page 14 of 96 PageID #: 38
LAW OFFICES
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Trust shall augment proportionally the remaining interests in net income of the various beneficiaries set forth above in this Paragraph 3.8

    3.9    <u>Termination of Trust</u>.  The Music Interests Trust shall terminate upon the death of the last to die of the Settlors, TRAVILYN LIVINGSTON, LAURA FRANCIS, MIGNON EVERETT, MARIANNE LYALL and VERA DRAZEN.  On the death of the last of such individuals, the remaining balance of this trust shall be distributed pursuant to the provisions of Paragraph 3.10 below.

    3.10.  <u>Disposition of Trust Estate Upon Prior Death of</u> <u>All</u> <u>Beneficiaries</u>.  If at any time before full distribution of the Trust Estate, the Settlors and all of their issue are deceased and no other disposition of the Trust Estate is directed by this instrument, the Trust Estate or the portion of it then remaining shall thereupon be distributed one-half (1/2) to those persons who would then be the heirs of JAY LIVINGSTON, and one-half (1/2) to those persons who would then be the heirs of LYNNE E. LIVINGSTON, the identities and respective shares of such heirs to be determined as though the deaths of each of the Settlors had then occurred and according to the laws of the State of California in effect of the date of execution of this instrument relating to the succession of separate property not acquired from a predeceased spouse, parent or grandparent.

ARTICLE FOUR

TRUST ADMINISTRATION

    4.1  . <u>Guides to Invasion of Principal</u>.  As a guide to the Trustee in the exercise of his discretion to pay to or apply for the benefit of any beneficiary hereunder the income or principal of the Trust Estate, it is the Settlors' intention that such discretion be exercised so that:

05-168

-14-

LAW OFFICES

a.   The Settlors' welfare is at all times of paramount concern.  In this connection, the Settlors further desire that any such discretion of the Trustee be exercised without regard to the extent to which any distribution or application of income or principal may result in depletion of the Trust Estate, or of the respective shares of the beneficiaries hereunder, it being their desire that at all times the lifetime and immediate needs of the beneficiaries hereunder take preference over the husbanding of principal. However, if some of such needs could, in the discretion of the Trustee, be provided for any of said beneficiaries by himself, then the Trustee shall exercise his discretion accordingly.

b.   Medical attention and psychological counseling of the highest quality be available to and given said beneficiaries, including orthodontia, psychotherapy or other corrective procedures necessary or desirable to allow them to enjoy useful and productive lives.

4.2   Segregation of Assets; Undivided Common Interests; Transactions.  Except with respect to the Music Interests Trust, there need be no physical segregation or division of the various trusts created herein except as segregation or division may be required by the termination of any of such trusts, but the Trustee shall keep separate accounts for the different individual interests in such trusts.  In this connection, the Trustee may, in the Trustee's discretion, invest and/or hold all or any of the assets of two or more of such trusts in a manner so that each such trust shall own an undivided common interest therein.   In addition, the Trustee may, in the Trustee's discretion, effect transactions between or among the various trusts, the probate estates of either or both Settlors, including but not limited to sales exchanges and loans of property.

LAW OFFICES
ROSENBERG ROSEN LEON & BRIEN
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Case 3:22-cv-00532 Document 1-3 Filed 07/14/22   Page 16 of 96 PageID #: 40

4.3    Spendthrift Provision.  No beneficiary of the Trust
Estate shall have any right, power or authority to sell, assign,
pledge, mortgage or in any other manner to encumber, alienate or
impair all or any part of such beneficiary's interest in the
Trust Estate or in the principal or income thereof.  The
beneficial and legal interest in, as well as the principal and .
income of the Trust Estate and every part of it shall be free
from the interference or control of any creditor of any
beneficiary of the Trust Estate and shall not be subject to the
claims of any such creditor nor liable for attachment, execution,
bankruptcy or other process of law.  The income and principal of
the Trust Estate shall be paid over to the beneficiary or
beneficiaries in person, or, in the event of the minority or
incompetence of any such beneficiary, to the guardian or other
personal representative of discretion, deems most advisable, at
the time and in the manner provided by the terms of the Trust
Estate, and not upon any written or oral order nor upon any
assignment or transfer by the beneficiary nor by operation of
law.

4.4    Trust's Termination.  Unless sooner terminated in
accordance with other provisions of this instrument, or the
provisions of any trust created by the exercise of any power of
appointment conferred hereunder, each trust under this instrument
and each trust created by the exercise of any such power of
appointment shall terminate twenty-one (21) years after the death
of the last survivor of the Settlors and their issue living at
the time of the Deceased Settlor's death.  All principal and
undistributed income of any trust so terminated shall thereupon
be distributed to the beneficiaries of such trust in the
proportions in which they are, at the time of termination,
entitled to receive the income.  However, if the rights to income

LAW OFFICES
ROSENBERG ROSENFELD & BEHNKE
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

are not then fixed by the terms of such trust, distribution under this paragraph shall be made, by right of representation, to such issue of the Settlors as are then entitled or authorized in the Trustee's discretion to receive income payments, or, if there are no such issue of the Settlors, in equal shares to those beneficiaries who are then entitled or authorized to receive income payments.

4.5   <u>Illegal Accumulation</u>.  If any direction for the accumulation of income of any trust or share hereunder shall be held to be void, then notwithstanding anything herein to the contrary, the income so illegally or improperly directed to be accumulated shall be paid to the beneficiary for whose benefit the affected trust or share is then held.

4.6   <u>Payments to Other than Beneficiary</u>.  In the event any payment or distribution is directed or authorized to be made hereunder to a beneficiary who is then under age eighteen (18), or whose mental or physical health is then such that in the sole opinion of the Trustee the interests of such beneficiary may be served by providing disbursement or distribution on behalf of such beneficiary through other channels, in whole or in part, other than directly to such beneficiary, the Trustee may make such payment or distribution, from time to time, in any one or more of the following ways:

a.   To the legal representative of such beneficiary; or

b.   By the Trustee expending or using the same for such beneficiary in accordance with the terms hereof.

A receipt for any such payment or distribution made pursuant to subparagraph a. above from any such recipient shall be a complete discharge of the Trustee, who shall not be required to see to the application of any money so paid.

Case 3:22-cv-00532   Document 1-3   Filed 07/14/22   Page 18 of 96 PageID #: 42
LAW OFFICES
SILVERBERG, ROSEN, LEON & BEHR
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

4.7  Duty to Inquire.  No party entering into any
transaction of any kind whatsoever with the Trustee with respect
to any of the trusts created herein shall be under any duty,
obligation or liability to inquire into the authority of the
Trustee to enter into such transaction or into the manner in
which the Trustee might dispose of the consideration received by
the Trustee in connection with such transaction.

4.8  Distribution of Trust if Uneconomical Adminis-
tration.  Notwithstanding any provision of this instrument to the
contrary, if at any time following the death of the Deceased
Settlor a share or trust being administered for any income
beneficiary or group of income beneficiaries has such fair market
value as to make continued administration of the share or trust
uneconomical as determined by the Trustee in the Trustee's sole
discretion, the Trustee may pay the entire balance of such share
or trust to the person or persons then entitled to the income
therefrom, in proportion to their interests therein, or to the
guardian, parent, person or institution having custody of such
person, or in the case of a minor, to deposit the same into a
savings account in the name of such minor, payable to such minor
upon attaining the age of eighteen (18) years.  If the right to
income is not fixed at the time the Trustee determines that the
continued administration of the share or trust would be
uneconomical, distribution under this paragraph shall be made, by
right of representation, to such issue of the Settlors as are
then entitled or authorized in the Trustee's discretion to
receive income payments, or, if there are no such issue of the
Settlors, in equal shares to those beneficiaries who are then
entitled or authorized to receive income payments.  Distribution
of the Survivor's Trust under this paragraph shall be made only
to the Surviving Settlor, or to the Surviving Settlor's guardian,

05-168

-18-

LAW OFFICES
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

conservator or other personal representative, or to such person or entity as the Surviving Settlor shall appoint by a written instrument delivered to the Trustee. Distribution of the Residual Trust or the Music Interests Trust under this provision to the Surviving Settlor shall be made only upon action of all then qualified and acting Co-Trustees other than the Surviving Settlor; if there are no such other qualified and acting Co-Trustees at such time, such distribution shall be made upon action of the next Trustee in line of succession as provided herein, who shall act as Special Trustee for this purpose only. If no such individual can qualify as such Special Trustee, then distribution of the Residual Trust or the Music Interests Trust hereunder shall be made only to the Settlors' issue, by right of representation, or, if there are no such issue, to the then living remaindermen of such trust.

4.9    Distribution Upon Exercise of Power of Appointment. The Trustee shall not be required to distribute any portion of the Trust Estate subject to a testamentary power of appointment until all state and federal inheritance and estate taxes attributable to the exercise or non-exercise of such power of appointment have been paid and adequate proof of payment has been delivered to the Trustee. The Trustee may deliver the portion of the Trust Estate subject to such testamentary power of appointment prior to payment in full of such taxes, but in such event the Trustee may withhold a sufficient reserve for the payment of such taxes or may first require adequate security for the payment thereof to be delivered to the Trustee by the person to whom such property is distributable. The amount and nature of any such reserve or security shall be determined by the Trustee, in the Trustee's sole discretion. The Trustee shall incur no liability to any beneficiary of this Trust, nor to any other

LAW OFFICES
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

individual or entity, whether in being or not, if (i) the Trustee shall distribute the property subject to such power of appointment in accordance with any Will of the holder of such power of appointment admitted to probate within ninety (90) days following the death of such holder, which Will exercises such power, or (ii) if the Trustee shall distribute such property to the takers in default of exercise of such power of appointment if no such Will shall be admitted to probate within said ninety (90) days or if such Will fails to exercise such power.

4.10    Distributions from Employee Benefit Plans.
Notwithstanding any provision in this instrument to the contrary, the Trustee of the Trust Estate is prohibited from expending for the benefit of the estate of either Settlor any property, whether cash or otherwise, that the Trustee might receive in his capacity as Trustee of the Trust Estate, from any pension, stock bonus or profit sharing plan which meets the requirements of Section 401(a) of the Internal Revenue Code, as amended from time to time, and which qualifies for the federal estate tax exclusion under Section 2039 of such Code.

4.11    Definitions. Each reference in this instrument:

a.    To the children or issue of any person, including the Settlors, refers only to lawful issue and lawfully adopted children of such person, including, unless specifically excluded, any children born or adopted after the date of execution of this instrument.

b.    To education of a beneficiary is intended to include vocational training, college and post-graduate study, so long as pursued to advantage by the beneficiary at an institution of the beneficiary's choice; and in determining payments to be made for such vocational training, college or post-graduate

05-168

-20-

study, the Trustee shall take into consideration the beneficiary's related living and commuting expenses to the extent that they are reasonable.

## ARTICLE FIVE
### GENERAL TRUSTEE PROVISIONS

5.1 **Appointment of Successor Trustees.** Upon the death, disqualification or failure to act of either JAY LIVINGSTON or LYNNE E. LIVINGSTON, the remaining individual shall serve as sole Trustee. If both JAY LIVINGSTON and LYNNE E. LIVINGSTON shall cease to act for any reason, GARY KRESS shall serve as successor Trustee. If GARY KRESS fails to qualify or ceases to act as Trustee, BRIAN MURPHY shall serve as successor Trustee. If all of the above-named individuals fail to qualify or cease to act, CITY NATIONAL BANK shall serve as successor Trustee.

5.2 **No Bond.** No bond shall be required of any person named as Trustee in this instrument, whether acting jointly or severally in the performance of duties as a Trustee here under, and whether any person named as Co-Trustee with such person shall be qualified and acting.

5.3 **Successor Trustee.** No successor Trustee or Co-Trustee shall be liable or responsible for any losses or expenses resulting from or occasioned by anything done or neglected to be done in the administration of any trust created herein prior to the date of acceptance of appointment of such Trustee. Moreover, no successor Trustee or Co-Trustee shall be charged with the responsibility for examining or looking into the actions of any predecessor hereunder.

5.4 **Resignation of Trustee.** Any Trustee may resign at any time by giving thirty (30) days' written notice to all the qualified and acting Trustees, or, if there are none, to all of

LAW OFFICES
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

the adult, competent, income beneficiaries and the guardians, conservators or other personal representatives of all incompetent or minor income beneficiaries of all trusts created herein at the last known address of such beneficiaries or legal representatives thereof. Any such resigned Trustee shall be discharged from all further liability upon the approval of such resigned Trustee's final report and account.

5.5    Vacancy.  In the event any Trustee or Co-Trustee hereunder fails to qualify or ceases to act for any reason whatsoever, and if there is no provision herein for such eventuality, then a majority of the remaining qualified and acting Co-Trustees or, if only one Trustee is then qualified and acting, said qualified and acting Trustee, shall fill such vacancy by either appointing a new Trustee or Co-Trustee or by petitioning such Court that shall have jurisdiction over this instrument for the appointment of new Trustee.  If there shall be no other qualified and acting Trustee, said vacancy shall be filled in the manner specified above by a majority of the class composed of the adult, competent income beneficiaries and the guardians, conservators, and personal representatives of all incompetent adult or minor income beneficiaries and the guardians, conservators, and personal representatives of all incompetent adult or minor income beneficiaries of the trust in which the vacancy occurs.  If a corporate Trustee shall fail to qualify or cease to act, the vacancy so arising shall be filled only by another corporation, bank or trust company authorized to do business as a corporate fiduciary and having assets of no less than $50,000,000.

5.6    Removal of Corporate Trustee.  Any corporate Trustee or Co-Trustee of any trust hereunder may be removed and a new corporate Trustee authorized to do business as a corporate

LAW OFFICES
GREENBERG GLUSKER ROBERT LEON J.
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

fiduciary and having assets of no less than $50,000,000 may be appointed by a majority in percentage interest of all income beneficiaries of such trust, or if rights to income have not been fixed, by a majority in number of all permissible income beneficiaries of such trust. The guardian, conservator or other personal representative of any adult or minor income beneficiary may exercise the power granted to such income beneficiary in this paragraph. When the removed corporate Trustee or Co-Trustee has received notice of its removal and has been notified in writing by its successor of the latter's acceptance of appointment, the removed corporate Trustee shall forthwith surrender to the remaining Co-Trustee or Co-Trustees, if any, or to the successor corporate Trustee, as the case may be, all books, records and assets in possession of the removed corporate Trustee and comprising all or a portion of the affected trust or relating thereto, and shall be discharged of all further liability upon rendering his final report and account in the manner specified herein.

5.7   <u>Notice to Trustee of Births, Etc</u>.  Until the Trustee shall receive written notice of any birth, marriage, death or other event upon which the right to payments from the Trust Estate may depend, the Trustee shall incur no liability to persons whose interests may have been affected by that event for disbursements made in good faith.

5.8   <u>Annual Accounting</u>.  The Trustee hereunder shall render an account of the Trustee's administration of each trust created hereunder at least once each year, unless such account is waived in writing by all living beneficiaries of such trust, or their respective legal representative. Said account shall be furnished to each beneficiary in being of each said trust, or to any such beneficiary's legal representative, as the case may be; provided,

LAW OFFICES
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Case 3:22-cv-00522  Document 1-3  Filed 07/14/22  Page 24 of 96 PageID #: 48

however, that said account need not be submitted to any Court obtaining jurisdiction over said trust for approval thereof, unless desired by the Trustee, requested by any such beneficiary or directed by Court Order or applicable law. A beneficiary's written approval or waiver of such account shall, as to all matters and transactions stated therein, or shown thereby, be final and binding upon that beneficiary and all of his successors in interest. A beneficiary may, if warranted in light of the circumstances, request the Trustee to render an account more often than once per year, upon which reasonable request the Trustee shall render such interim account.

## ARTICLE SIX

### POWERS OF TRUSTEE

Unless specifically provided to the contrary in any other provision of this instrument, the Trustee is vested with, in addition to those powers now or hereafter conferred by law, the following powers with respect to any and all trusts created by this instrument.

6.1     Retention of Trust Property.  To retain, without liability for loss or depreciation resulting from such retention, any assets received by the Trustee or any property that may from time to time be added to the Trust Estate or any trust created hereunder; or any property in which the funds of any trust may from time to time be invested, for such time as the Trustee shall deem best, even though such property may not be of the character prescribed by law for the investment of trust funds, or even though to retain such property might violate sound diversification principles, or even though such property may represent a large percentage of the total property of the Trust Estate.  However, the aggregate property contained in the Trust

05-168

LAW OFFICES

Estate which has qualified for the federal estate tax marital deduction shall bear a reasonable rate of return unless the Surviving Settlor shall otherwise agree in writing. If the Surviving Settlor shall, by written instrument delivered to the Trustee, direct the Trustee to convert non-income-producing property held in the Trust Estate to income-producing property, the Trustee shall comply with the direction within a reasonable time after its receipt.

6.2 _Invest and Reinvest_. Subject to the following provision concerning consultation with the beneficiaries, to invest, reinvest, change investments and keep the Trust Estate invested in any kind of property, real, personal, or mixed, including by way of illustration but not limitation, oil and gas royalties and interests; common and preferred stocks of any corporation, whether closely or widely held, including stock or other securities of or any interest in any corporation or other business venture or any related affiliated or subsidiary corporation or business venture which is acting as Trustee hereunder; voting trust certificates, bonds, notes, debentures, mortgages, shares, or interests in investment trusts, mutual funds or common trust funds, including such funds administered by the Trustee; interests in partnerships, whether limited or general and as a limited or general partner; and joint stock companies and associations, without regard to the proportions that any such investment or investments of a similar character may bear to the total Trust Estate or whether or not such investments are in new issues or are in new or foreign enterprises and without being limited to the classes of investments which the Trustee is or may be authorized by statute or rules or decisions of Court to invest trust funds; intending hereby to authorize the Trustee to act in such manner as the

LAW OFFICES
OYERBERG, ROSEN, LEON & BEHR
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATION

Case 3:22-cv-00050-TMB Document 1-1 Filed 07/14/22 Page 26 of 96 PageID #: 50

Trustee shall believe to be in the best interests of the Trust
Estate and the beneficiaries thereof. I request, but do not
direct, that prior to making any investments on behalf of the
Trust Estate in assets other than federally insured bank or
savings and loan deposits or federally-banked securities, the
Trustee consult with the beneficiaries of the Trust for which the
proposed investment is to be made.

6.3    Management of Trust Businesses.    To hold and operate
at the risk of the Trust Estate and not at the risk of the
Trustee, any business, partnership interest or capital stock of
any corporation, including closely-held corporations, received or
acquired by the Trustee, as long as the Trustee may deem
advisable, the profits and losses to inure or be chargeable to
the Trust Estate and not the Trustee; and in connection with such
operation, to incorporate such business or operate it as a
partnership, limited or general, or in any other form of
organization which the Trustee deems appropriate.

6.4    Manage and Control.    To manage, control, sell at
public or private sale, convey, exchange, partition, divide,
allot, subdivide, improve, repair; to grant options and to sell
upon deferred payments; to pledge or encumber by mortgage or deed
of trust or any other form of hypothecation; to otherwise dispose
of the whole or any part of the Trust Estate on such terms and
for such property or cash or credit, or any combination thereof,
as the Trustee may deem best; to lease for terms within or
extending beyond the duration of the Trust Estate for any
purposes, including leases of real property for up to ninety-nine
(99) years, for the purpose of exploration for and development of
and removal of gas, oil, minerals and other substances; to enter
into community leases; to create restrictions, easements,
servitudes; to compromise, arbitrate, or otherwise adjust claims

05-168

LAW OFFICES
SILVERBERG, ROSEN, LEON, & BEHR
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

in favor of or against the Trust Estate; to institute, compromise and defend actions and proceedings with respect to the Trust Estate; and to secure such insurance, at the expense of the Trust Estate, as the Trustee may deem advisable.

6.5   Loans.  To borrow for the Trust Estate from any person, corporation or other entity, including the Trustee or any related, affiliated or subsidiary corporation or business venture of the Trustee at such rates and upon such terms and conditions as such Trustee shall deem advisable, and to pledge as security therefor any of the assets of the Trust Estate for the benefit of which such loan is made; to execute, acknowledge and deliver bonds, mortgages, and deeds of trust, extensions of agreements, participation agreements, assignments of mortgages or deeds of trust or other documents incidental thereto; to lend money upon such terms and such conditions as the Trustee deems to be in the best interests of the Trust Estate and the beneficiaries thereof, including the lending of money from one trust to another trust created hereunder, and to borrow on behalf of one trust from any other trust created hereunder, and further including the right to lend money to the Trustee or to any related, affiliated or subsidiary corporation or business venture of the Trustee, but in such event such loans shall be adequately secured and shall bear the then prevailing rate of interest for loans to such persons or entities for the purposes contemplated.

6.6   Securities.  With respect to any corporation or partnership, the stocks, bonds or other securities of which, or interests in which may form a part of the Trust Estate:

a.   To vote in person or in proxy;

b.   To consent to the merger, consolidation, reorganization or dissolution of any of such corporations, or to the termination of any of such partnerships, or to the

05-168

-27-

LAW OFFICES
GRUENBERG HOLZER LEON & BERGE
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Case 3:22-cv-00532-DCN-Document 1-3 Filed 07/14/22 Page 28 of 96 PageID #: 52

modification or amendment of any partnership agreement or corporate organization document;

   c.   To consent to the leasing, mortgaging or sale of any property of such corporation or partnership;

   d.   To surrender, exchange or substitute stocks, bonds, or other securities as an incident to the merger, consolidation, recapitalization or dissolution of any of such corporations;

   e.   To pay all assessments, subscriptions and other sums of money which the Trustee may deem wise and expedient for the protection and maintenance of the proportionate interest of the Trust Estate in said corporations or partnerships;

   f.   To enter into agreements making the Trust Estate liable for a pro rata share of the liabilities of any corporation which has been dissolved and in which stock is held by the Trust Estate, when in the opinion of the Trustee such action is necessary to the plan of liquidation of any such corporation;

   g.   To exercise any option or privilege which may be conferred upon the holders of such stocks, bonds, or other securities, either for the exchange or conversion of the same into other securities or for the purchase of additional securities, and to make any and all payments which may be required in connection therewith;

   h.   To join in the creation, modification, cancellation of any voting trust, or any restrictive purchase or retirement agreement relating to any partnership interest or corporate stocks;

   i.   To take any other action with respect to such corporation or partnership which the Trustee, in the Trustee's discretion, deems necessary and proper to protect and further the interests of the Trust Estate and the beneficiaries thereof, and

05-168

LAW OFFICES
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

in so doing to exercise any and all powers which may otherwise be granted to the legal owner of any such corporate stock or partnership interest.

6.7    Insurance.   To purchase insurance on the life of any beneficiary hereunder, or health and accident insurance for such beneficiary, from reputable insurance companies, and to pay the premiums therefor from the principal of the Trust Estate. Subject to the powers granted to the Trustee under subparagraphs a. and b. below, the beneficiary of each such policy shall be the trust of which the insured is the income beneficiary.

a.    With respect to any policy of insurance on the life of any person which may form a part of the Trust Estate, to exercise and enjoy for the purpose of the Trust Estate as absolute owner of such policy or policies, any benefits, rights and privileges under such policies, including, but not limited to, the right to borrow upon and pledge such policies for a loan or loans, to surrender them for their cash surrender value, or to surrender or join in the surrender of such policies for predated policies having an aggregate value equal to the policies at surrender.   Furthermore, the Trustee shall not be required to pay any premiums or other assessments on any such life insurance policy which are required to maintain it as a binding insurance contract.   In the case of any such non-payment, however, which results in the cessation of the policy as binding insurance contract, the Trustee shall see to it that any and all rights of the Trust Estate in and to such policy shall be preserved and protected in a manner consistent with the provisions of this paragraph.

b.    Notwithstanding any provision in this Paragraph 6.7 to the contrary, no individual acting as a Trustee hereunder shall have any authority to exercise any of the powers granted

LAW OFFICES
Case 3:22-cv-00563-DKW-KDG ERSE DOCUMENT 6-3 Filed 07/14/22   Page 30 of 96 PageID #: 54
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

herein with respect to any policy of life insurance on such individual's life. All such authority with respect to any such life insurance policy or policies shall be exercised by the then qualified and acting Co-Trustees of the Trust Estate, if any. If there is no Co-Trustee then qualified and acting, such authority shall be vested in the next successor Trustee appointed or nominated herein who, for purposes of this paragraph only, shall act as a Special Trustee hereunder. The authority granted herein to the remaining Co-Trustee or Co-Trustees or to the Special Trustee, as the case may be, with respect to such policies of life insurance, shall include but not be limited to the power to designate the beneficiary or beneficiaries of such life insurance policy, the power to pay premiums, charges or other assessments thereon, and the power to select the method under which the proceeds of such life insurance policy are to be paid.

      c.   Upon receipt of proof of death of the insured under any policy of life insurance contained in the Trust Estate, the Trustee shall use reasonable efforts to collect all sums payable under said policy. All sums so received shall become part of the principal of the Trust Estate, except for interest paid by the insured which shall be added to income. All such sums shall be held, administered and distributed in accordance with the provisions of ARTICLE THREE above. In connection with such life insurance policies, the Trustee shall have full power to compromise, arbitrate, or otherwise adjust any claim, dispute or controversy arising under any such policy, and shall have the authority to initiate, defend, settle and compromise any legal proceeding necessary in the Trustee's opinion to collect the proceeds of any such policy. The Trustee's receipt to any insurer for the insurance proceeds under such policy shall be considered in full discharge of the insured's liability to the

LAW OFFICES
OVERBERG, ROBERTS, LEON & BERK
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Trust Estate and the insurer shall not be under any duty to
inquire into the disposition of application of policy proceeds.

6.8    Nominee Name.  To hold any or all of the property
comprising the Trust Estate, including real property, stocks,
bonds, or other securities or interests therein, in the Trustee's
or a nominee's name and to take and keep any or all of such
stocks, bonds or other securities in unregistered form and retain
them or any of them in such condition that ownership shall pass
by delivery.

6.9    Professional Assistance.  To employ and compensate
agents, managers, investment counselors, brokers, attorneys,
accountants, and other assistants deemed by the Trustee to be
reasonably necessary for the administration of the Trust Estate,
and the Trustee shall not be liable for any losses occasioned by
the good faith employment of such agents, managers, investment
counselors, brokers, attorneys, accountants and other assistants,
nor shall the Trustee be liable for any losses occasioned by any
actions taken by the Trustee in good faith reliance upon any
advice or recommendation thereof; to pay all costs, taxes, and
charges in connection with the administration of the Trust
Estate; and to be reimbursed for all reasonable expenses,
including attorneys' fees, incurred in the management and
protection of the Trust Estate and to pay himself and his agents,
managers, investment counselors, brokers, attorneys, accountants
and other assistants a reasonable fee prior to court approval
thereof. Any such payment by the Trustee of such fees shall be
out of principal or income, as the Trustee may elect, or
partially out of each.  The discretion of the Trustee to pay
these expenses from income or principal, or partially from each,
may be exercised not only in the interests of the Trust Estate
but for the benefit of any beneficiary thereof; subject, however,

05-168

-31-

LAW OFFICES
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

to the Trustee's fiduciary obligation to treat income beneficiaries and remaindermen equitably.

6.10    Divisions and Distributions.  In any case in which the Trustee is required, pursuant to the provisions of any trust created herein, to divide any trust property into parts or shares for the purpose of distribution, or otherwise, to make the division and distribution (pro rata or otherwise) in kind, including undivided interests in any property, or partly in kind and partly in money, and for this purpose to make such sales of trust property as the Trustee may deem necessary, and on such terms and conditions as the Trustee shall deem fit, and to determine the relative value of the securities or other properties so allotted or distributed.  The Trustee's determination of values and of the property for such distribution shall be conclusive.  The decision of the Trustee in distributing assets in reliance on this paragraph shall be binding, and shall not be subject to challenge by any beneficiary hereunder.

6.11    Tax Elections.  To determine what elections under federal and/or state income tax laws are expedient or proper, and to make such elections and to decide what adjustments between the interests of the beneficiaries of the Trust Estate are appropriate or proper in light of such elections, and to make such adjustments.

6.12    Bonds; Premium Amortization.  To purchase any government bonds and to pay such premiums in connection therewith as the Trustee deems advisable; provided, however, that any such premium shall be repaid to principal out of the interest on the bond and, to the extent necessary, out of the proceeds from the sale or other distribution of such bond.

6.13    Bank Accounts.  To open and maintain bank accounts in the name of the Trustee with any bank, trust company or savings

05-168

LAW OFFICES
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Case 3:22-cv-00892-RBM-DDL   Document 1-2   Filed 07/14/22   Page 33 of 96 PageID #: 57

and loan association authorized and doing business in any State of the United States of America. If more than one Trustee shall be acting, the Trustees may designate one or more of them to conduct banking activities and to make deposits, withdrawals and endorsements upon giving written notice of such designation to the bank, trust company, or savings and loan association in question; and such bank, trust company or savings and loan association shall be protected in relying upon such designation.

6.14 <u>Principal and Income</u>. Except as otherwise specifically provided herein, the determination of all matters with respect to what is principal and income of the Trust Estate and the appropriation and allocation of receipts and expenses between these accounts shall be governed by the provisions of the California Revised Uniform Principal and Income Act from time to time existing. Any such matter not provided for herein, or in the California Revised Uniform Principal and Income Act shall be determined by the Trustee in the Trustee's discretion; subject, however, to the Trustee's fiduciary obligation to treat income beneficiaries and remaindermen on an equitable basis.

6.15 <u>General Powers</u>. To do any and all other acts necessary, proper or desirable for the benefit of the Trust Estate and its beneficiaries, and to effectuate the powers conferred upon the Trustee hereunder.

ARTICLE SEVEN

MISCELLANEOUS PROVISIONS

7.1 <u>Trust Situs</u>. This Trust shall be administered in the State of California and in all respects shall be governed by the laws of the State of California.

7.2 <u>Acceptance of Trust</u>. The Trustee hereby accepts the Trust created by this Agreement and agrees to carry out the provisions hereof on his part according to the best of his

LAW OFFICES
SILVERBERG, ROSEN, LEON & BEHR
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Case 3:22-cv-01056-JO-MSB   Document 1-2   Filed 07/14/22   Page 34 of 96 PageID #: 58

ability, but no Trustee shall be responsible for any mistake in judgment or for any decrease in value of or loss to the Trust Estate or for any cause whatever except his own bad faith or gross negligence.

7.3    Limitation of Fiduciary Power.  Notwithstanding any provision in this instrument to the contrary, any duty or power (including discretionary powers) granted to the Trustee hereunder shall be absolutely void to the extent that the right to perform such duty or exercise such power or the performance or exercise thereof would in any way cause the estate of the Deceased Settlor to lose all or any part of the tax benefit afforded by the marital deduction provisions under either federal or state laws.

7.4    Amendment and Revocation.  During the joint lifetimes of the Settlors, this Trust may be revoked in whole or in part with respect to the community estate by an instrument in writing signed by either Settlor and delivered to the Trustee and the other Settlor, and with respect to the quasi-community estate and the separate estate by an instrument in writing signed by the Settlor who contributed the property to the Trust, delivered to the Trustee.

a.    On revocation with respect to the community estate, the Trustee shall promptly deliver to the Settlors all of the designated portion of the community estate, which shall continue to be the community property of the Settlors.

b.    On revocation with respect to the quasi-community estate or the separate estate, the Trustee shall promptly deliver to the contributing Settlor all or the designated portion of that estate.

c.    If this instrument is revoked with respect to all or the major portions of the assets subject to the instrument, the Trustee shall be entitled to retain sufficient assets

LAW OFFICES
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Case 3:22-cv-00633-BEN-DDL   Document 1   Filed 07/14/22   Page 35 of 96 PageID #: 59

reasonably required to secure payment of liabilities lawfully incurred by the Trustee in the administration of this Trust, including Trustee's fees that have been earned, unless the Settlor shall indemnify the Trustee to the Trustee's satisfaction against loss or expense.

        d.    On the death of the Deceased Settlor and thereafter, the Surviving Settlor shall have the power to amend, revoke, or terminate the Survivor's Trust, but the Residual Trust and the Music Interests Trust may not be amended, revoked or terminated. On revocation or termination of the Survivor's Trust, all of its assets shall be delivered to the Surviving Settlor.

        e.    On the death of the Surviving Settlor and thereafter, no trust created hereunder may be amended, revoked or terminated.

        f.    This Trust may not be amended during the joint lifetimes of the Settlors without the written agreement of both of them.

    7.5    <u>Miscellaneous</u>.

        a.    As used in this instrument, the masculine, feminine or neuter gender, and the singular or plural number, shall be deemed to include the others whenever the context so indicates.

        b.    Article headings in this instrument are inserted for convenience only, and are not to be considered in the construction of the provisions hereof.

LAW OFFICES
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

7.6 <u>No Contest</u>. In the event that any beneficiary of any trust created hereunder shall, alone or in conjunction with any other person or persons, contest in any court the validity of any such trust, or seek to obtain an adjudication in any proceeding in any court that any trust created hereunder or any provision thereof is void, then the right of such person to take any interest given to such person by such trust shall be terminated and shall be treated as if such person had predeceased the date of execution of this instrument without surviving issue. Nothing in this Paragraph shall be construed as preventing any person from renouncing or disclaiming any part of any gift to him under this instrument. The Trustee is hereby authorized to defend at the expense of the Trust Estate any contest or other attack upon any trust created hereunder or any provisions hereof.

7.7 <u>Payment of Death Taxes</u>. Except as otherwise specifically provided in this instrument or in the Will of the decedent Settlor, all inheritance, estate or other death taxes, duties, charges or assessments, together with interest and penalties thereon, that may by reason of the death of the Deceased Settlor be attributable to the Trust Estate or any portion of it, shall be paid by the Trustee from the assets allocated to the Residual Trust, without adjustment among the beneficiaries thereof, and shall not be charged against or collected from any beneficiary of the Trust Estate. Any such taxes, duties, etc. which may arise as a result of the death of the Surviving Settlor and which are attributable to the Trust Estate or any portion of it, shall be paid by the Trustee and shall be charged against the Survivor's Trust, without adjustment among the beneficiaries thereof, and shall not be charged against or collected from any beneficiary of the Trust Estate.

LAW OFFICES
SILVERBERG, ROSEN, LEON & BEHR
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

This Trust shall be known as THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985.

EXECUTED at _Los Angeles_ , California this _28th_ day of _August_ , 1985.

_____
JAY LIVINGSTON

_____
LYNNE E. LIVINGSTON

"SETTLOR"

_____
JAY LIVINGSTON

_____
LYNNE E. LIVINGSTON

"TRUSTEE"

STATE OF CALIFORNIA     )
                        )  SS.
COUNTY OF LOS ANGELES   )

On _August 28, 1985_ before me, the undersigned, a Notary Public in and for said County and State, personally appeared JAY LIVINGSTON and LYNNE E. LIVINGSTON, known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the within instrument and acknowledged to me that they executed the same.

WITNESS my hand and official seal.



OFFICIAL SEAL
NANCE HELLNER
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My comm. expires AUG 29, 1986

_____
NOTARY PUBLIC in and for
said County and State

05-168

-37-

LAW OFFICES
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

SCHEDULE "A"

All right, title and interest of the Settlors in each and every of their assets, whether real or personal, are hereby transferred and assigned to THE JAY AND LYNNE E. LIVINGSTON TRUST OF 1985.

Dated: August 28, 1985

_____
JAY LIVINGSTON

_____
LYNNE E. LIVINGSTON

LAW OFFICES
SILVERBERG, ROSEN, LEON & BEHR
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

THE TWELFTH AMENDMENT AND RESTATEMENT OF

THE SURVIVOR'S TRUST CREATED UNDER

THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985

# THE TWELFTH AMENDMENT AND RESTATEMENT OF

## THE SURVIVOR'S TRUST CREATED UNDER

## THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985

### INDEX

| Article | Heading | Page |
|---------|---------|------|
| ARTICLE ONE | Establishment of the Trust | 1 |
| ARTICLE TWO | Declarations Regarding Family | 2 |
| ARTICLE THREE | Successor Trustees | 3 |
| ARTICLE FOUR | Distribution of Income and Principal During My Lifetime | 6 |
| ARTICLE FIVE | Distribution After My Death | 7 |
| ARTICLE SIX | Taxes | 16 |
| ARTICLE SEVEN | Powers of the Trustee | 18 |
| ARTICLE EIGHT | Administrative Provisions | 28 |
| ARTICLE NINE | Further Provisions Regarding the Trustee | 32 |
| ARTICLE TEN | Amendment and Revocation | 37 |
| ARTICLE ELEVEN | General Provisions | 38 |

## THE TWELFTH AMENDMENT AND RESTATEMENT OF
## THE SURVIVOR'S TRUST CREATED UNDER
## THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985

JAY LIVINGSTON as Settlor hereby amends and restates the SURVIVOR'S TRUST created under THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985, dated August 28, 1985, in its entirety as follows, pursuant to the power of amendment retained by the Settlor in Paragraph 1 of ARTICLE TEN of THE FIFTH AMENDMENT TO AND COMPLETE RESTATEMENT OF THE SURVIVOR'S TRUST CREATED UNDER THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985, signed on June 20, 1995. All provisions of the SURVIVOR'S TRUST created under THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985 (and all prior amendments) which are not restated in this Amendment are revoked.

## ARTICLE ONE
## ESTABLISHMENT OF THE TRUST

JAY LIVINGSTON as Settlor, and JAY LIVINGSTON and GARY KRESS, serving together as Co-Trustees (the "Trustee"), agree as follows:

1. **Introduction.** The words "I", "me", "my", and "myself" **refer to** JAY LIVINGSTON, the Settlor. The word "Trust" means the SURVIVOR'S TRUST created under THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985.

2. **Transfer of Assets.** I transferred to the Trustee the assets described on Schedule A attached to the end of this agreement without consideration from the Trustee. All of those

assets shall be deemed to have come from my separate property.
Those assets and any other assets transferred by me to the
Trustee (the "Trust assets") shall be held, administered and
distributed as provided in this Agreement.  I shall have the
right, at any time or times, to add assets which are acceptable
to the Trustee.

      3.   **No Contracts**.  I have not entered into a contract
to make a trust or a contract to refrain from revoking this
Trust.

**ARTICLE TWO**

**DECLARATIONS REGARDING FAMILY**

      I am married to SHIRLEY LIVINGSTON and all references
to "my Spouse" are to her.  We have no children of our marriage.
I have one child from my prior marriage to LYNNE LIVINGSTON
("LYNNE") namely, TRAVILYN LIVINGSTON ("TRAVILYN"), and TRAVILYN
has one child, namely, TAMMY LYNNE ANDRIES ("TAMMY").  I have no
other children or grandchildren, living or deceased.

CONTINUED ON NEXT PAGE

NEXT PAGE IS -3-

## ARTICLE THREE
## SUCCESSOR TRUSTEES

1. **Trustee**. If I am unable or unwilling to continue to serve as Co-Trustee, GARY KRESS shall serve as sole Trustee. If GARY KRESS is unable or unwilling to continue to serve, then BRIAN MURPHY shall serve in his place. If BRIAN MURPHY is unable or unwilling to serve, or to continue to serve, then CITY NATIONAL BANK, Beverly Hills, California, shall serve with me as a Co-Trustee or as sole Trustee, as the case may be.

2. **Co-Trustees May Act Alone**. During any time that GARY KRESS and I are serving together as Co-Trustees, either of us may exercise all of the powers granted to the Co-Trustees and the signature of either of us shall be sufficient to bind this Trust, any Co-Trustees and all beneficiaries. The powers which either Co-Trustee may exercise without the joinder of the other include, but are not limited to, banking, including both deposits and withdrawals of trust funds; execution of contracts, loans, either by or for the benefit of this Trust, deeds, deeds of trust, and mortgages; and sales or exchanges of Trust assets, including real, personal or mixed property, stocks, bonds and other securities with respect to any corporation, whether privately held or publicly traded; as well as the execution of any other documents reasonably necessary to the exercise of any of the powers granted the Trustee. Any third party dealing with either of us serving as Co-Trustee shall be fully protected in relying on the signature of that Co-Trustee.

3. **Power to Designate Successors**. Notwithstanding the provisions of Paragraph 1 of this Article, while an

THE TWELFTH AMENDMENT AND RESTATEMENT OF THE SURVIVOR'S TRUST
CREATED UNDER THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985

Case 3:22-cv-00532   Document 1-3   Filed 07/14/22   Page 44 of 96 PageID #: 68

individual named to serve as Trustee in Paragraph 1 is so
serving, he may designate successors to himself and may change
his designations. If an individual Trustee designates more than
one successor to serve concurrently, those successors shall
share, equally, the single vote of the individual Trustee they
succeed.

      4. **Notice of Designation and Change of Designation**.
The power to designate Trustees and change designations for a
trust shall be exercised by written instrument delivered at the
time of the exercise to all then serving Trustees of that trust
and all successor Trustees of that trust named in the preceding
provisions of this Article or designated to serve. The written
acceptance by an individual or entity of the office of Trustee
shall be delivered at the time of acceptance to each beneficiary
entitled to current income distributions or, if there is no
current income beneficiary, to each beneficiary eligible to
receive current distributions out of income or principal in the
discretion of the Trustee. If any person entitled to receive
notice is a minor or is under any other disability, the notice
shall be delivered to that person's parents or the guardian of
his or her person (if the person is a minor) or to the guardian
or conservator of his or her person (if the person is under any
other disability).

      5. **Musical Interests Trustee**. Notwithstanding
anything to the contrary in this Agreement, my Musical Interests
(as defined in Paragraph 4 of ARTICLE FIVE) shall be administered
by my Musical Interests Trustee. My Musical Interests shall in
all other respects be administered and distributed in the same
manner as the other assets of my Trust. I appoint SHIRLEY
LIVINGSTON, as my Musical Interests Trustee. If SHIRLEY

LIVINGSTON is unable or unwilling to serve, or to continue to
serve, I appoint TRAVILYN LIVINGSTON to serve in her place. If
TRAVILYN LIVINGSTON is unable or unwilling to serve, or to
continue to serve, I appoint RANDY TALMADGE to serve in her
place, and if there is a further vacancy, TAMMY LYNNE ANDRIES
will serve as my Musical Interests Trustee. The Musical
Interests Trustee shall have the powers set forth in Paragraph 23
of ARTICLE SEVEN.

     6.   **Special Trustee**.  Under the terms of this Trust,
in certain cases where a beneficiary is also serving as a Trustee
and holds certain powers or discretions which could create
adverse tax results, those powers or discretions are instead
vested in a "Special Trustee" (as defined in Paragraph 8 of
ARTICLE FOURTEEN.  Also, where specifically stated in this
Agreement, certain other powers or discretions are vested in the
Special Trustee.

     7.   **No Bond**.  No individual who serves as a Trustee
shall be required to give or post any bond or undertaking to
insure the faithful performance of his or her duties as Trustee,
whether acting as Co-Trustee, sole Trustee or as Special Trustee.

CONTINUED ON NEXT PAGE

NEXT PAGE IS -6-

*THE TWELFTH AMENDMENT AND RESTATEMENT OF THE SURVIVOR'S TRUST
CREATED UNDER THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985*

-5-

Case 3:22-cv-00532   Document 1-3   Filed 07/14/22   Page 46 of 96 PageID #: 70

## ARTICLE FOUR
### DISTRIBUTION OF INCOME AND PRINCIPAL DURING MY LIFETIME

1.    **Distributions During Lifetime**.  During my
lifetime, the Trustee shall pay to me or apply for my benefit as
much of the income and principal of the Trust assets as the
Trustee shall, in the Trustee's sole discretion, determine to be
necessary for my comfort, health, support and maintenance.  Any
income not so distributed shall be accumulated and added to the
principal of the Trust assets.

2.    **Rights of Occupancy**.  I shall also have the right
to occupy any real property owned by this Trust and to use the
furniture and furnishings located therein, without paying rent.
During the joint lifetimes of my Spouse and me, as long as we are
married and living together, the Trustee shall also permit my
Spouse to occupy, without paying rent, any home owned by this
Trust which we are using as our principal residence and to use
the furniture and furnishings located therein.

3.    **Disability**.  During my lifetime, if I am unable or
unwilling to continue to serve as Trustee, then in addition to
the payments made to me, the Trustee may pay to or apply for the
benefit of my Spouse as much of the principal and income of the
Trust assets as the Trustee determines to be necessary to provide
for her health, support, maintenance and education.  These
distributions shall be based upon my legal support obligations,
my past patterns of making funds available to my Spouse for these
purposes, the standard of living to which my Spouse and I are
accustomed and my anticipated future needs.

THE TWELFTH AMENDMENT AND RESTATEMENT OF THE SURVIVOR'S TRUST
CREATED UNDER THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985

-66-

Case 3:22-cv-00532   Document 1-3   Filed 07/14/22   Page 47 of 96 PageID #: 71

## ARTICLE FIVE
### DISTRIBUTION AFTER MY DEATH

After my death, the Trust assets shall be administered according to the provisions of this Article.

1.  **Immediate Instructions on My Death; Gift of Vault**. The Trustee shall pay out of the income or principal of the Trust assets my last illness and funeral expenses and other obligations incurred for my support as directed by my Spouse, SHIRLEY.  I direct that my bodily remains be interred in a vault purchased by my Spouse and me in the Westwood Memorial Park.  I own a half vault in the Westwood Memorial Park in which my former wife, LYNNE LIVINGSTON, is interred.  I direct that this half vault shall remain empty upon my death.  I give this half vault to my daughter, TRAVILYN, to use as she desires.

2.  **Cash Gifts**.

(a)  The Trustee shall distribute Fifty Thousand Dollars ($50,000) to my sister, VERA DRAZEN.  If she fails to survive me, this gift shall lapse.

(b)  The Trustee shall distribute Five Thousand Dollars ($5,000) to my housekeeper, ANN TORRENCE.  If she fails to survive me, this gift shall lapse.

(c)  The Trustee shall add sufficient funds to the checking account held by my Spouse and me as joint tenants (as of the date of my death) to bring the balance of that account to One Hundred  Thousand Dollars ($100,000).

*THE TWELFTH AMENDMENT AND RESTATEMENT OF THE SURVIVOR'S TRUST*
*CREATED UNDER THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1983*

Case 3:22-cv-00532   Document 1-3   Filed 07/14/22   Page 48 of 96 PageID #: 72

3.    **Tangible Personal Property.**

(a)  My Spouse owns certain furniture, furnishings and other personal effects which are located in our home as her separate property, specifically including, but not limited to items owned by my Spouse prior to our marriage.  I am not purporting to dispose of any of these items.

(b)  The Trustee shall distribute to my Spouse any and all items we purchased together or received as gifts during our marriage, together with my Mason and Hamlin grand piano.

(c)  My Yamaha grand piano and my antique desk in the master bedroom shall be distributed to TRAVILYN, if she survives me, or if she does not, to TAMMY.  However, I request that my Spouse be allowed to use these items as long as she resides in my home located at 782 Tortuoso Way, Beverly Hills, California ("Tortuoso").

(d)  My Yamaha upright piano in my studio and the antique captain's desk in the den shall be distributed to TAMMY, if she survives me, or if she does not, to TRAVILYN.  However, I request that my Spouse be allowed to use these items as long as she resides in Tortuoso.

4.    **Trust for Spouse.**  The Trustee shall allocate the following assets to a "Marital Trust" for my Spouse if she survives me, to be held in accordance with the provisions of Paragraph 6.  If my Spouse fails to survive me, no Marital Trust shall be established and these assets shall be distributed as a part of the residue of the Trust assets.

(a)   My interest in the Access Fund;

(b)   My "Music Interests" which, for the purpose of this instrument, shall be defined as my right, title and interest as a composer of musical compositions, including but not limited to copyrights, all composer royalties from ASCAP and other performing rights societies, music publishers, record companies, motion pictures, stage productions, television programs, etc., and from all contracts pertaining thereto, except for those Music Interests which may belong to the "Music Interests Trust" established under the JAY and LYNNE E. LIVINGSTON FAMILY TRUST OF 1985 upon the death of LYNNE.

(c)   My interest in my home at 782 Tortuoso Way, Beverly Hills, California ("Tortuoso"), subject to any encumbrances thereon at the time of my death, including, but not limited to, mortgages, deeds of trust and real property taxes and assessments ("Tortuoso").

(d)   My automobiles, household furniture, furnishings and equipment, china, silver, glassware, books, pictures, paintings, works of art, tape equipment, tapes, recordings, sheet music, manuscripts, prints, and other items of domestic, household or personal use located in Tortuoso, excepting those items specifically gifted under Paragraph 3.

**5.   Residue.**

(a)   If my Spouse survives me, the Trustee shall divide the residue into three (3) equal shares:  One share shall be distributed to TRAVILYN, one share shall be distributed to TAMMY, and the third share shall be added to the Marital Trust created for my Spouse in Paragraph 4 above.  If either TAMMY or

TRAVILYN does not survive me, her share shall be distributed to
her descendants who are living at the time of my death, by right
of representation. If she has no then living descendants, her
share shall augment proportionally the remaining shares created
under this paragraph. If I have no Spouse or descendants living
at the time of my death, the residue shall be distributed to my
heirs at law.

   (b) If my Spouse does not survive me, the Trustee
shall divide the Trust assets as follows:

    (i) **Tortuoso**. Tortuoso shall be held in trust
for TRAVILYN, subject to all unpaid taxes, deeds of trust and
other liens and encumbrances, if any, to which Tortuoso may be
subject at the time of my Spouse's death. If TRAVILYN
predeceases my Spouse or upon her subsequent death, Tortuoso
shall be held in trust for TAMMY under the same terms. It is my
request that TAMMY allow RANDY to live in Tortuoso for his
lifetime (whether or not RANDY was married to TRAVILYN at the
time of TRAVILYN's death), on the condition that he be solely
responsible for payment of all of the below-described payments
and expenses (for which, in such case, TAMMY shall have no
financial responsibility whatsoever). If TAMMY is predeceased,
or upon her subsequent death, Tortuoso shall be held in trust for
RANDY under the same terms. No death taxes shall be charged to
this trust. It is my request that TRAVILYN, TAMMY or RANDY, as
the case may be, make all payments of principal and interest on
encumbrances, taxes and assessments which become payable upon
Tortuoso, and pay all costs of insuring, maintaining and
repairing Tortuoso, including the cost of utilities, pool
maintenance, gardener and other upkeep of the grounds. Upon the
death of the survivor of TRAVILYN, TAMMY, and RANDY, Tortuoso
shall be distributed to TAMMY'S then living descendants, by right
of representation.

THE TWELFTH AMENDMENT AND RESTATEMENT OF THE SURVIVOR'S TRUST
CREATED UNDER THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985

Case 3:22-cv-00532   Document 1-3   Filed 07/14/22   Page 51 of 96 PageID #: 75

            (ii) **Music Interests**. My Music Interests, as defined in Paragraph 4(b) above, shall be managed and distributed as follows:

            a.    Ten percent (10%) shall be held in a separate trust for the benefit of my brother, ALAN LIVINGSTON ("ALAN"), with the income (as defined in Paragraph 11 of ARTICLE SEVEN) distributed to ALAN, in quarterly installments. If ALAN either does not survive my Spouse or should later die, this trust shall be held for his son, CHRISTOPHER LIVINGSTON ("CHRISTOPHER"), under the same terms. If CHRISTOPHER either does not survive my Spouse or should later die, this trust shall be held for RANDY, under the same terms. If RANDY either does not survive my Spouse or should later die, this trust shall be added to the trust for TRAVILYN and TAMMY to be managed and distributed according to Paragraph 5(b)(ii)b below.

            b.    Ninety percent (90%) shall be held in a separate trust, with the income (as defined in Paragraph 11 of ARTICLE SEVEN) distributed to TAMMY and TRAVILYN in equal shares, in quarterly installments. If either does not survive my Spouse or should later die, her share shall be distributed to her descendants who are then living, by right of representation. If either of them has no then living descendants, her share shall augment the share for the other of them. If I have no descendants who are then living, My Music Interests shall be distributed to my heirs at law and this trust shall thereupon terminate.

            c.    TAMMY and TRAVILYN, or the survivor of them if only one of them is then living, shall serve as Trustee of both Trusts established according to this Paragraph 5(b)(ii) If neither of them is able to serve, the Trustee named in Paragraph 1 of ARTICLE THREE shall serve.

(iii) **Residue**. The residue of the Trust assets shall be divided into two (2) equal shares: One share shall be distributed to TRAVILYN and one share shall be distributed to TAMMY. If either TAMMY or TRAVILYN does not survive me, her share shall be distributed to her descendants who are living at the time of my death, by right of representation. If she has no then living descendants, her share shall augment proportionally the remaining shares created under this paragraph. If I have no descendants living at the time of my death, the residue shall be distributed to my heirs at law.

6. **Administration of Marital Trust**.

**(a) Income**. The entire net income of the Marital Trust shall be distributed to or for the benefit of my Spouse, in quarterly installments.

**(b) Free Living Provisions**.

(i) Notwithstanding any provision of this Agreement to the contrary, the Trustee shall permit my Spouse during my Spouse's lifetime to occupy Tortuoso without rental. The Trustee shall make all payments of principal and interest on encumbrances, taxes and assessments which become payable upon Tortuoso, and shall pay all costs of insuring, maintaining and repairing Tortuoso (all of which are referred to as "payments"). The Trustee shall charge the Marital Trust's proportionate share of the payments to the Marital Trust.

(ii) If my Spouse instructs the Trustee to do so, the Trustee shall sell Tortuoso at a time, for a price, and on terms to be determined by the Trustee. However, I request (but do not direct, it being my intention not to jeopardize the Marital Trust's qualification for the marital deduction available

Case 3:22-cv-00532   Document 1-3   Filed 07/14/22   Page 53 of 96 PageID #: 77

under federal estate tax law), that the Trustee sell Tortuoso at
its fair market value to TRAVILYN. If my Spouse decides to live
elsewhere but does not direct the Trustee to sell Tortuoso, my
Spouse may (but, in order to not jeopardize the marital
deduction, shall not be required to) direct that TRAVILYN be
allowed to live at Tortuoso, in which case TRAVILYN shall pay the
insurance, taxes, pool maintenance, gardener and other upkeep of
the grounds, utilities and other expenses related to Tortuoso.
In addition, TRAVILYN shall pay rent to the Marital Trust during
any such tenancy directed by my Spouse, in an amount to be agreed
upon by my Spouse, the Trustee and TRAVILYN. I request (but do
not direct, so as not to jeopardize the marital deduction) that
they agree upon a rental amount that TRAVILYN can afford, keeping
in mind that the expenses enumerated above are considerable. If
my Spouse vacates Tortuoso, she shall be entitled to take with
her any of the items described in Paragraph 4(d) above as she may
decide. Such items, however, shall remain the property of the
Marital Trust. My Spouse can direct at any time that TRAVILYN
shall no longer be allowed to live at Tortuoso. The terms of
this Paragraph shall be subject to all other provisions herein
designed to ensure qualification of the Marital Trust for the
estate tax marital deduction.

    (iii)  If TRAVILYN predeceases my Spouse,
then RANDY shall be entitled to the same rights and obligations
given to TRAVILYN in Paragraph 6(b)(ii) above, whether or not he
was married to TRAVILYN at the time of her death.


    **(c)  Death of Spouse**.  Upon my Spouse's death, any
accrued but undistributed income of the Marital Trust shall be
distributed to my Spouse's estate. The remainder of the Marital
Trust shall be distributed as follows:

(i)     Tortuoso shall be held in trust for
TRAVILYN, subject to all unpaid taxes, deeds of trust and other
liens and encumbrances, if any, to which Tortuoso may be subject
at the time of my Spouse's death.  If TRAVILYN predeceases my
Spouse or upon her subsequent death, Tortuoso shall be held in
trust for TAMMY under the same terms.  It is my request that
TAMMY allow RANDY to live in Tortuoso for his lifetime (whether
or not RANDY was married to TRAVILYN at the time of TRAVILYN's
death).  If TAMMY is predeceased, or upon her subsequent death,
Tortuoso shall be held in trust for RANDY under the same terms.
No death taxes shall be charged to this trust.  It is my request
that TRAVILYN, TAMMY or RANDY, as the case may be, make all
payments of principal and interest on encumbrances, taxes and
assessments which become payable upon Tortuoso, and pay all costs
of insuring, maintaining and repairing Tortuoso, including the
cost of utilities, pool maintenance, gardener and other upkeep of
the grounds.  Upon the death of the survivor of TRAVILYN and
RANDY, Tortuoso shall be distributed to TAMMY, free of trust.  If
TAMMY is not then living, Tortuoso shall be distributed to her
then living descendants, by right of representation.

(ii)    My Music Interests, as defined in
Paragraph 4(b) above, shall be managed and distributed as
follows:

a.      Ten percent (10%) shall be held in
a separate trust for the benefit of my brother ALAN with the
income (as defined in Paragraph 11 of ARTICLE SEVEN) distributed
to ALAN, in quarterly installments.  If ALAN either does not
survive my Spouse or should later die, this trust shall be held
for his son CHRISTOPHER under the same terms.  If CHRISTOPHER
either does not survive my Spouse or should later die, this trust
shall be held for RANDY under the same terms.  If RANDY either
does not survive my Spouse or should later die, this trust shall

be added to the trust for TRAVILYN and TAMMY to be managed and distributed according to Paragraph 6(b)(iii)b below.

> b.  Ninety percent (90%) shall be held in a separate trust, with the income (as defined in Paragraph 11 of ARTICLE SEVEN) distributed to TAMMY and TRAVILYN in equal shares, in quarterly installments.  If either does not survive my Spouse or should later die, her share shall be distributed to her descendants who are then living, by right of representation.  If either of them has no then living descendants, her share shall augment the share for the other of them.  If I have no descendants who are then living, My Music Interests shall be distributed to my heirs at law and this trust shall thereupon terminate.

> c.  TAMMY and TRAVILYN, or the survivor of them if only one of them is then living, shall serve as Trustee of both Trusts established according to this Paragraph 6(b)(iii).  If neither of them is able to serve, the Trustee named in Paragraph 1 of ARTICLE THREE shall serve.

> (iii)  The remaining balance of the Marital Trust shall be distributed to TAMMY and to TRAVILYN, in equal shares, free of trust.  If either does not survive my Spouse, her share shall be distributed to her descendants who are then living, by right of representation, free of trust.  If either of them has no then living descendants, her share shall augment the share for the other of them.  If I have no descendants who are then living, the remaining trust assets shall be distributed to my heirs at law.

CONTINUED ON NEXT PAGE

NEXT PAGE IS -16-

Case 3:22-cv-00532   Document 1-3   Filed 07/14/22   Page 56 of 96 PageID #: 80

## ARTICLE SIX

### TAXES

1.     Unless specifically provided to the contrary in
this Trust or in my Will, all death taxes and interest and
penalties imposed on death taxes, other than generation-skipping
transfer taxes (referred to collectively as "death taxes"),
attributable to the Trust assets which are occasioned by my death
shall be paid by the Trustee and charged against that portion of
the residue of the Trust assets to be distributed for my
descendants (i.e., TRAVILYN and TAMMY).  No portion of such death
taxes shall be charged against the share of the residue to be
added to the Marital Trust; however, if the Trustee does not make
the election to have all of the Marital Trust treated as
qualified terminable interest property (the "QTIP election"), the
death taxes attributable to the property for which the QTIP
election is not made shall be charged against that property in
accordance with California law.

2.     Unless my Spouse shall provide otherwise by
specific direction in my Spouse's Will, all death taxes assessed
against my Spouse's estate which are attributable to the Marital
Trust shall be paid by the Trustee and charged against the
Marital Trust.  However, if following my death, the QTIP election
was not made for the entire Marital Trust, all death taxes
attributable to the Marital Trust at my Spouse's death shall be
charged to the subtrust of the Marital Trust for which the QTIP
election was made.

2.     The death taxes, if any, attributable to assets
not in the Trust assets shall be determined as provided in

California Probate Code Section 20100 et seq., without regard to the provisions of Internal Revenue Code Section 2207A. No portion of such death taxes shall be charged against, prorated among or recovered from any person entitled to benefits under this instrument.

     3.    All interest and penalties imposed with respect to any tax or charge shall be paid and charged in the same manner as the tax or charge.

     4.    The Trustee may establish reserves out of income and principal, following my death, as the Trustee considers necessary for the payment of taxes.

CONTINUED ON NEXT PAGE

NEXT PAGE IS -18-

THE TWELFTH AMENDMENT AND RESTATEMENT OF THE SURVIVOR'S TRUST
CREATED UNDER THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985

Case 3:22-cv-00532   Document 1-3   Filed 07/14/22   Page 58 of 96 PageID #: 82

## ARTICLE SEVEN

## POWERS OF THE TRUSTEE

To carry out the purposes of the trusts established by this Agreement and subject to any limitations stated elsewhere in this Agreement, the Trustee is vested with the powers granted in this Article with respect to the Trust assets, in addition to those powers now or hereafter conferred by law. The enumeration of certain powers of the Trustee shall not limit the Trustee's general powers; but rather the Trustee, subject always to the discharge of the Trustee's fiduciary obligations and all of the limitations specified in this Agreement, shall be vested with and have all the rights, powers and privileges which an absolute owner of the same property would have. In exercising discretion under this Agreement, the Trustee shall at all times act in a fiduciary capacity.

1.    **General**.  To manage, control, grant options on, sell (for cash or on deferred payments), convey, exchange, partition, divide, improve and repair Trust assets and to create restrictions, easements and other servitudes on Trust assets.

2.    **Retention of Original Assets**.  To retain all or any part of the Trust assets transferred to this Trust for so long as the Trustee, in the Trustee's discretion, deems advisable.

3.    **Investments**.

(a)   To invest and reinvest assets and property and to purchase or acquire and retain for the account of this Trust those properties as persons of prudence, discretion and intelligence purchase for their own account, having regard not to speculation but to the permanent disposition of their funds, and considering the probable income, as well as the probable safety of their capital. In making investment decisions (especially regarding the prudence, income and safety of a particular investment), the Trustee shall have regard to the overall investment of all Trust assets, so that, for example, a portion of the Trust assets may be invested in relatively more speculative securities provided that the investment is balanced by a portion of the Trust assets being invested in relatively secure securities. The assets and property purchased, acquired and retained by the Trustee by way of investment may include every kind of property, real, personal and mixed and interests

*THE TWELFTH AMENDMENT AND RESTATEMENT OF THE SURVIVOR'S TRUST*
*CREATED UNDER THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985*

Case 3:22-cv-00532   Document 1-3   Filed 03/14/22   Page 59 of 96 PageID #: 83

therein, specifically including (but not by way of limitation)
the following: corporate obligations of every kind; preferred and
common stocks (including the stock of the corporate Trustee);
investment company shares or shares or undivided portions of any
common trust fund established by the Trustee or by a member of
the same affiliated group of which the Trustee is a member
(within the meaning of Section 1504 of the Internal Revenue
Code); and general and limited partnership interests, including
interests in partnerships engaged in trade or business. All
investments shall be made in a manner conforming with the then
existing law.

(b)   While I am living, the Trustee is expressly
authorized to open and maintain security dealer margin accounts,
and has the right to sell securities short and maintain long
against short positions, and buy and sell call stock options and
put stock options.

(c)   The Trustee may, in the Trustee's discretion,
continue to pursue the course of investment strategy I have
pursued during my lifetime or during the period that I was
serving as Trustee. The Trustee may, in the Trustee's
discretion, invest solely for current income and not with a view
to capital appreciation.

4.   **Leases**.  To lease Trust assets for terms within or
beyond the term of the trusts, for any purpose, including
exploration for and removal of gas, oil and other minerals; and
to enter into community oil leases, pooling and unitization
agreements.

5.   **Abandonment of Property**.  To abandon any real or
personal property which the Trustee shall deem to be worthless or
not of sufficient value to warrant keeping or protecting; to
abstain from the payment of taxes, water, rents, assessments, and
the expenses of repairs, maintenance and upkeep of that property;
to permit that property to be lost by tax sale or other
proceedings, or to convey that property for a nominal
consideration or without consideration.

6.   **Borrowing**.

(a)   To borrow money and encumber or hypothecate
Trust assets by mortgage, deed of trust, pledge, or otherwise,
for the debts of a trust, or for my debts, or for the joint debts
of the trust, myself and/or a co-owner of the property in which
the trust has an interest, and to lend or advance funds to or for

the trusts for any trust purpose, each loan or advance with
interest at the then current rate to be repaid out of the
appropriate Trust assets.

(b) To guarantee the indebtedness of any person
or entity, including myself, whether or not the guarantee is for
a trust purpose or in any way benefits the trust. The Trustee
shall have the power to effectuate those guarantees by executing
those documents that are requested by the creditor and agreed to
by the Trustee. Any guarantees, at the sole discretion of the
Trustee, may be secured by any or all of the Trust assets. This
provision shall apply only during the time that I am serving as
Trustee.

(c) After my death, the Trustee shall have the
power to guarantee the indebtedness only for any trust purpose;
provided, however, that the validity of any guarantee existing at
my death shall not be affected by this provision.

7. **Litigation**. To commence or defend litigation with
respect to the trusts or any Trust assets as the Trustee may deem
advisable, and to compromise or otherwise adjust any claims or
litigation against or in favor of the trusts, all at the expense
of the appropriate trust.

8. **Securities**. To have respecting securities all the
rights, powers and privileges of an owner, including the power to
pay assessments and other sums deemed by the Trustee necessary
for the protection of the Trust assets; to hold securities or
other property in the name of the Trustee or in the name of a
nominee without disclosing any fiduciary relationship; to give
proxies; to participate in voting trusts, pooling agreements,
foreclosures, reorganizations, consolidations, mergers and
liquidations, and in connection therewith to deposit securities
with and transfer title to any protective or other committee
under terms deemed advisable by the Trustee; to exercise or sell
stock subscription or conversion rights; to accept and retain as
an investment any securities or other property received through
exercise of any of the foregoing powers; to consent to the
subordination, modification, renewal, or extension of any
debenture, note, bond, mortgage, open account indebtedness or
other obligations, or any term thereof or of any guarantee
thereof or to the release of the guarantee.

9. **Securities Registration**. To register or qualify
for exemption from registration shares of stock in any
corporation with any agency or agencies of any government

*THE TWELFTH AMENDMENT AND RESTATEMENT OF THE SURVIVOR'S TRUST*
*CREATED UNDER THE JAY AND LYNNE R. LIVINGSTON FAMILY TRUST OF 1991*

Case 3:22-cv-00532   Document 1-3   Filed 02/14/22   Page 61 of 96 PageID #: 85

(including but not limited to the Securities and Exchange Commission of the United States), to participate in that registration, to apply for and to secure the approval of any agency of any government with respect to the sale of those shares, to enter into an agreement with respect to that sale with any broker, investment banker or underwriter, to incur and to pay all expenses necessary or appropriate in connection with that registration, qualification or sale, and to take all other action necessary or appropriate in order to consummate the sale.

10. **Employment of Advisors.**

(a) To employ custodians, attorneys, accountants, investment counselors and others to assist in the administration of the Trust assets and to rely upon the advice given by them, or to delegate investment authority to an investment advisor. The Trustee shall have the authority to appoint an investment manager or managers to manage all or any part of the assets of the Trust assets, and to delegate to that manager or those managers discretion over investment of the Trust assets, including the power to acquire and dispose of those assets. Reasonable compensation for the services rendered by those persons, firms and corporations shall be paid out of income or principal as the Trustee, in the Trustee's discretion, shall determine and shall not decrease the compensation to which the Trustee is entitled.

(b) I authorize any Trustee to engage as counsel or as accountant for any trust established pursuant to this instrument himself and any firm of which he may be a partner, shareholder, member or employee from time to time. In such event, such Trustee shall be allowed his fees as such, and he or his firm shall be allowed fees which may be allowable to the attorneys or accountants for the Trustees.

11. **Principal and Income.** To determine, in the Trustee's discretion, what is principal and income of the Trust assets and to apportion and allocate, in the Trustee's discretion, receipts and expenses and other charges between those accounts, including the power to charge in whole or in part against principal, or to amortize out of or charge forthwith to income, premiums paid on the purchase of bonds or other obligations. Except insofar as the Trustee shall exercise the discretion herein conferred and except as otherwise provided in this instrument, the determination of all matters relating to principal and income shall be governed by the provisions of the Uniform Principal and Income Act of the State of California from time to time existing except that, for purposes of this

THE TWELFTH AMENDMENT AND RESTATEMENT OF THE SURVIVOR'S TRUST
CREATED UNDER THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1983

Case 3:22-cv-00532   Document 1-3   Filed 02/14/22   Page 62 of 96 PageID #: 86

instrument, "income" shall be deemed to include any receipts of music publishing, performance or any other royalties attributable to my Music Interests, as defined above.

12. **Budget Periodic Payments**. To budget as far as practicable estimated annual income and expenses so as to equalize periodic income payments.

13. **Bank Accounts**. To open and maintain one or more savings accounts and checking accounts with any bank or savings and loan association, wherever located, whether within or without the United States of America, even if the bank is serving as Trustee; to deposit to the credit of that account or accounts all or any part of the funds belonging to any trust that may at any time be in the possession of the Trustee whether or not the funds may earn interest; from time to time to withdraw a portion or all of the funds so deposited by check or other instrument signed by the Trustee or by any other person or persons as the Trustee may from time to time authorize, and the bank or association is hereby authorized to pay the check or other instrument and also to receive the same for deposit to the credit of any holder thereof when so signed and properly endorsed, without inquiry of any kind, and payments when so made by the bank or association shall not be subject to criticism or objection by any person concerned or interested in any way in the trusts.

14. **Life Insurance**.

(a) **Purchase**. To purchase or hold as a trust investment a policy or policies of insurance on the life of any beneficiary or on the life of any person in whom any beneficiary shall have an insurable interest, naming the Trustee of the trust out of which the premiums are paid as beneficiary of the policy or policies; to receive the policy or policies as a gift or as gifts; and to hold and deal with the policy or policies as owner thereof.

(b) **Limitations re Proceeds**. If any proceeds of life insurance policies on my life are paid to the Trustee by reason of my death, then subject to the provisions of the following sentence and notwithstanding any other provision of this Trust, the Trustee is expressly prohibited from and shall have no right to use any part thereof to pay any tax, liability or expense which may be payable on my account or to use the same or any part thereof in any other manner for the benefit of my probate estate. However, the proceeds, if otherwise taxable as a

*THE TWELFTH AMENDMENT AND RESTATEMENT OF THE SURVIVOR'S TRUST*
*CREATED UNDER THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985*

Case 3:22-cv-00532   Document 1-3   Filed 07/14/22   Page 63 of 96 PageID #: 87

part of my estate for federal estate tax purposes, may be used for the purposes mentioned in the preceding sentence.

15. **Move Trust**. To remove all or any part of the Trust assets and to transfer the place of administration of the trusts or any of them to any location outside of the State of California, whether within or without the United States of America.

16. **Loans to Estate or Trusts**. To lend trust funds to my probate estate and to any testamentary trust established by my Will and, after my death, to any inter vivos trust established by me. The loans may be with or without interest or security and on other terms deemed reasonable by the Trustee, in the Trustee's discretion.

17. **Purchases from Estate or Trusts**. To purchase property from my probate estate and from any testamentary trust established by my Will and, after my death, from any inter vivos trust established by me, at the fair market value of the property. If there is any question as to the market value of the property, it shall be fixed by the Trustee and the executor or administrator of my probate estate or the trustee of the trust selling the property, and their determination as to the value shall be conclusive. If they are unable to agree or if the Trustee is also serving as the executor or administrator of my probate estate or as the Trustee of the trust selling the property, the value shall be determined by a qualified appraiser whose determination shall be conclusive. The expense of the appraisal shall be borne equally by this Trust and my probate estate or the trust selling the property.

18. **Power to Use Nominee**. Any Trust assets may be acquired, registered or held in the name of the Trustee, or a nominee of the Trustee, with or without disclosure of fiduciary relationship, in order more readily to facilitate the administration of this Trust. However, the Trustee shall be liable for any loss occasioned by the act or omission of the nominee or nominees to the same extent as if the Trustee had so acted or omitted to act. No person dealing with the Trustee's nominee shall have any liability to the Trustee or any other person except as he or she may otherwise agree nor shall he or she be required to take notice of this Trust. Any nominee shall be nominated or removed by written instrument, signed and acknowledged by the Trustee and delivered to the nominee so nominated or removed.

THE TWELFTH AMENDMENT AND RESTATEMENT OF THE SURVIVOR'S TRUST
CREATED UNDER THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985

Case 3:22-cv-00532   Document 1-3   Filed 02/14/22   Page 64 of 96 PageID #: 88

19.  **Power to Name Attorney-in-Fact**.  The Trustee may designate an Attorney-in-Fact to act on the Trustee's behalf by a written instrument, signed and acknowledged by the Trustee and delivered to the Attorney-in-Fact, but the powers of the Attorney-in-Fact shall not exceed the powers the Trustee is legally authorized to delegate.

20.  **Qualified Subchapter S Provisions**.

(a)  If there is any stock of an "S Corporation" (as referred to in Internal Revenue Code Section 1361) among the Trust assets (whether because I transferred such stock to the trust, or the trust holds stock in a corporation which desires to make an S Corporation election, or the Trustee acquires stock in an S Corporation) and the Trustee determines, in the Trustee's discretion, that it is advisable to maintain the S Corporation status for tax purposes, then the S Corporation stock may be maintained in a "qualified subchapter S trust" [as defined in Internal Revenue Code Section 1361(d)(3), and referred to below as a "QSST"] or in an "electing small business trust" [as defined in Internal Revenue Code Section 1361(e), and referred to below as an "ESBT"], as the Trustee may determine in the Trustee's discretion.  Notwithstanding anything in this Agreement to the contrary, no shares of stock in an S Corporation shall be allocated to a trust for the benefit of an individual who is a nonresident alien or a person otherwise not qualified to be a shareholder of an S corporation.

(b)  The Trustee's choice as to whether S Corporation stock should be held in a QSST or an ESBT shall be made by taking into consideration my intention regarding the distribution of income and principal, as well as the tax consequences of making such an election (including whether a state which may tax the corporation, trust or a beneficiary recognizes each type of trust, and the tax impact on the trust and each beneficiary.)

(c)  If the Trustee determines that S Corporation stock should be held in a QSST, then each such trust containing S Corporation stock shall be held, managed and distributed as a separate QSST according to the instructions in this paragraph to the extent that they are inconsistent with the provisions of this Agreement that would otherwise govern.  If stock in an S Corporation is held (or to be held) in a QSST, then the Trustee shall take all action that may be necessary to ensure continued qualification of that trust as a qualified subchapter S trust while the S Corporation stock is held by the trust, specifically:

THE TWELFTH AMENDMENT AND RESTATEMENT OF THE SURVIVOR'S TRUST
CREATED UNDER THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985

Case 3:22-cv-00532   Document 1-3   Filed 04/14/22   Page 65 of 96 PageID #: 89

(i)   During the life of the current income beneficiary of any trust created herein, there shall be only one (1) income beneficiary of that trust;

(ii)   Any principal distributed during the life of the current income beneficiary of that trust may be distributed only to that beneficiary;

(iii)   The income interest of the current income beneficiary in that trust shall terminate on the earlier of that beneficiary's death or the termination of the trust;

(iv)   Upon the termination of that trust during the lifetime of the current income beneficiary, all of its assets shall be distributed to that beneficiary; and

(v)   While that trust owns shares of an S Corporation, all of its income [within the meaning of Internal Revenue Code Section 643(b)] shall be currently distributed, and only to an individual who is a citizen or a resident of the United States.

(vi)   The Trustee shall also assist the beneficiary of each trust owning stock of an "S Corporation" to timely make any and all elections required by federal and state law in order for the trust to obtain and maintain its status as a qualified subchapter S trust.

(vii)   Any trust containing S Corporation stock which may have more than one current beneficiary shall be further divided into separate trusts, by right of representation, for the beneficiaries of that trust until each new trust has only one beneficiary.  The division into separate trusts shall be made in the manner prescribed by Paragraph 7 of ARTICLE EIGHT entitled "Division in Kind or Non-Pro Rata."

(viii)   If any trust contains both S Corporation stock and other assets, the Trustee shall divide the trust into separate trusts so that the S Corporation stock is allocated to a separate trust from the other assets.  The trust containing the other assets shall be held, managed and distributed according to the provisions that would otherwise govern the trust.

21.  **Power to Combine Trusts**.  If a trust has been established for a descendant under any other instrument, and the terms of that trust, in the Trustee's discretion, are

substantially similar to the terms of the trust established for
that descendant under this Agreement, then the Trustee shall have
the power to add the assets of the trust created hereunder to the
assets of that other trust, subject to the following restrictions
and considerations:

(a)  Prior to any addition and the Trustee's
exercise of the power to combine trusts, the Trustee shall take
into account the inclusion ratio of each trust for generation-
skipping transfer tax purposes and my desire not to combine
trusts or shares having different inclusion ratios.

(b)  If the maximum duration of the two trusts
(under the trust instruments or the applicable "rule against
perpetuities") is different, the shorter perpetuities period
shall apply to both trusts.

(c)  If the descendant dies before receiving his
or her entire trust and the same successors to the descendant
under this Agreement and the other trust also die before
distribution of the entire trust, upon the death of the survivor
of those successors, a fraction of the assets of the trust shall
be distributed to or held for the persons named to benefit under
this Agreement after the deaths of those successors, upon the
terms provided in this Agreement.  The numerator of that fraction
shall be the net value of the assets of the trust under this
Agreement when the two trusts are combined; and the denominator
shall be the aggregate value of the assets of both trusts on the
date the trusts are combined.

22.  **Division of Trust**.  The Trustee is directed to
divide any trust created under this Agreement (a "Main Trust")
into two separate subtrusts of equal or unequal value whenever,
in the Trustee's discretion, the division is necessary or
desirable to minimize transfer or other taxes.  The terms and
beneficiaries of the two subtrusts so created shall be the same,
except that a distribution to a beneficiary of a pecuniary amount
shall not be duplicated.  An example of a circumstance in which a
division into subtrusts will occur includes, but is not limited
to, the division of a Main Trust which may be subject to the
federal generation-skipping transfer tax into a subtrust owning
assets equal in value to all or part of the transferor's
exemption under Section 2631 of the Internal Revenue Code and a
subtrust owning the remaining assets of the Main Trust, taking
into account the possible use of the exemption during my lifetime
or upon my death.  The Trustee may, in the Trustee's sole and
absolute discretion, allocate any property which, at any time,

may become payable or distributable to the Main Trust entirely to
one of its subtrusts to the exclusion of the other, or
disproportionately between its subtrusts. However, in making the
division into subtrusts, assets allocated in kind shall be valued
at their final federal estate tax values in my estate, and shall
be fairly representative of appreciation or depreciation in
value, since the valuation date, of all assets available for
allocation.

        **23.**   **Powers Regarding My Musical Interests**.  In
addition to the powers granted to the Trustee under this
instrument, and except as otherwise specifically provided by law,
the Musical Interest Trustee is vested with all powers over my
Musical Interests (as defined in this instrument), including the
power to license, sell and renew copyrights, deal generally with
royalty interests as any other property, and the power to incur
the costs of preparing for publication any works not published by
me at the date of my death. The Musical Interest Trustee shall
claim or coordinate actions among my heirs with respect to claims
for any renewal terms or terminations of transfer as to any
copyrights on works created wholly or partly by me, and deal with
companies or societies (such as ASCAP and BMI) handling
mechanical, performing or other rights. Notwithstanding any
other provisions of this Article, the Musical Interest Trustee
shall not establish any reserve for depreciation or depletion,
and shall consider all receipts from collection of royalties and
profit participations and licenses of any properties of my
Musical Interests as income.

CONTINUED ON NEXT PAGE

NEXT PAGE IS -28-

THE TWELFTH AMENDMENT AND RESTATEMENT OF THE SURVIVOR'S TRUST
CREATED UNDER THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985

-27-

## ARTICLE EIGHT

## ADMINISTRATIVE PROVISIONS

1. **Consideration of Other Assets**. If the Trustee is authorized to make discretionary distributions of principal or income, or both, to any beneficiary, then in determining whether to make the distribution and the amount to be paid, the Trustee shall take into consideration, to the extent that the Trustee deems appropriate, any other income and financial resources which the beneficiary may have and which are known to the Trustee and which are reasonably available for those purposes. Distributions made from a beneficiary's trust for his or her health, education, maintenance or support shall be made based on the beneficiary's standard of living at the time the trust is established. In making discretionary distributions, the needs of the current income beneficiary shall be of primary importance and the interest of any remainder beneficiary shall be of secondary importance.

2. **Distributions to Minors or Disabled Persons**. For the purpose of this paragraph, the term "minor" shall mean a person who has not yet attained the age of twenty-five (25), or if that age exceeds the maximum age permitted under the applicable law, the oldest age permitted. If the Trustee is required to distribute or pay any assets to or use or expend assets for the benefit, support or maintenance of a minor, conservatee or an incompetent person, each distribution or payment may, in the discretion of the Trustee, be made without the intervention of any guardian, conservator or court:

(a) to the person with whom the beneficiary resides, or

(b) directly to the beneficiary if, in the discretion of the Trustee, the beneficiary is able to manage and deal with money properly, or

(c) directly for the benefit of the beneficiary, or

(d) to the guardian or conservator of the beneficiary, or

(e) to a custodian of the beneficiary's assets under the California Uniform Transfers to Minors Act (or under the comparable law of any other state in which the beneficiary

resides), appointed by the Trustee, to be held for the
beneficiary until the beneficiary attains age twenty-five (25),
or if that age exceeds the maximum age permitted under such law,
then the latest age permitted. If the Trustee appoints a
custodian, preference shall be given to a custodian who is my
blood relative, unless another individual is specifically named
herein as custodian.

In the case of any distribution or payment, the Trustee
may, in the Trustee's discretion, require reports and take steps
as the Trustee shall deem necessary or appropriate to assure and
enforce the proper application of those assets.

3. **Exercise of Power of Appointment**. A power of
appointment granted to a beneficiary under this Agreement, which
is effective upon his or her death, shall be exercised either by
a Will or Codicil duly admitted to probate, or by a written,
acknowledged instrument delivered to the Trustee, which Will,
Codicil or written, acknowledged instrument expressly refers to
and exercises the power of appointment. The Will, Codicil or
written, acknowledged instrument may be executed before or after
my death. The exercise of a power of appointment by a
beneficiary may be revoked or amended in the same manner. If no
Will or Codicil purporting to be that of the beneficiary is filed
for probate within sixty (60) days of his or her death, and if no
written, acknowledged instrument is filed with the Trustee prior
to the end of that period, then it shall be conclusively presumed
that the beneficiary did not exercise the power of appointment.
Notwithstanding any other provisions of this Agreement to the
contrary, if a beneficiary is one of my descendants and is
granted a limited power to appoint in favor of my descendants,
the beneficiary may not exercise that power in favor of himself
or herself, his or her estate, his or her creditors, or the
creditors of his or her estate.

4. **Discharge of Support Obligations**. Any other
provisions of this Agreement notwithstanding, no income or
principal of any trust shall be utilized to discharge in whole or
in part the legal obligations of any person, from time to time
existing, to support any of the beneficiaries of the trusts
created by this Agreement, unless the Court having jurisdiction
over the administration of this Trust determines that the person
is financially or otherwise unable to provide that support. When
determining the legal obligation of any person to support any of
the beneficiaries, the existence of the beneficiary's trust and
the funds made available by it shall not be taken into consider-
ation.

## 5.    Spendthrift Provisions.

(a)    If a creditor obtains a writ of attachment, execution, garnishment or like process against a beneficiary of any trust then, until its release, the Trustee shall pay to the beneficiary only those sums that are necessary for his or her reasonable health, education and support according to his or her accustomed standard of living.  Any sums of a beneficiary's trust not paid or applied for these purposes shall be added to the principal of that trust.

(b)    No interest of any beneficiary in the principal or income of any trust established under this Agreement shall be subject to the claims of his or her creditors or others or to attachment, execution or other legal process prior to its actual receipt by the beneficiary.  No beneficiary shall have any right to assign, alienate, encumber or hypothecate his or her interest in principal or income, except that a beneficiary may assign the right to receive payment of any sum otherwise distributable to him or her to a revocable inter vivos trust established by him or her or to any person who is my lineal descendant.

## 6.    Separate Shares or Trusts.  Each share or trust under this Agreement shall constitute and be administered as a separate trust.  There need be no physical segregation or division of the various trusts established under this Agreement except as segregation or division may be required by the termination of any of the trusts, but the Trustee shall keep separate accounts for the different undivided interests.

## 7.    Division in Kind or Non-Pro Rata.  In any case in which the Trustee is required, pursuant to the provisions hereof, to divide any Trust assets into parts or shares for the purpose of distribution or otherwise, the Trustee is authorized, in the Trustee's discretion, to make that division and distribution in kind, including undivided interests in any property, or partly in kind and partly in money, at valuations determined by the Trustee, and for this purpose the Trustee is authorized to make sales of the Trust assets as the Trustee shall deem necessary on terms and conditions as the Trustee shall see fit.  In making any division or partial or final distribution of the Trust assets, the Trustee shall be under no obligation to make a pro rata division, or to distribute the same assets to beneficiaries similarly situated; but rather, the Trustee may, in the Trustee's discretion, make a non-pro rata division between trusts or shares and non-pro rata distributions to those beneficiaries, as long as

H:\CLIENTS\LIVINGST.JAY\12th survivor's art.wpd

the respective assets allocated to separate trusts or shares, or
distributed to those beneficiaries, have equivalent or
proportionate fair market values. The Trustee may, at the
Trustee's election, disregard the cost or other income tax bases
of those assets.

        **8.**   **Termination of Small Share.** If at any time a
trust which is being held for any beneficiary has a value of less
than Twenty-Five Thousand Dollars ($25,000), or if the Trustee at
any time shall determine that the value of a trust has become so
low in relation to the cost of administering the trust that the
continuance of the trust for the beneficiary pursuant to its
terms shall defeat or substantially impair the accomplishment of
the purposes of the trust, the Trustee shall have the right, in
the Trustee's sole discretion, to terminate the trust. In the
event of a termination, the Trustee shall distribute to the
beneficiary all of the principal and undistributed income, if
any, of the trust which is then being held for him or her. Not-
withstanding the foregoing, if a beneficiary of a trust is
serving as a Trustee, he or she shall have no power to partici-
pate in any decision to terminate the trust, and the Special
Trustee shall hold the powers described in this paragraph.

        **9.**   **Rule Against Perpetuities.** No trust created under
this Agreement shall extend beyond the period permitted by law
and, unless terminated at an earlier date under the foregoing
provisions, each trust established under this Agreement shall
terminate twenty-one years after the death of the last survivor
of the beneficiaries living at the time of my death. All
principal and undistributed income of any trust so terminated
shall be distributed to the then income beneficiaries of that
trust in the proportions in which they are, at the time of
termination, entitled to receive the income; provided, however,
that if the rights to income are not then fixed by the terms of
the trust, distribution shall be made to those who are then
authorized, in the discretion of the Trustee, to receive income
payments. If none of those beneficiaries is then living, the
principal and undistributed income of the trust shall be dis-
tributed to my heirs at law.

        **10.**   **Retention of Assets on Termination.** Upon the
termination of any trust hereunder, the Trustee may retain
sufficient assets for a reasonable period of time as a reasonable
reserve against any future liabilities assessed because of the
existence of such trust.

## ARTICLE NINE

### FURTHER PROVISIONS REGARDING THE TRUSTEE

1.   **Liability of Trustee**.  No individual Trustee acting hereunder shall be responsible for any error of judgment or mistake of fact or law and any individual Trustee shall be fully protected for any actions taken except a breach of trust committed under any of the following circumstances: intentionally, with gross negligence, in bad faith, with reckless indifference to the interests of beneficiaries or from which the Trustee derives a profit.  No Trustee shall be responsible for the act, default or omission of any prior Trustee nor for the act, default or omission of the Trustee's employees, agents or attorneys, except that the corporate Trustee shall be liable for any act, default or omission of its own employees, agents, and attorneys.  Unless requested in writing by an adult beneficiary to do so, no successor Trustee shall have any duty to investigate or review any action of any prior Trustee and that successor Trustee may accept the accounting records of the prior Trustee without further investigation and without incurring any liability to any person claiming or having an interest in this Trust.

2.   **Payments Before Notice of Event**.  Until the Trustee receives written notice of any birth, marriage, death, or any other event upon which the right to payments from this Trust may depend, the Trustee shall incur no liability to persons whose interests may have been affected by the event for disbursements made in good faith.

3.   **Accountings Until My Death**.  During my lifetime, the Trustee shall account only to me and my written approval shall be final and conclusive in respect to transactions disclosed in the account as to all beneficiaries of this Trust, including unborn and contingent beneficiaries.

4.   **Accountings After My Death**.

(a)   After my death, the Trustee may, in addition to any accounting required under the California Probate Code, render an accounting from time to time regarding the transactions of any trust created in this Agreement.  Accountings shall be made by delivering a written accounting to each beneficiary entitled to current income distribution or, if there are no current income beneficiaries, to each beneficiary entitled to current distributions out of income or principal in the discretion of the Trustee, and to each remainderman living at the time

*THE TWELFTH AMENDMENT AND RESTATEMENT OF THE SURVIVOR'S TRUST
CREATED UNDER THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985*

Case 3:22-cv-00532   Document 1-3   Filed 02/14/22   Page 73 of 96 PageID #: 97

of the accounting. If any person entitled to receive an
accounting is a minor or is under a disability, the accounting
shall be delivered to his or her parents or the guardian of his
or her person if he or she is a minor or to the guardian or
conservator of his or her person if he or she is under any other
disability. The accounting shall include the information
required by the California Probate Code.

        (b)    Unless any beneficiary, including parents,
guardians, or conservators of beneficiaries, delivers a written
objection to the Trustee within ninety (90) days after receipt of
the accounting, the accounting shall be final and conclusive in
respect to transactions disclosed in the accounting as to all
beneficiaries of the trust, including unborn and unascertained
beneficiaries. After settlement of the accounting by agreement
of the parties objecting to it, or by expiration of the
ninety (90) day period, the Trustee shall no longer be liable to
any beneficiary of the trust, including unborn and unascertained
beneficiaries, in respect to transactions disclosed in the
accounting, except a breach of trust committed intentionally,
with gross negligence, in bad faith, with reckless indifference
to the interests of beneficiaries or from which the Trustee
derives a profit.

        **5.**   **Delegation of Powers.**  Any individual Co-Trustee
shall have the power to delegate to the other Co-Trustee any or
all of his or her powers as a Co-Trustee. This power of
delegation shall be exercised by the delivery by the individual
Co-Trustee to the other Co-Trustee of written notice specifying
the powers delegated and the delegation shall terminate upon
delivery by that individual Co-Trustee to the other Co-Trustee of
written notice of termination. The Co-Trustee so delegating his
or her powers shall incur no liability to any beneficiary of this
Trust with respect to the exercise of any power so delegated
during the period of that delegation.

        **6.**   **Automatic Resignation on Disability.**  Any
individual Trustee shall have automatically resigned, without
further act on his or her part, upon receipt by all other acting
Trustees or, if there are none, by the successor Trustee or
Trustees, or if no successor Trustee or Trustees are named or
designated herein, by all then income beneficiaries or their
personal representatives, of a written instrument executed by the
individual Trustee's personal physician (or the physician then
attending that individual Trustee) certifying that the physician
has examined the Trustee and has concluded, based upon the
examination, that by reason of accident, physical or mental

illness, progressive or intermittent physical or mental
deterioration, or other similar cause, the Trustee has become
unable to exercise prudently his or her powers as Trustee in the
best interests of the beneficiaries of this Trust. Any
beneficiary, Trustee, Co-Trustee or successor Trustee named or
designated herein may require that the Trustee submit to an
examination, provided that the Trustee shall not be required to
submit to an examination more frequently than once every six
months. If the examination results in an automatic resignation
of the Trustee, the cost of the examination shall be borne
proportionately by the trusts of which he or she was serving as
Trustee. If the examination does not result in the automatic
resignation of the Trustee, the cost of the examination shall be
charged against the interest of the beneficiary requesting the
examination, or, if requested by a Trustee, Co-Trustee or
successor Trustee who has no beneficial interest in the trust,
shall be charged against the Trustee, Co-Trustee or successor
Trustee individually.

 7. **Compensation of Trustee**. The Trustee shall be
entitled to reasonable compensation for services rendered as
Trustee. Reasonable compensation shall be based upon the
qualifications of the Trustee, or alternatively, the fees charged
by corporate Trustees in the county of Los Angeles. If there is
more than one Trustee serving, then each Trustee shall be
entitled to reasonable compensation, but the aggregate paid to
the Trustees shall not exceed the amount of compensation that
would have been reasonable had there been only one Trustee. Any
Trustee who is an attorney, accountant or other professional
service provider may render services to this Trust and be paid
for those services without reducing the Trustee's fees to which
he or she would otherwise be entitled.

 8. **Resignation**. Any Trustee or Co-Trustee may resign
by filing a notice of resignation with the successor Trustee or
Co-Trustee, and with all then living adult beneficiaries who are
then entitled to receive income or principal, either as a matter
of right or in the discretion of the Trustee.

 9. **Vacancy**. In the event of a vacancy in the
trusteeship of a trust created under this Agreement, the named or
designated successor Trustee or Co-Trustee, as the case may be,
shall fill that vacancy. In the event no successor has been
designated under this Agreement, then the vacancy shall be filled
by the decision of a majority of the remaining qualified and
acting Co-Trustees, or if only one Trustee is then qualified and
acting, by that Trustee. If there are no qualified and acting

Case 3:22-cv-00532   Document 1-3   Filed 07/14/22   Page 75 of 96 PageID #: 99

Co-Trustees or Trustee, then the vacancy shall be filled by the decision of a majority in interest of the beneficiaries who are then entitled to receive the income of the trust in which the vacancy occurs, either as a matter of right or in the Trustee's discretion (the "income beneficiaries"). The vacancy shall be filled by an appointment made either by (a) giving written notice of the appointment to any Co-Trustee not participating in the appointment and to all income beneficiaries, or (b) petitioning a court of competent jurisdiction for that appointment. For the purpose of this paragraph, if any income beneficiary is a minor or otherwise legally incapacitated, then the beneficiary shall be represented by the guardian or conservator of his or her estate, or if a minor has no guardian, then by his or her living parents or the parent who has custody of the minor.

10. **Tax Elections**. It is my intention to take advantage of all tax savings which the law of any jurisdiction allows for the benefit of the total family group and without regard to conflicting interests of income beneficiaries and remaindermen. To that end, I authorize the Trustee, in the Trustee's absolute discretion, to take any one or more of the following actions as may appear advisable:

(a) To value my gross estate for federal estate tax purposes as of the date of my death or as of the alternate valuation date as allowed for that purpose and to claim any items of expense as income tax deductions or estate tax deductions, or both, as in the Trustee's sole judgment shall achieve an overall reduction in income and estate taxes.

(b) To adopt a fiscal year for income tax purposes.

(c) To otherwise administer the Trust assets with a view to achieving the maximum possible tax savings.

(d) I direct that no compensating adjustments shall be made as between the various beneficiaries of my estate or as between the income and principal accounts as a result of the exercise of those elections except as the Trustee, in the Trustee's sole and absolute discretion, shall deem equitable.

11. **Replacement of Corporate Trustee**. At any time when a corporation is serving as a Co-Trustee of a trust, it may be removed by the individual Co-Trustee. If there is no individual Co-Trustee then serving, then the corporate Trustee may be removed by a majority in interest of the beneficiaries who

are entitled, at the time of removal, to receive the income of the trust, either as a matter of right or in the discretion of the Trustee. For the purposes of this paragraph, any minor beneficiary shall be represented by the guardian of his or her estate and any adult incompetent beneficiary shall be represented by the conservator or guardian of his or her estate. The individual Trustee or the majority in interest of beneficiaries, as the case may be, shall appoint a Trustee to serve in place of the corporate Trustee being removed (the "outgoing corporate Trustee") which is a bank or trust company having assets of not less than Seventy-five Million Dollars ($75,000,000). The appointment of another corporate Trustee shall be made by an instrument in writing setting forth the appointment and executed in duplicate. One of the originals shall be delivered to the new appointee. The second original shall be delivered to the outgoing corporate Trustee. The execution of the instruments shall be conclusive evidence of the vacancy thereby filled. Every Trustee so appointed shall have and be vested with all the rights, titles, powers and discretions hereunder of the outgoing corporate Trustee, to the same extent as if originally named the corporate Trustee. Upon the appointment of another corporate Trustee, the outgoing corporate Trustee shall cease to have any power or control over the Trust assets, except that which is necessary to properly care for the Trust assets pending the transfer to the other corporate Trustee, and the outgoing corporate Trustee shall immediately transfer and deliver all Trust assets to the successor corporate Trustee.

CONTINUED ON NEXT PAGE

NEXT PAGE IS -37-

THE TWELFTH AMENDMENT AND RESTATEMENT OF THE SURVIVOR'S TRUST
CREATED UNDER THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985

Case 3:22-cv-00532   Document 1-3   Filed 07/14/22   Page 77 of 96 PageID #: 101

## ARTICLE TEN

### AMENDMENT AND REVOCATION

1. **During My Lifetime**. I may revoke or amend this Trust in any respect and withdraw assets from it at any time during my lifetime. Any revocation, amendment or withdrawal shall be made by delivering to the Trustee a signed instrument. Except as provided in the next sentence, the signature or signatures on any written instrument effecting a revocation or amendment shall be acknowledged by a notary public. However, an acknowledgment is not required on an instrument effecting a withdrawal of any Trust assets, or on an instrument only amending the disposition of tangible personal property (as defined in ARTICLE ELEVEN) on my death. If this Trust is revoked or if its assets are withdrawn, in whole or in part, then the Trustee shall immediately deliver the assets which are the subject of the revocation or withdrawal to me.

2. **After My Death**. After my death, this Trust shall be irrevocable and its assets shall pass pursuant to the provisions of this Agreement.

3. **Amendment, etc. on my Behalf**. My Attorney-in-Fact may exercise the powers described in this Article, on my behalf, to the extent that the Attorney-in-Fact is specifically empowered to do so under the terms of a Power of Attorney in effect at the time the powers are exercised.

CONTINUED ON NEXT PAGE

NEXT PAGE IS -38-

THE TWELFTH AMENDMENT AND RESTATEMENT OF THE SURVIVOR'S TRUST
CREATED UNDER THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985

Case 3:22-cv-00532   Document 1-3   Filed 03/14/22   Page 78 of 96 PageID #: 102

## ARTICLE ELEVEN

## GENERAL PROVISIONS

1. **Interest**. No interest shall be paid on any gift, legacy or right to income under this Agreement; provided, however, that there shall be paid all interest, if any, which must be paid in order to entitle my estate to the benefit of the maximum charitable deduction to which it would otherwise be entitled.

2. **"Children" and "Descendants" Defined**. Unless specifically provided in this Agreement to the contrary, the terms "child", "children", "issue" and "descendant" shall be defined according to California law, provided, however, that the term shall not include a foster child or a stepchild, even if a parent-child relationship existed between the foster parent and the foster child or between the stepparent and the stepchild.

3. **Gender and Number**. Whenever the context so requires, the masculine, feminine or neuter gender and the singular or plural number shall each be deemed to include the others.

4. **"Heirs at Law" Defined**. A person's "heirs at law" as used herein shall mean those individuals determined according to the laws of succession of the State of California in effect at the time of distribution relating to separate property not acquired from a predeceased spouse, as if that person's death had then occurred.

5. **"Education" Defined**. The term "education" shall be construed to include primary or secondary education, vocational training, college, graduate and professional study, so long as the same is, in the sole discretion of the Trustee, pursued to advantage by the beneficiary, at an institution of the beneficiary's choice which is approved by the Trustee; and in determining payments to be made for that education, the Trustee shall take into consideration the beneficiary's related living and travel expenses to the extent that they are reasonable.

6. **Internal Revenue Code**. All references to the "Internal Revenue Code" shall be to the Internal Revenue Code of 1986, as amended from time to time.

7. **"Tangible Personal Property" Defined**. The term "tangible personal property" shall refer to clothing, jewelry,

THE TWELFTH AMENDMENT AND RESTATEMENT OF THE SURVIVOR'S TRUST
CREATED UNDER THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985

Case 3:22-cv-00532   Document 1-3   Filed 03/14/22   Page 79 of 96 PageID #: 103

personal effects, motor vehicles, vessels, household furniture,
furnishings and equipment, china, silver, glassware, books, hobby
collections, pictures, works of art and other items of domestic
or household use.

8.    **"Special Trustee" Defined**.  When a beneficiary is
serving as a Trustee (the "Restricted Trustee"), the Special
Trustee shall be each Co-Trustee who is then serving with the
Restricted Trustee.  However, if the Restricted Trustee has
exercised a power to remove a Co-Trustee or successor Trustee and
has designated another successor Co-Trustee, no such substituted
Co-Trustee may act as Special Trustee if he or she is related or
subordinate to the Restricted Trustee [within the meaning of
Internal Revenue Code Section 672(c)] (referred to below as a
"Related Person").  If there is no Co-Trustee who may act as
Special Trustee as set forth above, then the Special Trustee
shall be the next successor Trustee named in this Agreement (or
designated as provided in this Agreement) who is willing and able
to act.  If there is no such successor Trustee who is willing and
able to act, then the Special Trustee shall be any person
designated by the Restricted Trustee who is not a Related Person.
If the Restricted Trustee is unable or unwilling to appoint a
Special Trustee, then the Special Trustee shall be appointed by
the court having jurisdiction over the administration of this
Trust.

9.    **Severability**.  Should any part, clause, provision
or condition of this Agreement be held to be void, invalid or
inoperative, the invalidity shall not affect any other provision
hereof which shall be effective as though that invalid provision
had not been contained herein.

10.    **California Law**.  All matters pertaining to the
validity, construction and effect of this Agreement shall be
governed by the laws of the State of California.

11.    **Headings and Titles**.  The headings or titles of
the various articles of this Agreement are inserted solely for
convenience of reference, and are not a part of nor are they
intended to govern, limit or aid in the construction of any
provisions hereof.

12.    **Omitted Heirs**.  Except as otherwise provided in
this Agreement, I have intentionally and with full knowledge
omitted to provide for any of my heirs who may be living at the
date of my death.

*THE TWELFTH AMENDMENT AND RESTATEMENT OF THE SURVIVOR'S TRUST*
*CREATED UNDER THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1991*

Case 3:22-cv-00532  Document 1-3  Filed 04/14/22  Page 80 of 96 PageID #: 104

13. <u>No Contest</u>. If any beneficiary under this Agreement, singly or in conjunction with any other person or persons, shall contest in any court the validity of this Trust or shall seek to obtain an adjudication in any proceeding in any court that this Trust or any of its provisions is void, or seek otherwise to void, nullify or set aside this Trust or any of its provisions, or file a claim against this Trust or my estate or seek to recover any claimed liability, debt, or damages from this Trust or my estate (except as to any obligation I may owe which is represented by a writing signed by me or other credible documentary evidence), then the right of that person to take any interest which is given to him or her by this Agreement shall be determined as it would have been determined if he or she had predeceased the execution of this Agreement without surviving descendants. The Trustee is hereby authorized to defend, at the expense of this Trust, any contest of or other attack of any nature on this Agreement or any of its provisions.

EXECUTED at _Los Angeles_, California, on _December 13_, 2000.

_____
JAY LIVINGSTON, Co-Trustee and Settlor

_____
GARY KRESS, Co-Trustee

THE TWELFTH AMENDMENT AND RESTATEMENT OF THE SURVIVOR'S TRUST
CREATED UNDER THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985
-40-

Case 3:22-cv-00532   Document 1-3   Filed 07/14/22   Page 81 of 96 PageID #: 105

STATE OF CALIFORNIA )
                         ) ss.
COUNTY OF LOS ANGELES )

On _____ DECEMBER · 3 _____, 2000, before me
_____ _____, a Notary
Public in and for said ~~County and~~ State, personally appeared
JAY LIVINGSTON, ☒ personally known to me -OR- ☐ proved to me on
the basis of satisfactory evidence to be the person whose name is
subscribed to the within instrument and acknowledged to me that
he executed the same in his authorized capacity, and that by his
signature on the instrument the person, or the entity upon behalf
of which the person acted, executed the instrument.

Witness my hand and official seal.

```
JAMES D. STEPHENS
COMM. # 1218373
NOTARY PUBLIC-CALIFORNIA
VENTURA COUNTY
COMM. EXP. MAY 6, 2003
```

_____
Notary Public in and for
said ~~County and~~ State


STATE OF CALIFORNIA )
                         ) ss.
COUNTY OF LOS ANGELES )

On _____ _____, 2001, before me
_____ _____, a Notary
Public in and for said County and State, personally appeared
GARY KRESS, ☒ personally known to me -OR- ☐ proved to me on the
basis of satisfactory evidence to be the person whose name is
subscribed to the within instrument and acknowledged to me that
he executed the same in his authorized capacity, and that by his
signature on the instrument the person, or the entity upon behalf
of which the person acted, executed the instrument.

Witness my hand and official seal.

_____
Notary Public in and for
said County and State

## GENERAL ASSIGNMENT

I, JAY LIVINGSTON, hereby transfer to JAY LIVINGSTON and GARY KRESS, as Co-Trustees of the SURVIVOR'S TRUST created under THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985, dated August 28, 1985, as the SURVIVOR'S TRUST is amended and restated in its entirety on the same day as this General Assignment, all right, title and interest in and to all corporations, partnerships, sole proprietorships, real property, bank or savings and loan accounts, certificates of deposit, money market accounts, treasury bills, stocks, bonds and similar securities, brokerage and safekeeping accounts, contractual rights and obligations, causes of action, country club memberships, clothing, jewelry, personal effects, motor vehicles, vessels, household furniture, furnishings and equipment, china, silver, glassware, books, hobby collections, pictures, works of art, other items of domestic or household use, and all other property, whether real or personal, tangible or intangible or held in my name or in the name of a nominee. I declare these assets to be assets of the SURVIVOR'S TRUST. However, this Assignment shall not apply to the following assets:

1. Copyrights (including renewal, termination and similar rights) of which I am the author;

2. Assets held in joint tenancy with another, totten trust accounts or p.o.d. accounts (as defined in California Probate Code Section 5302);

3. Other assets whose dispositions following my death are governed by beneficiary designations;

4. Assets standing in my name in a fiduciary capacity;

5. Assets whose transferability is prohibited by the terms of a written agreement currently in effect or whose

transfer will create a power or right in a third party to purchase all or any part of the assets; and

6. Assets securing a promissory note if the due date for all or part of the principal balance on the note will be accelerated by virtue of the assignment of the security to the SURVIVOR'S TRUST.

DATED: _December 13_____, 2000.

_____
JAY LIVINGSTON

STATE OF CALIFORNIA     )
                        ) ss.
COUNTY OF LOS ANGELES   )

        On ___DECEMBER 3_____, 2000, before me
___JAMES D. STEPHENS_____, a Notary
Public in and for said ~~County and~~ State, personally appeared
JAY LIVINGSTON, ☒ personally known to me -OR- ☐ proved to me on
the basis of satisfactory evidence to be the person whose name is
subscribed to the within instrument and acknowledged to me that
he executed the same in his authorized capacity, and that by his
signature on the instrument the person, or the entity upon behalf
of which the person acted, executed the instrument.

        Witness my hand and official seal.

JAMES D. STEPHENS
COMM. # 1218373
NOTARY PUBLIC-CALIFORNIA
VENTURA COUNTY
COMM. EXP. MAY 8, 2003

_____
Notary Public in and for
said ~~County and~~ State

<u>THIRTEENTH AMENDMENT TO</u>

<u>THE SURVIVOR'S TRUST CREATED UNDER</u>

<u>THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985</u>

# THIRTEENTH AMENDMENT TO
## THE SURVIVOR'S TRUST CREATED UNDER
## THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985

The Survivor's Trust created under THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985, dated August 28, 1985, as amended to date, is hereby further amended as follows pursuant to Paragraph 1 of ARTICLE TEN of THE TWELFTH AMENDMENT AND RESTATEMENT OF THE SURVIVOR'S TRUST CREATED UNDER THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985, signed on December 13, 2000.

I.

Paragraph 6 of ARTICLE FIVE is deleted in its entirety and the following is substituted in its place:

"6. **Administration of Marital Trust**.

(a) **Income and Principal**. The entire net income of the Marital Trust shall be distributed to or for the benefit of my Spouse, in quarterly installments. If the Trustee considers the income of the Marital Trust to be insufficient to provide for my Spouse's proper health, support, and maintenance, the Trustee shall pay to or apply for the benefit of my Spouse as much principal of the Marital Trust as the Trustee considers necessary for those needs.

(b) **Additional Distributions**. In addition to the payments provided in Paragraph 6(a), with the written consent of my Beneficiaries who are adults, the Trustee may pay to my Spouse or apply for my Spouse's benefit as much of the principal of the Marital Trust, as the Trustee determines in the Trustee's discretion. As used in this subparagraph, the term "my

Beneficiaries" shall refer to each person and organization (if any) who would be entitled to a share of the Marital Trust (outright or in trust for his or her benefit) if my Spouse were to die at the time of the proposed distribution by the Trustee. If any of these Beneficiaries shall have been adjudicated incompetent to give such consent (other than because of minority), the Beneficiary's conservator may consent (or refrain from consenting) on the Beneficiary's behalf. If no adult person qualifies as "my Beneficiary," the Trustee may pay to my Spouse or apply for my Spouse's benefit as much of the principal of the Marital Trust as the Trustee determines to be appropriate, so long as a court of competent jurisdiction first determines that the distribution is in the best interests of my Spouse and my Beneficiaries as a group. Notwithstanding the foregoing, if my Spouse is serving as sole Trustee or as a Co-Trustee, my Spouse shall have no right to participate in any decision regarding distributions under this Paragraph 6(b), and that decision shall be made solely by the Special Trustee.

(c) **Totuoso Free Living Provisions**.
Notwithstanding any provision of this Agreement to the contrary, the Trustee shall permit my Spouse during my Spouse's lifetime to occupy Tortuoso without rental. The Trustee shall make all payments of principal and interest on encumbrances, taxes and assessments which become payable upon Tortuoso, and shall pay all costs of insuring, maintaining and repairing Tortuoso (all of which are referred to as "payments"). The Trustee shall charge the Marital Trust's proportionate share of the payments to the Marital Trust.

(d) **Sale of Tortuoso**. If my Spouse instructs the
Trustee to do so, the Trustee shall sell Tortuoso at a time, for
a price, and on terms to be determined by the Trustee. However,
I request but do not direct, it being my intention not to
jeopardize the Marital Trust's qualification for the marital
deduction available under federal estate tax law), that the
Trustee sell Tortuoso at its fair market value to TRAVILYN.  I
made this request in an attempt to keep Tortuoso in my family
should circumstances allow that to happen. Nevertheless, I
recognize that economic circumstances may arise which make the
sale of Tortuoso to a non-family member a wise thing to do.  In
particular, I note the prospect of an offer to purchase Tortuoso
by an individual who may be willing to pay more (perhaps
considerably more) than fair market value for Tortuoso in an
attempt to "connect" several adjoining properties, one of which
would be Tortuoso. Under these circumstances, I would think it
would be totally appropriate for my Spouse to direct that
Tortuoso be sold.

(e) **If Spouse Vacates Tortuoso**. If my Spouse
decides to live elsewhere but does not direct the Trustee to sell
Tortuoso, my Spouse may (but, in order to not jeopardize the
marital deduction, shall not be required to) direct that TRAVILYN
be allowed to live at Tortuoso, in which case TRAVILYN shall pay
the insurance, taxes, pool maintenance, gardener and other upkeep
of the grounds, utilities and other expenses related to Tortuoso.
In addition, TRAVILYN shall pay rent to the Marital Trust during
any such tenancy directed by my Spouse, in an amount to be agreed
upon by my Spouse, the Trustee and TRAVILYN. I request (but do
not direct, so as not to jeopardize the marital deduction) that
they agree upon a rental amount that TRAVILYN can afford, keeping

Case 3:22-cv-00532   Document 1-3   Filed 07/14/22   Page 89 of 96 PageID #: 113

in mind that the expenses enumerated above are considerable. If my Spouse vacates Tortuoso, she shall be entitled to take with her any of the items described in Paragraph 4(d) of ARTICLE FIVE as she may decide. Such items, however, shall remain the property of the Marital Trust. My Spouse can direct at any time that TRAVILYN shall no longer be allowed to live at Tortuoso. The terms of this paragraph shall be subject to all other provisions herein designed to ensure qualification of the Marital Trust for the estate tax marital deduction.

(f) **RANDY's rights**. If TRAVILYN predeceases my Spouse, then RANDY shall be entitled to the same rights and obligations given to TRAVILYN in Paragraph 6(d) and 6(e) above, whether or not he was married to TRAVILYN at the time of her death.

(g) **Tortuoso Sale Proceeds**. In the event of a sale of Tortuoso during my Spouse's lifetime, then at my Spouse's election, which may be changed from time to time, and notwithstanding any other provisions of this Article, the Trustee shall use the proceeds of sale in any of the following manners:

(i) Retain the proceeds of the sale in the Marital Trust;

(ii) Use the proceeds or any part of the proceeds for the purchase of any other home which my Spouse selects (at a price not to exceed that for which Tortuoso was sold, reduced by applicable taxes and expenses), which home shall remain an asset of the Marital Trust, and permit my Spouse during my Spouse's lifetime to occupy the new home, without rental, charging the payments relating to the new home to the Marital Trust;

(iii)  Use as much or all of the proceeds to enable my Spouse to find other living accommodations.  I do not wish to restrict the Trustee in any manner in the use of any such proceeds so as to enable my Spouse to live comfortably for the balance of her lifetime, provided that at all times the Trustee administer the Marital Trust in such manner as to continue the qualification of the Marital Trust for the federal estate tax marital deduction.

(h)  **Death of Spouse**.  Upon my Spouse's death, any accrued but undistributed income of the Marital Trust shall be distributed to my Spouse's estate.  The remainder of the Marital Trust shall be distributed as follows:

(i)  Tortuoso shall be held in trust for TRAVILYN, subject to all unpaid taxes, deeds of trust and other liens and encumbrances, if any, to which Tortuoso may be subject at the time of my Spouse's death.  If TRAVILYN predeceases my Spouse or upon her subsequent death, Tortuoso shall be held in trust for TAMMY under the same terms.  It is my request that TAMMY allow RANDY to live in Tortuoso for his lifetime (whether or not RANDY was married to TRAVILYN at the time of TRAVILYN's death).  If TAMMY is predeceased, or upon her subsequent death, Tortuoso shall be held in trust for RANDY under the same terms.  No death taxes shall be charged to this trust.  It is my request that TRAVILYN, TAMMY or RANDY, as the case may be, make all payments of principal and interest on encumbrances, taxes and assessments which become payable upon Tortuoso, and pay all costs of insuring, maintaining and repairing Tortuoso, including the cost of utilities, pool maintenance, gardener and other upkeep of the grounds.  Upon the death of the survivor of TRAVILYN and RANDY, Tortuoso shall be distributed to TAMMY, free of trust.  If

Case 3:22-cv-00532   Document 1-3   Filed 07/14/22   Page 91 of 96 PageID #: 115

TAMMY is not then living, Tortuoso shall be distributed to her
then living descendants, by right of representation.

(ii)  My Music Interests, as defined in
Paragraph 4(b) of ARTICLE FIVE, shall be managed and distributed
as follows:

a.  Ten percent (10%) shall be held in
a separate trust for the benefit of my brother ALAN with the
income (as defined in Paragraph 11 of ARTICLE SEVEN) distributed
to ALAN, in quarterly installments.  If ALAN either does not
survive my Spouse or should later die, this trust shall be held
for his son CHRISTOPHER under the same terms.  If CHRISTOPHER
either does not survive my Spouse or should later die, this trust
shall be held for RANDY under the same terms.  If RANDY either
does not survive my Spouse or should later die, this trust shall
be added to the trust for TRAVILYN and TAMMY to be managed and
distributed according to Paragraph 6(h)(iii) below.

b.  Ninety percent (90%) shall be held
in a separate trust, with the income (as defined in Paragraph 11
of ARTICLE SEVEN) distributed to TAMMY and TRAVILYN in equal
shares, in quarterly installments.  If either does not survive my
Spouse or should later die, her share shall be distributed to her
descendants who are then living, by right of representation.  If
either of them has no then living descendants, her share shall
augment the share for the other of them.  If I have no
descendants who are then living, My Music Interests shall be
distributed to my heirs at law and this trust shall thereupon
terminate.

c.  TAMMY and TRAVILYN, or the
survivor of them if only one of them is then living, shall serve
as Trustee of both Trusts established according to this

Paragraph 6(h)(ii).  If neither of them is able to serve, the
Trustee named in Paragraph 1 of ARTICLE THREE shall serve.

      (iii)  The remaining balance of the Marital
Trust shall be distributed to TAMMY and to TRAVILYN, in equal
shares, free of trust.  If either does not survive my Spouse, her
share shall be distributed to her descendants who are then
living, by right of representation, free of trust.  If either of
them has no then living descendants, her share shall augment the
share for the other of them.  If I have no descendants who are
then living, the remaining trust assets shall be distributed to
my heirs at law."

III.

     Paragraph 13 of ARTICLE ELEVEN is deleted in its
entirety and the following is substituted in its place:

    "13.  **No Contest**.

      (a)  As used in this Paragraph 13, the following
terms have the following meanings:

      (i)  The term "Estate Planning Documents"
refers to my Will, any Codicil to it, any trust (revocable or
irrevocable) established by me (alone or with another), during my
lifetime or upon my death, including this Trust, an amendment to
any such revocable trust, any other document executed by me
(alone or with another) which affects the disposition of assets
of my estate or any such trust following my death (including, but
not limited to, an agreement with my Spouse concerning our
respective property rights and an agreement among co-owners of a
business or other asset concerning the sale or other disposition
of a deceased or disabled co-owner's interest), any beneficiary

Case 3:22-cv-00532   Document 1-3   Filed 07/14/22   Page 93 of 96 PageID #: 117

designation executed by me and any document executed by me which exercises a power of appointment vested in me.

(ii) The term "Contest" refers to any one or more of the following actions taken in a court of law: Contesting the validity of any of my Estate Planning Documents; seeking to obtain an adjudication that any part of my Estate Planning Documents is void or seeking otherwise to void, nullify or set aside any part of my Estate Planning Documents; filing a claim against my estate or any trust created under an Estate Planning Document following the rejection of the claim (or deemed rejection under applicable California Probate Code sections) by the Executor of my Will or the Trustee of any such trust; challenging the characterization of any assets as my separate property or the community property of my Spouse and me pursuant to an agreement between my Spouse and me or by the Executor or Trustee under any of my Estate Planning Documents.

(iii) Notwithstanding the provisions of the preceding paragraph, if an Executor or Trustee has a financial interest in an asset's characterization as my separate property or the community property of my Spouse and me, and within ten (10) days after a beneficiary's receipt of notice of that characterization the beneficiary objects to it in a writing delivered to the Executor or Trustee, the determination of the asset's character shall instead be made by the Special (independent) Trustee under the Estate Planning Document governing the disposition of the asset in question (the identity of that Special or independent Trustees to be determined as though the Executor or Trustee were a beneficiary).

(b) If any beneficiary under this Trust shall, singly or in conjunction with any other person or persons,

Case 3:22-cv-00532   Document 1-3   Filed 07/14/22   Page 94 of 96 PageID #: 118

initiate or support a Contest, directly or indirectly (whether or
not it is pursued to its completion), then the right of that
person to take any interest which is given to him or her by this
Trust shall be determined as though he or she had predeceased the
execution of this Trust without surviving descendants. The
Trustee is hereby authorized to defend, at the expense of this
Trust, any attack of any nature on any of my Estate Planning
Documents.

IV.

In all other respects, the Twelfth Amendment and
Restatement of The Survivor's Trust created under The Jay and
Lynne E. Livingston Family Trust of 1985, signed on December 13,
2000, shall remain in full force and effect.

Executed at _____, California, on
_____, 2001.

_____
JAY LIVINGSTON, Settlor

We certify that we have received the foregoing
Thirteenth Amendment to the Trust Agreement of The Survivor's
Trust created under The Jay and Lynne E. Livingston Family Trust
of 1985 signed and acknowledged by the Settlor. We agree to
hold, manage and distribute the Trust assets in accordance with
the terms of the Trust Agreement, as amended.

_____
JAY LIVINGSTON, Co-Trustee

_____
GARY KRESS, Co-Trustee

H:\CLIENTS\LF LIVINGST.JAY\13th ta.frm

STATE OF CALIFORNIA          )                    )  ss.
COUNTY OF LOS ANGELES        )

    On _____JANUARY 5_____, 2001, before me
_____JAMES D STEPHENS_____, a Notary
Public in and for said ~~County and~~ State personally appeared
JAY LIVINGSTON,☒ personally known to me -OR- ☐ proved to me on
the basis of satisfactory evidence to be the person whose name is
subscribed to the within instrument and acknowledged to me that
he executed the same in his authorized capacity, and that by his
signature on the instrument, the person, or the entity upon
behalf of which the person acted, executed the instrument.

    WITNESS my hand and official seal.



JAMES D. STEPHENS
COMM. # 1218373
NOTARY PUBLIC-CALIFORNIA
VENTURA COUNTY
COMM. EXP. MAY 6, 2003

Notary Public in and for
said ~~County and~~ State

STATE OF CALIFORNIA          )
                     )  ss.
COUNTY OF LOS ANGELES  )

    On __OCt 2_____, 2001, before
me ___SONIA METZ_____, a Notary
Public in and for said County and State personally appeared
GARY KRESS,☐ personally known to me -OR- ☐ proved to me on the
basis of satisfactory evidence to be the person whose name is
subscribed to the within instrument and acknowledged to me that
he executed the same in his authorized capacity, and that by his
signature on the instrument, the person, or the entity upon
behalf of which the person acted, executed the instrument.

    WITNESS my hand and official seal.

SONIA METZ
Commission # 1312155
Notary Public - California
Los Angeles County
My Comm. Expires Aug 2, 2006

Notary Public in and for
said County and State

*THIRTEENTH AMENDMENT TO THE SURVIVOR'S TRUST CREATED UNDER*
*THE JAY AND LYNNE E. LIVINGSTON FAMILY TRUST OF 1985*