# EXHIBIT D

Tammy Livingston, individually, and as )
Beneficiary and Co-Trustee of the )
Livingston Music Interest Trust, )    Case No. 3:21-cv-00780
    )
    Plaintiff, )
    )    Judge Waverly D. Crenshaw, Jr.
v. )    Magistrate Judge Alistair Newbern
    )
Jay Livingston Music, Inc., a Tennessee )
corporation, Randy Talmadge, )
individually, and Travilyn Livingston, )
as Co-Trustee of the Livingston Music )
Interest Trust, )
    )
    Defendants. )

## Declaration of Randy Talmadge

1.    My name is Randy Talmadge. I have personal knowledge of the facts stated in this declaration.

2.    My wife (Travilyn Livingston) and I are the owners of Jay Livingston Music, Inc. I oversee the day to day operations of the company, which includes licensing songs written by Jay Livingston and collecting and paying royalties.

3.    Attached as Exhibit 1 is an Agreement dated July 1984 between Jay Livingston and Jay Livingston Music. As described in paragraph 2, the Agreement includes a Popular Songwriters Agreement form. Mr. Livingston executed a form for each of the songs that Jay Livingston Music publishes.

4.    Attached as Exhibit 2 is the executed Popular Songwriters Agreement for "Whatever Will Be, Will be (Que Sera, Sera)."

1

5. Attached as Exhibit 3 is an Agreement dated May 2000 between Jay Livingston Music, Inc., and Jay Livingston pursuant to which Mr. Livingston acknowledged and ratified the Songwriter Agreements and extended the terms of the agreements.

I declare under penalty of perjury that the foregoing is true and correct. Executed on _DECEMBER 9_, 2021.

2

# EXHIBIT 1

Dated as of July 15, 1984

WHEREAS, TRAVILYN LIVINGSTON is the sole owner of the music publishing company known as "JAY LIVINGSTON MUSIC"; and

WHEREAS, JAY LIVINGSTON intends to assign to Jay Livingston Music his copyright interests in certain musical compositions; and

THEREFORE, Jay Livingston and Jay Livingston Music have agreed as follows:

1. Jay Livingston shall assign to Jay Livingston Music his copyright interest in all musical compositions set forth in Exhibit "A", attached hereto and by this reference made a part hereof. In addition, Jay Livingston shall use reasonable efforts to assign to Jay Livingston Music his copyright interest in musical compositions which he hereafter owns or controls.

2. With respect to each musical composition assigned to Jay Livingston Music by Jay Livingston, the parties shall enter into a separate popular songwriters agreement in the form of the Popular Songwriters Agreement attached hereto as Exhibit "B", attached hereto and by this reference made a part hereof. Writers royalties shall be paid solely in accordance with the terms and conditions of Enhibit "B".

3. Travilyn Livingston agrees to consult on a regular basis with Jay Livingston with respect to the business and creative activities of Jay Livingston Music.

JAY LIVINGSTON MUSIC

By _____
TRAVILYN LIVINGSTON

_____
JAY LIVINGSTON

| | COMPOSER | AUTHOR | RE# & DATE | ORIGINAL PUBLISHER |
|---|---|---|---|---|
| ...ap | Jay Livingston / Ray Evans | Jay Livingston / Ray Evans | RE 163-538 3/25/83 | Criterion Music Corp. |
| ...ve You | Jay Livingston / Ray Evans | Jay Livingston / Ray Evans | RE 163-546 3/25/83 | Northern Music Corp. |
| ...ome | Jay Livingston / Ray Evans | Jay Livingston / Ray Evans | RE 166-263 1/10/83 | Livingston & Evans, Inc |
| ...Boat, Oomba, Oomba, | Jay Livingston / Ray Evans | Jay Livingston / Ray Evans | RE 133-180 7/6/82 | Ardmore Music Corp. |
| ...ati | Jay Livingston / Ray Evans | Jay Livingston / Ray Evans | R 603260 4/18/75 | George Simon, Inc. |
| ...ua Choo Choo | Jay Livingston / Ray Evans | Jay Livingston / Ray Evans | RE 167-431 5/10/83 | Edwin H. Morris & Co. |
| ...ful | Jay Livingston / Ray Evans | Jay Livingston / Ray Evans | RE 167-430 5/10/83 | Edwin H. Morris & Co. |
| ...lank, Clunk | Jay Livingston / Ray Evans | Jay Livingston / Ray Evans | RE 163-505 3/25/83 | Northern Music Corp. |
| ...It Yourself Cha | Jay Livingston / Ray Evans | Jay Livingston / Ray Evans | RE 193-830 1/3/84 | Livingston & Evans, Inc |
| ...ur Applause | Jay Livingston / Ray Evans | Jay Livingston / Ray Evans | RE 195-725 1/3/84 | Northern Music Corp. |
| ...s Gonna Be / ...ful | Jay Livingston / Ray Evans | Jay Livingston / Ray Evans | RE 13-259 1/4/79 | Famous Music Corp. |
| ...pani Blossom, / ...pani Blossom | Jay Livingston / Ray Evans | Jay Livingston / Ray Evans | RE 13-261 1/4/79 | Famous Music Corp. |
| ...All You Got | Jay Livingston / Ray Evans | Jay Livingston / Ray Evans | RE 195-731 1/3/84 | Northern Music Corp. |
| ...y, My Love | Jay Livingston / Ray Evans | Jay Livingston / Ray Evans | RE 195-731 1/3/84 | Northern Music Corp. |
| ...ow | Jay Livingston / Ray Evans | Ray Evans | RE 163-501 3/25/83 | Artists Music, Inc. |

EXHIBIT A

| Title | COMPOSER | AUTHOR | RE # & DATE | ORIGINAL PUBLISHER |
|---|---|---|---|---|
| Enough | Jay Livingston / Ray Evans | Jay Livingston / Ray Evans | RE 167-462 5/10/83 | Northern Music Corp. |
| Little Too Lonely Were A Little Too | Jay Livingston / Ray Evans | Jay Livingston / Ray Evans | RE 117-594 1/25/82 | Livingston & Evans, Inc. |
| ear You Whisper | Jay Livingston / Ray Evans / Napoleon A. Tuiteleleopaya/N.A.T. | Jay Livingston / Ray Evans | RE 193-860 1/3/84 | Northern Music Corp. |
| l' Lovin' Doll | Jay Livingston / Ray Evans | Jay Livingston / Ray Evans | RE 121-425 2/10/82 | Criterion Music Corp. |
| e Rock Roll | Jay Livingston / Ray Evans | Jay Livingston / Ray Evans | RE 163-494 3/25/83 | Famous Music Corp/ |
| | Jay Livingston / Ray Evans | Jay Livingston / Ray Evans | RE 117-597 1/25/82 | Livingston & Evans, Inc |
| a,Mama Where You igar? | Jay Livingston / Ray Evans | Jay Livingston / Ray Evans | RE 167-435 5/10/83 | Edwin H. Morris & Co., Inc. |
| | Jay Livingston / Ray Evans | Jay Livingston / Ray Evans | RE 192-906 1/4/84 | Leeds Music Corp. |
| imba | Jay Livingston / Ray Evans | Jay Livingston / Ray Evans | RE 133-176 7/6/82 | Famous Music Corp. |
| ares | Jay Livingston / Ray Evans | Jay Livingston / Ray Evans | RE 163-502 3/25/83 | Shapiro, Bernstein & Co Inc. |
| Papa | Jay Livingston / Ray Evans | Jay Livingston / Ray Evans | RE 117-593 1/25/82 | Livingston & Evans Mus Co. |
| r Arms | Jay Livingston / Ray Evans | Jay Livingston / Ray Evans | RE 192-905 1/3/84 | Leeds Music Corp. |
| Spurs | Jay Livingston / Ray Evans | Jay Livingston / Ray Evans | RE 133-175 7/6/82 | Criterion Music Corp. |
| d Greatest Sex | Jay Livingston / Ray Evans | Jay Livingston | RE 117-596 1/25/82 | Livingston & Evans Mu Co |
| | Jay Livingston / Ray Evans | Jay Livingston | RE 163-547 | Northern Music Corp. |

| | COMPOSER | AUTHOR | RE # & DATE | ORIGINAL PUBLISHER |
|---|---|---|---|---|
| | Jay Livingston Ray Evans | Jay Livingston Ray Evans | RE 194-307 1/3/84 | Northern Music Corp. |
| emple Of An standing Heart | Jay Livingston Ray Evans | Jay Livingston Ray Evans | RE 126-335 2/10/82 | Paramount Music Corp. |
| How It Is | Jay Livingston Ray Evans | Jay Livingston Ray Evans | RE 195-251 1/3/84 | Roger Music, Inc. |
| Life | Jay Livingston Ray Evans | Jay Livingston Ray Evans | RE 167-429 5/10/83 | Edwin H. Morris & Co., Inc. |
| What You Mean To | Ralph Carmichael | Jay Livingston Ray Evans | RE 195-252 1/3/84 | Famous Music Corp. |
| un, Cold Moon | Jay Livingston Ray Evans | Jay Livingston Ray Evans | RE 193-867 1/3/84 | Northern Music Corp. |
| e In The Sun) t, My Love | Franz Waxman | Jay Livingston Ray Evans | RE 133-178 7/6/82 | Paramount Music Corp. |
| ove Again | Jay Livingston Ray Evans | Jay Livingston Ray Evans | RE 163-499 3/25/83 | Artists Music, Inc. |
| er Will Be, Will Be era, Sera) | Jay Livingston Ray Evans | Jay Livingston Ray Evans | RE 163-500 3/25/83 | Artists Music, Inc. |
| Diddy-Ay | Jay Livingston Ray Evans | Jay Livingston Ray Evans | RE 117-595 1/25/82 | Livingston & Evans Mu. Co. |
| n l In Love | Jay Livingston Ray Evans | Jay Livingston Ray Evans | RE 167-428 5/10/83 | Edwin H. Morris & Co Inc. |
| Smathers | Jay Livingston Ray Evans | Jay Livingston Ray Evans | RE 117-600 1/25/82 | Livingston & Evans Mu. Co. |
| l My Heart | Leith Stevens | Jay Livingston Ray Evans | RE 167-439 5/10/83 | Victor Young Publicati Inc. |
| Him | Andre Joseph Grassi | Jay Livingston Ray Evans | RE 163-537 3/25/83 | Enoch & Cie |
| Take Over | Jay Livingston Ray Evans | Jay Livingston Ray Evans | RE 163-504 3/75/83 | Northern Music Corp. |



NOTE TO SONGWRITERS: (a) DO NOT SIGN THIS CONTRACT IF IT HAS ANY CHANGES UNLESS YOU HAVE FIRST DISCUSSED SUCH CHANGES WITH AGAC. (b) FOR YOUR PROTECTION PLEASE SEND A FULLY EXECUTED COPY OF THIS CONTRACT TO AGAC

# POPULAR SONGWRITERS RENEWAL CONTRACT

Copyright 1978 AGAC

AGREEMENT made this ............... day of ............... 19 ... between

## JAY LIVINGSTON MUSIC

(hereinafter called "Publisher") and ......... **JAY LIVINGSTON**

jointly and/or severally hereinafter collectively called "Writer",

WITNESSETH:

**Compositions**

1. The Writer hereby sells, assigns, transfers and delivers to the Publisher any and all rights and interests whatsoever now or at any time or times hereafter known or in existence which he now possesses or which he may at any time or times hereafter acquire or possess in or to the following described musical compositions:

| Title | Original Publisher | Date of Copyright Registration | Copyright Registration Number |
|---|---|---|---|
| | | | |

(hereinafter referred to as "the composition"), including the title, words and music thereof and any and all adaptations, arrangements and versions thereof respecting which he is entitled to obtain renewal copyright, for and during the second or renewal period of the United States copyright or for the period of twenty-eight years from the date of expiration of the first original term of the United States copyright, whichever may be shorter, and subject to the terms of this contract.

**Performing Rights Affiliation**

2. In all respects this contract shall be subject to any existing agreements between the parties hereto and the following small performing rights licensing organization with which Writer and Publisher are affiliated:

(Delete Two) (ASCAP / BMI / SESAC) Nothing contained herein shall, or shall be deemed to, alter, vary or modify the rights of Writer and Publisher to share in, receive and retain the proceeds distributed to them by such small performing rights licensing organization pursuant to their respective agreement with it.

**Warranty**

3. The Writer, individually and not jointly, warrants and represents that the following are the only co-writers and composers of said composition:

that he has the right to renew and extend the copyright of the said composition; that he has not bargained, sold, assigned, transferred, hypothecated, pledged or encumbered any of his right, title or interest in or to the renewal copyright in said composition, except as aforesaid in paragraph 2 hereof, but nothing herein contained shall be construed as a warranty or representation by any individual Writer-signatory hereof, as to the rights of any other Writer or composer of said composition, it being understood that the warranties by the Writer are individual and not joint.

**Royalties**
*(Insert amount of Payment and Advance here)*

4. In consideration of this contract, the Publisher agrees to pay the Writer as follows:

(a) (i) $1.00 ............................ receipt of which is hereby acknowledged; said sum shall constitute an outright payment, shall remain the property of the Writer and shall not be deductible from any payments heretofore or hereafter due the Writer.

(ii) ........... —0— ............ as an advance against royalties, receipt of which is hereby acknowledged, which sum shall remain the property of the Writer and shall be deductible only from payments hereafter becoming due the Writer under this Contract.

**Piano Copies Sliding Scale**
*(Insert percentage here)*

(b) In respect of regular piano copies sold and paid for in the United States and Canada, **the following royalties per copy, as distributed by Publisher:**
...9...% (in no case, less than 10%) of the wholesale selling price of the first 200,000 copies or less; plus
...12...% (in no case, less than 12½%) of the wholesale selling price of copies in excess of 200,000 and not exceeding 500,000; plus
...15...% (in no case, less than 15%) of the wholesale selling price of copies in excess of 500,000.

**Foreign Royalties** and U.S. and Canadian royalties derived from licenses

(c) ...50...% (in no case, however, less than 50%) of all net sums received by the Publisher in respect of regular piano copies, orchestrations, band arrangements, octavos, quartets, arrangements for combinations of voices and/or instruments, and/or other copies of the composition sold in any other country other than the United States and Canada, provided, however, that if the Publisher should sell such copies through, or cause them to be sold by, a subsidiary or affiliate which is actually doing business in a foreign country, then in respect of such sales, the Publisher shall pay to the Writer not less than 5% of the marked retail selling price in respect of each such copy sold and paid for.

**Orchestrations and Other Arrangements, etc.**

(d) In respect of each copyright **as distributed by Publisher** and for export from the United States, of orchestrations, band arrangements, octavos, quartets, arrangements for combinations of voices and/or instruments, and/or other copies of the composition (other than regular piano copies) the following royalties on the wholesale selling price (after trade discounts, if any):

*(Insert percentage here)*
...10...% (in no case, however, less than 10%) on the first 200,000 copies or less; plus
...12...% (in no case, however, less than 12%) on all copies in excess of 200,000 and not exceeding 500,000; plus
...15...% (in no case, less than 15%) on all copies in excess of 500,000.

**Publisher's Song Book, Folio, etc.**

(e) (i) If the composition, or any part thereof, is included in any song book, folio or similar publication issued by the Publisher containing at least four, but not more than twenty-five musical compositions, the royalty to be paid by the Publisher to the Writer shall be an amount determined by dividing 10% of the wholesale selling price (after trade discounts, if any) of the copies sold, among the total number of the Publisher's copyrighted musical compositions included in such publication. If such publication contains more than twenty-five musical compositions, the said 10% shall be increased by an additional ½% for each additional musical composition.

**Licensee's Song Book, Folio, etc.**

(ii) If, pursuant to a license granted by the Publisher to a licensee not controlled by or affiliated with it, the composition, or any part thereof, is included in any song book, folio or similar publication, containing at least four musical compositions, the royalty to be paid by the Publisher to the Writer shall be that proportion of 50% of the gross license fee received by it under the license which the amount of such musical composition under the license and during the license period.

** (but including U.S. and Canadian print licensing income)**

(iv) Royalties on publication containing less than four musical compositions shall be payable at regular piano copy rates.

**Professional Material and Free Copies** (f) As in "professional material" not sold or resold, no royalties shall be payable. Free copies of the lyrics of the composition shall not be distributed except under the following conditions: (i) with the Writer's written consent, or (ii) when printed without music in limited numbers for charitable, religious or governmental purposes, or for similar public purposes, if no profit is derived, directly or indirectly, or (iii) when authorized for printing in a book, magazine or periodical, where such use is incidental to a novel or story (as distinguished from use in a book of lyrics, a lyric magazine or folio), provided that any such use shall bear the Writer's name and the proper copyright notice, or (iv) when distributed solely for the purpose of exploiting the composition, provided, that such exploitation is restricted to the distribution of limited numbers of such copies for the purpose of influencing the sale of the composition, that the distribution is independent of the sale of any other musical compositions, services, goods, wares or merchandise, and that no profit is made, directly or indirectly, in connection therewith.

**Mechanicals, Electrical Transcription, Synchronization, All Other Rights** (g) _50_% (in no case, however, less than 50%) of:

All gross receipts of the Publisher in respect of any licenses (including statutory royalties) authorizing the manufacture of parts of instruments serving to mechanically reproduce the composition, or to use the composition in synchronization with sound motion pictures, or to reproduce it upon electrical transcription for broadcasting purposes; and of any and all gross receipts of the Publisher from any other source or right now known or which may hereafter come into existence, except as provided in paragraph 2.

**Licensing Agent's Charges** (h) ........ reproduce said composition, or the use of said composition in synchronization or in timed relation with ........ pictures or its reproduction upon electrical transcriptions, or any of them, through an ........ Trustee or other administrator acting for a substantial part of the industry and not under the exclusive control of the Publisher, hereinafter sometimes referred to as licensing agent, the Publisher, ........ computing his receipts, shall be entitled to deduct from gross license fees paid by the Licensees, ........ equal to the charges paid by the Publisher to said licensing agent, provided, however, that in case of synchronization or timed relation with sound motion pictures, said deduction shall in no event ........ 50.00 or 10% of said gross license fee, whichever is less, in connection with the manufacture of parts of instruments serving to mechanically reproduce said composition, said deductions shall not exceed ........ of said gross license fee; and in connection with electrical transcriptions, said deduction shall not ........

**Block Licenses** (i) ........ hereafter granted, and that it will not grant any bulk or block license to include the same, without the written ........ of the Writer in each instance, except (i) that the Publisher may grant such licenses with respect ........ electrical transcription for broadcasting purposes, but in such event, the Publisher shall pay to the Writer ........ proportion of 50% of the gross amount received by it under such license as the number of uses of the composition under each such license during each such license period bears to the total number of uses of ........ Publisher's copyrighted musical compositions under each such license during each such license period; ........ computing the number of the Publisher's copyrighted musical compositions for this purpose, there shall be excluded musical compositions in the public domain and arrangements thereof and those with respect to which the Publisher does not currently publish and offer for sale regular piano copies; (ii) that the Publisher may appoint agents or representatives in countries outside of the United States and Canada to use and to grant licenses for the use of the composition on the customary royalty fee basis under which the Publisher shall receive not less than 10% of the marked retail selling price in respect of regular piano copies, and 50% of all ........ revenue; if, in connection with any such bulk or block license, the Publisher shall have received any advance, the Writer shall not be entitled to share therein, but no part of said advance shall be deducted in ........ the composition's earnings under said bulk or block license. A bulk or block license shall be deemed to mean any license or agreement, domestic or foreign, whereby rights are granted in respect of two or more ........

**Television and New Uses** (j) ........ performing rights licensing organization with which Writer and Publisher are affiliated ........ rights or the right to grant licenses therefor, it is agreed that no licenses shall be ........ without the written consent, in each instance, of the Writer for the use of the composition ........ means of television, or by any means, or for any purposes not commercially ........ for which licenses were not granted by the Publisher on musical compositions prior to ........

**Writer's Consent to Licenses** (k) ........ use the title of the composition, or (ii) for the exclusive use of the composition in any form or for any medium, or for any period of time, or for any territory, other than in customary arrangements with foreign publishers, or (iii) to give a dramatic representation of the composition or to dramatize the plot or story thereof, or (iv) for a vocal rendition of the composition in synchronization with sound motion pictures, or (v) for synchronization use thereof, or (vi) for the use of the composition at a quotation or excerpt therefrom in an article, book, periodical, advertisement or other similar publication. If, however, the Publisher shall ........ the Writer written notice by certified mail, return receipt requested, or telegram, specifying the right and the use to be given or granted, the name of the licensee and the terms and conditions thereof, including the ........ price or other compensation to be received therefor, then, unless the Writer (or any one or more of them shall), within five business days after the delivery of such notice to the address of the Writer hereinafter ........ object thereto, the Publisher may grant such right or license in accordance with the said notice without obtaining the consent of the Writer. Such notice shall be deemed sufficient if sent to the Writer at the address or addresses hereinafter designated or at the address or addresses last furnished to the ........

**Trust for Writer** (l) Any portion of the receipts which may become due to the Writer from license fees (in excess of reaches), whether received directly from the licensee or from any licensing agent of the Publisher, shall, if not paid immediately on the receipt thereof by the Publisher, belong to the Writer and shall be held in trust for the Writer until payment is made, the ownership of said trust fund by the Writer shall not be questioned whether the monies are physically segregated or not.

**Writer Participation** (m) ........

**Writer Credit** (n) On all regular piano copies, orchestrations, band or other arrangements, octavos, quartets, commercial sound recordings and other reproductions of the composition or parts thereof, in whatever form and however produced, Publisher shall include or cause to be included, in addition to the copyright notice, the name of the Writer, and Publisher shall include a similar requirement in every license or authorization issued by it with respect to the composition.

**Power of Attorney** 5. The Writer covenants and agrees to make, execute and deliver any and all further instruments, documents and writings that may be requested by the Publisher for the purpose of perfecting and confirming in the Publisher the rights and interests in the renewal(s) of the copyright(s) in the composition herein granted, and the Writer hereby nominates and appoints the Publisher his true and lawful attorney to make, execute and deliver any and all such instruments, documents and writings in the name of the Writer and to renew and extend the copyright in the composition in the name of the Writer, subject to the terms of this contract.

**Exploitation** 6. (a) ........ form customarily published by it, (ii) include and retain at all times the title of the composition in its ........ compositions, and (iii) use every reasonable effort and means to exploit and promote the sale of the ........ uses of the composition. Unless the aggregate amount of any advances (as provided in paragraph 4(g) ........ and the royalties paid to the Writer within two years from the date hereof, shall equal or exceed the sum of $200.00, the Publisher shall pay to the Writer the difference between said aggregate amount and said sum of $200.00.

**Failure to Exploit** (b) Should the Publisher fail to comply with the provisions of subdivision (a) hereof, the Writer shall be entitled to demand in writing the return of the composition at any time after the expiration of said two-year period, whereupon the Publisher must within one month after the receipt of such notice either comply with the provisions of subdivision (a) hereof, in which event this contract will remain in full force and effect, or upon its failure so to comply, this contract shall terminate and all rights of any and every nature in and to the composition and in and to any and all copyrights and renewal copyrights ........ therein in the United States and throughout the world (subject, however, to the terms of paragraph 7 hereof), shall revest in and become the property of the Writer and shall be reassigned to him by the Publisher. The Writer shall not be obligated to return or pay to the Publisher any outright payment, advance or indebtedness as a condition of such reassignment; the said reassignment shall be in accordance with and subject to the provisions of paragraph 8 hereof, and in addition, the Publisher shall pay to the Writer all gross sums ........

**Foreign Copyright** 7. (a) Each copyright on the composition in countries other than the United States shall be secured only in the name of the Publisher, and the Writer shall not at any time divest itself of said foreign copyright directly or indirectly.

**Foreign Publication** (b) No rights shall be granted by the Publisher in the composition to any foreign publisher or licensee inconsistent with the terms hereof.

**Foreign Advance** (c) If foreign rights in the composition are separately conveyed, otherwise than as a part of the Publisher's current ........

except to the extent

**No Foreign Allocations**

pictures, or in respect of any world-wide licenses, or in respect of any such composition in countries... ... ...but amount shall be deducted for payments or allocations to...

**Termination or Expiration of Contract**

8. Upon the termination or expiration of this contract, all rights of any and every nature and to the composition and in and to any and all copyrights secured therein in the United States and throughout the world, shall re-vest in and become the property of the Writer, and shall be re-assigned to the Writer by the Publisher free of any and all encumbrances of any nature whatsoever provided that

(a) If the Publisher, prior to such termination or expiration, shall have granted a domestic license for the use of the composition, not inconsistent with the terms and provisions of this contract, the re-assignment may be subject to the terms of such license.

(b) Publisher shall assign to the Writer all rights which it may have under any such agreement or license referred to in subdivision (a) in respect of the composition, including, but not limited to, the right to receive all royalties or other monies earned by the composition thereunder after the date of termination or expiration of this contract. Should the Publisher thereafter receive or be credited with any royalties or other monies so earned, it shall pay the same to the Writer.

(c) The Writer shall not be obligated to return or pay to the Publisher any advance or indebtedness as a condition of the re-assignment provided for in this Paragraph 8, and shall be entitled to receive the plates and copies of the composition in the possession of the Publisher.

(d) Publisher shall pay any and all royalties which may have accrued to the Writer prior to such termination or expiration.

(e) The Publisher shall execute any and all documents and do any and all acts or things necessary to effect any and all re-assignments to the Writer herein provided for.

**Negotiations for New or Unspecified Uses**

9. ... ...but for which no specific provision has been made herein, the Publisher shall... ...Negotiations respecting all the terms... ...thereupon be entered into between the Publisher and the Writer.

**Royalty Statements and Payments**

10. The Publisher shall render to the Writer, hereafter, royalty statements accompanied by remittance of the amount due at the times such statements and remittances are customarily rendered by the Publisher, provided, however, that such statements and remittances shall be rendered either semi-annually or quarterly and not more than ... ...days ... ...after the end of each such semi-annual or quarterly period, as the case may be. The Writer may at any time, or from time to time, make written request for a detailed royalty statement, and the Publisher shall, within sixty days, comply therewith. Such royalty statements shall set forth in detail the various items, foreign and domestic, for which royalties are payable thereunder and the amounts thereof, including, but not limited to, the number of copies sold and the number of uses made in each royalty category. If a use is made in a publication of the character provided in Paragraph 4, subdivision (e) hereof, there shall be included in said royalty statement the title of said publication, the publisher or issuer thereof, the date of and number of uses, the gross license fee received in connection with each publication, the share thereof of all the writers under contract with the Publisher, and the Writer's share thereof. There shall likewise be included in said statement a description of every other use of the composition, and if by a licensee or licensees their name or names, and if said use is upon a part of an instrument serving to reproduce the composition mechanically, the type of mechanical reproduction, the title of the label thereon, the name or names of the artists performing the same, together with the gross license fees earned, and the Writer's share thereof, **to the extent publisher has such infor-**

**Examination of Books**

11. (a) The Publisher shall from time to time, upon written demand of the Writer or his representative, permit the Writer or **mation,** his representative to inspect at the place of business of the Publisher, all books, records and documents relating to the composition and all licenses granted, uses had and payments made therefor, such right of inspection to include, but not by way of limitation, the right to examine all original accountings and records relating to uses and payments

**\*after reasonable** by manufacturers of commercial sound recordings and music rolls; and the Writer or his representative may appoint **written notice herein** an accountant who shall ... ...during usual business hours have access to all records of the Publisher relating to **of and** the composition for the purpose of verifying royalty statements rendered or which are delinquent under the terms hereof.

(b) The Publisher shall, upon written demand of the Writer or his representative **SURE BEST EFFORTS** in the United States and Canada to furnish to the Writer or his representative, statements showing in detail all licenses granted, uses had and payments made in connection with the composition, what licenses or permits were granted, or payments were received, by or through said licensing agent, and to permit the Writer or his representative to inspect at the place of business of such licensing agent, all books, records and documents of such licensing agent, relating thereto. Any and all agreements made by the Publisher with any licensing agent shall provide that any such licensing agent will comply with the terms and provisions hereof. ... ...agent to furnish to the Writer or his representative statements as provided for herein ... ...of the books, records and documents as herein provided ... ...agent should refuse to comply with the said instructions, or any of ... ...Publisher agrees to institute and prosecute diligently and in good faith such...

(c) With respect to foreign licensing agents, the Publisher shall ... ...make the books or records of said licensing agents in countries outside of the United States and Canada to the extent such books or records are available to the Publisher, except that the Publisher may in lieu thereof make available any accountants' reports and audits which the Publisher is able to obtain.

(d) ... ...it is determined that, with respect to any royalty statement rendered by or on behalf ... ...Publisher to the Writer, the Writer is owed a sum equal to or greater than five ... ...of the sum shown on that royalty statement as being due to the Writer, then the ... ...shall pay to the Writer the entire cost of such examination, not to exceed 50% of...

(e) (i) ... ...mechanically reproduce the composition rather than employing a licensing agent for that purpose, the ... ...shall include in each license agreement a provision permitting the Publisher, the Writer or their respective representatives to inspect, at the place of business of such licensee, all books, records and documents of such licensee relating to such license. Within 30 days after written demand by the Writer, the Publisher shall commence to inspect such licensee's books, records and documents and shall furnish a written report of such inspection to the Writer within 90 days following such demand. If the Publisher fails, after written demand by the Writer, to so inspect the licensee's books, records and documents, or fails to furnish such report, the Writer or his representative may inspect such licensee's books, records and documents at his own expense.

(ii) In the further event that the Publisher and the licensee referred to in subdivision (i) above are subsidiaries or affiliates of the same entity or one is a subsidiary or affiliate of the other, then, unless the Publisher employs a licensing agent to administer the license referred to in subdivision (i) above, the Writer shall have the right to make the inspection referred to in subdivision (i) above without the necessity of making written demand on the Publisher as provided in subdivision (i) above.

(iii) If as a result of any inspection by the Writer pursuant to subdivisions (i) and (ii) of this subparagraph the Writer recovers additional monies from the licensee, the Publisher and the Writer shall share equally in the cost...

**Default in Payment or Prevention of Examination**

12. If the Publisher shall fail or refuse, within sixty days after written demand, to furnish or cause to be furnished, such statements, books, records or documents, or to permit inspection thereof, as provided for in Paragraphs 10 and 11 hereof, or within thirty days after written demand, to make the payment of any royalties due under this contract, then the Writer shall be entitled, upon ten days' written notice, to terminate this contract. However if the Publisher shall:

(a) Within the said ten-day period serve upon the Writer a written notice demanding arbitration; and

(b) Submit to arbitration its claim that it has complied with its obligation to furnish statements, books, records or documents, or permitted inspection thereof or to pay royalties, as the case may be, or both, and thereafter comply with any award of the arbitrator within ten days after such award or within such time as the arbitrator may specify;

then this contract shall continue in full force and effect as if the Writer had not sent such notice of termination. If the Publisher shall fail to comply with the foregoing provisions, then this contract shall be deemed to have been terminated as of the date of the Writer's written notice of termination.

**Derivative Works**

13. No derivative work prepared under authority of Publisher during the term of this contract may be utilized by Publisher or any other party after termination or expiration of this contract.

**Notices**

14. All written demands and notices provided for herein shall be sent by certified mail, return receipt requested.

**Suits for Infringement**

15. Any legal action brought by the Writer against any alleged infringer of the composition shall be initiated and prosecuted at its sole cost and expense, but if the Publisher should fail, within thirty days after written demand, to institute such action, the Writer shall be entitled to institute such suit as his cost and expense. All monies recovered as a result of any such action shall, after the deduction of the reasonable expense thereof, be divided equally between the Publisher and the Writer. No settlement of any such action may be made by either party without first notifying the other; in the event that either party should object to such...

Infringement Claims    16. (a) If a claim is presented against the Publisher alleging that the composition is an infringement upon some other work or a violation of any other right of another, and because thereof the Publisher is jeopardized, it shall forthwith serve a written notice upon the Writer setting forth the full details of such claim. The pendency of said claim shall not relieve the Publisher of the obligation to make payment of the royalties to the Writer hereunder, unless the Publisher shall deposit said royalties as and when they would otherwise be payable, in an account in the joint names of the Publisher and the Writer ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~ contract resides East of the Mississippi ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~. If no suit be filed within ~~~~~~~~~~~ after said written notice from the Publisher to the Writer, all monies deposited in said joint account shall be paid over to the Writer plus any interest which may have been earned thereon.    * * * *    18 months

(b) Should an action be instituted against the Publisher claiming that the composition is an infringement upon some other work or a violation of any other right of another, the Publisher shall forthwith serve written notice upon the Writer containing the full details of such claim. Notwithstanding the commencement of such action, the Publisher shall continue to pay the royalties hereunder to the Writer unless it shall, from and after the date of the service of the summons, deposit said royalties as and when they would otherwise be payable, in an account in the joint names of the Publisher and the Writer in a bank or trust company ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~. If the said suit shall be finally adjudicated in favor of the Publisher or shall be settled, there shall be released and paid to the Writer all of such sums held in escrow less any amount paid out of the Writer's share with the Writer's written consent in settlement of said action. Should the said suit finally result adversely to the Publisher, the said amount on deposit shall be released to the Publisher to the extent of any expense or damage it incurs and the balance shall be paid over to the Writer.

(c) In any of the foregoing events, the Writer shall be entitled to payment of said royalties or the money so deposited at and after such time as he files with the Publisher a surety company bond, or a bond in other form acceptable to the Publisher, in the sum of such payments to secure the return thereof to the extent that the Publisher may be entitled to such return. The foregoing payments or deposits or the filing of a bond shall be without prejudice to the rights of the Publisher or Writer in the premises.

Arbitration    17. Any and all differences, disputes or controversies arising out of or in connection with this contract shall be submitted to arbitration before a sole arbitrator under the then prevailing rules of the American Arbitration Association. The location of the arbitration shall be New York, New York, if the Writer on the date of execution of this contract resides East of the Mississippi River, or Los Angeles, California, if the Writer on the date of execution of this contract resides West of the Mississippi River. The parties hereto individually and jointly agree to abide by and perform any award rendered in such arbitration. Judgment upon any such award rendered may be entered in any court having jurisdiction thereof.

Assignment    18. ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~ consent of the Writer. The Writer has been induced to enter into this contract in reliance ~~~~~~~~~~~~~~~~~~ on the personal service and ability of the Publisher in the exploitation of the composition ~~~~~~~~~~~~~~~~~~~~~~ thereof it is the intention of the parties and the essence of the relationship between them that ~~~~~~~~~~~~~~~ granted to the Publisher shall remain with the Publisher and that the same shall not be ~~~~~~~~~~~~~ including, without limitations, successors to or receivers or trustees of the property of the Publisher. ~~~~~~~~~~~~~~~~~~~~~~~~~~~~ In the event of the voluntary or involuntary bankruptcy of the Publisher, this contract shall terminate, provided, however, that the composition may be included by the Publisher in a bona fide voluntary sale of its music business or its entire catalog of musical compositions, or in a merger or consolidation of the Publisher with another corporation, in which event the Publisher shall immediately give written notice thereof to the Writer; and provided further that the composition and the copyright therein may be assigned by the Publisher to a subsidiary or affiliated company generally engaged in the music publishing business. If the Publisher is an individual, the composition may pass to a legatee or distributee as part of the inheritance of the Publisher's music business and entire catalog of musical compositions. Any such transfer or assignment shall, however, be conditioned upon the execution and delivery by the transferee or assignee to the Writer of an agreement to be bound by and to perform all of the terms and conditions of this contract to be performed on the part of the Publisher.

Subsidiary Defined    19. A subsidiary, affiliate, or any person, firm or corporation controlled by the Publisher or by such subsidiary or affiliate, as used in this contract, shall be deemed to include any person, firm or corporation, under common control with, or the majority of whose stock or capital contribution is owned or controlled by the Publisher or by any of its officers, directors, partners or associates, or whose policies and actions are subject to domination or control by the Publisher or any of its officers, directors, partners or associates.

Amounts    20. The amounts and percentages specified in this contract shall be deemed to be the amounts and percentages agreed upon by the parties hereto, unless other amounts or percentages are inserted in the blank spaces provided therefor.

Modifications    21. This contract is binding upon and shall enure to the benefit of the parties hereto and their respective successors in interest (as hereinbefore limited). If the Writer (or one or more of them) shall not be living, any notices may be given to, or consents given by, his or their successors in interest. No change or modification of this contract shall be effective unless reduced to writing and signed by the parties hereto.

The words in this contract shall be so construed that the singular shall include the plural and the plural shall include the singular where the context so requires and the masculine shall include the feminine and the feminine shall include the masculine where the context so requires.

Paragraph Headings    22. The paragraph headings are inserted only as a matter of convenience and for reference, and in no way define, limit or describe the scope or intent of this contract nor in any way affect this contract.

Special Provisions    23.

Writers Respective Shares    24. Whenever the term "Writer" is used herein (except as provided in Paragraph 3 hereof), it shall be deemed to mean all of the persons executing this agreement below, (the same being the authors and composers of said compositions and their respective lawful successors), and any and all royalties herein provided to be paid to the Writer shall be paid jointly to the following persons executing this agreement if there be more than one, and shall be divided among them as follows:

| Name and Soc. Sec. # | Address | Share | Signature |
| --- | --- | --- | --- |
| JAY LIVINGSTON | 782 TORTUOSO WAY | | |
| 093164748 | LOS ANGELES, CA 90077 | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Witness:            Publisher JAY LIVINGSTON MUSIC

By

Address    P.O. BOX 120004
            NASHVILLE, TENNESSEE 37212

SEND A COPY OF THE FULLY SIGNED CONTRACT TO AGAC.

# EXHIBIT 2



NOTE TO SONGWRITERS: (A) DO NOT SIGN THIS CONTRACT IF IT HAS ANY CHANGES UNLESS YOU HAVE
FIRST DISCUSSED SUCH CHANGES WITH AGAC. (B) FOR YOUR PROTECTION PLEASE SEND A FULLY
EXECUTED COPY OF THIS CONTRACT TO AGAC.

# POPULAR SONGWRITERS RENEWAL CONTRACT

· Copyright 1978 AGAC ·

AGREEMENT made this **15th** day of **JULY** , 19 **84** between

**JAY LIVINGSTON MUSIC**

(hereinafter called "Publisher") and **JAY LIVINGSTON**

jointly and/or severally hereinafter collectively called "Writer"):

WITNESSETH:

**Compositions**  1. The Writer hereby sells, assigns, transfers and delivers to the Publisher any and all rights and interests whatsoever now or at any time or times hereafter known or in existence which he now possesses or which he may at any time or times hereafter acquire or possess in or to the following described musical compositions:

| Title | Original Publisher | Date of Copyright Registration | Copyright Registration Number |
|---|---|---|---|
| "WHATEVER WILL BE, WILL BE, (QUE SERA, SERA) " | Artists Music Inc. | 3/25/83 | RE 163-500 |

(hereinafter referred to as "the composition"), including the title, words and music thereof and any and all adaptations, arrangements and versions thereof respecting which he is entitled to obtain renewal copyright, for and during the second or renewal period of the United States copyright or for the period of twenty-eight years from the date of expiration of the first original term of the United States copyright, whichever may be shorter, and subject to the terms of this contract.

**Performing Rights Affiliation**  2. In all respects this contract shall be subject to any existing agreements between the parties hereto and the following small performing rights licensing organization with which Writer and Publisher are affiliated:

**(Delete Two)** ——▶ (ASCAP)(XXX)(XXXX) Nothing contained herein shall, or shall be deemed to, alter, vary or modify the rights of Writer and Publisher to share in, receive and retain the proceeds distributed to them by such small performing rights licensing organization pursuant to their respective agreement with it.

**Warranty**  3. The Writer, individually and not jointly, warrants and represents that the following are the only co-writers and composers of said composition:

Jay Livingston
Ray Evans

that he has the right to renew and extend the copyright of the said composition; that he has not bargained, sold, assigned, transferred, hypothecated, pledged or encumbered any of his right, title or interest in or to the renewal copyright in said composition, except as aforesaid in paragraph 2 hereof, but nothing herein contained shall be construed as a warranty or representation by any individual Writer-signatory hereof, as to the rights of any other Writer or composer of said composition, it being understood that the warranties by the Writer are individual and not joint.

**Royalties**  4. In consideration of this contract, the Publisher agrees to pay the Writer as follows:

**(Insert amount of Payment and Advance here)**
(a) (i) $1.00_____ receipt of which is hereby acknowledged; said sum shall constitute an outright payment, shall remain the property of the Writer and shall not be deductible from any payments heretofore or hereafter due the Writer.

(ii) $ —0—_____ as an advance against royalties, receipt of which is hereby acknowledged, which sum shall remain the property of the Writer and shall be deductible only from payments hereafter becoming due the Writer under this Contract. *and distributed by Publisher

**Piano Copies Sliding Scale**

**(Insert percentage here)** ——▶
(b) In respect of regular piano copies sold and paid for in the United States and Canada, the following royalties per copy:
  .10..% (in no case, however, less than 10%) of the wholesale selling price of the first 200,000 copies or less; plus
  .12..% (in no case, however, less than 12%) of the wholesale selling price of copies in excess of 200,000 and not exceeding 500,000; plus
  .15..% (in no case, however, less than 15%) of the wholesale selling price of copies in excess of 500,000.

**Foreign Royalties and U.S. and Canadian royalties derived from licenses**
(c) .50..% (in no case, however, less than 50%) of all net sums received by the Publisher in respect of regular piano copies, orchestrations, band arrangements, octavos, quartets, arrangements for combinations of voices and/or instruments, and/or other copies of the composition sold in any other country other than the United States and Canada, provided, however, that if the Publisher should sell such copies through, or cause them to be sold by, a subsidiary or affiliate which is actually doing business in a foreign country, then in respect of such sales, the Publisher shall pay to the Writer not less than 5% of the marked retail selling price in respect of each such copy sold and paid for.

**Orchestrations and Other Arrangements, etc.**

**(Insert percentage here)** ——▶
(d) In respect of each copy sold and paid for in the United States and Canada, or for export from the United States, of orchestrations, band arrangements, octavos, quartets, arrangements for combinations of voices and/or instruments, and/or other copies of the composition (other than regular piano copies) the following royalties on the wholesale selling price (after trade discounts, if any): *distributed by Publisher, and
  .10..% (in no case, however, less than 10%) on the first 200,000 copies or less; plus
  .12..% (in no case, however, less than 12%) on all copies in excess of 200,000 and not exceeding 500,000; plus
  .15..% (in no case, however, less than 15%) on all copies in excess of 500,000.

**Publisher's Song Book, Folio, etc.**
(e) (i) If the composition, or any part thereof, is included in any song book, folio or similar publication issued by the Publisher containing at least four, but not more than twenty-five musical compositions, the royalty to be paid by the Publisher to the Writer shall be an amount determined by dividing 10% of the wholesale selling price (after trade discounts, if any) of the copies sold, among the total number of the Publisher's copyrighted musical compositions included in such publication. If such publication contains more than twenty-five musical compositions, the said 10% shall be increased by an additional ½% for each additional musical composition.

**Licensee's Song Book, Folio, etc.**
(ii) If, pursuant to a license granted by the Publisher to a licensee not controlled by or affiliated with it, the composition, or any part thereof, is included in any song book, folio or similar publication, containing at least **from musical compositions, the royalty to be paid by the Publisher to the Writer shall be a pro ration of 50%** of the gross amount received by it from the licensee, as the number of uses of the composition under the license and during the license period, bears to the total number of uses of the Publisher's copyrighted musical compositions under the license and during the license period.

**\*\* (but including U.S. and Canadian print licensing income\$**

(iv) Royalties on publications containing less than four musical compositions shall be payable at regular piano copy rates.

**Professional Material and Free Copies** (f) As to "professional material" not sold or resold, no royalty shall be payable. Free copies of the lyrics of the composition shall not be distributed except under the following conditions: (i) with the Writer's written consent, or (ii) when printed without music in limited numbers for charitable, religious or governmental purposes, or for similar public purposes, if no profit is derived, directly or indirectly; or (iii) when authorized for printing in a book, magazine or periodical, where such use is incidental to a novel or story (as distinguished from use in a book of lyrics or a lyric magazine or folio), provided that any such use shall bear the Writer's name and the proper copyright notice; or (iv) when distributed solely for the purpose of exploiting the composition, provided, that such exploitation is restricted to the distribution of limited numbers of such copies for the purpose of influencing the sale of the composition, that the distribution is independent of the sale of any other musical compositions, services, goods, wares or merchandise, and that no profit is made, directly or indirectly, in connection therewith.

**Mechanicals, Electrical Transcription, Synchronization, All Other Rights** (g) ....50....% (in no case, however, less than 50%) of: (Insert percentage here) All gross receipts of the Publisher in respect of any licenses (including statutory royalties) authorizing the manufacture of parts of instruments serving to mechanically reproduce the composition, or to use the composition in synchronization with sound motion pictures, or to reproduce it upon electrical transcription for broadcasting purposes; and of any and all gross receipts of the Publisher from any other source or right now known or which may hereafter come into existence, except as provided in paragraph 2.

**Licensing Agent's Charges** (h) ██████████████████████████████████████████ reproduce said composition, or the use of said composition in synchronization or in timed relation with ███████ pictures or its reproduction upon electrical transcriptions, or any of them, through ██████████████ administrator acting for a substantial part of the industry and not under the ██████ control of the Publisher hereinafter sometimes referred to as Licensing Agent, the Publisher ██████████ his receipts, shall be entitled to deduct from gross license fees paid by the Licensee, ████ equal to the charges paid by the Publisher to said licensing agent, provided, however, that in ██████ to synchronization or timed relation with sound motion pictures, said deduction shall in no event ██████ $150.00 or 10% of said gross license fee, whichever is less; in computing the manufacture of ████ of instruments serving to mechanically reproduce said composition, said deductions shall not exceed ██ of said gross license fee; and in connection with electrical transcriptions, said deduction shall not ██████████

**Block Licenses** (i) ██████████████████████████████████████████ hereinafter granted, and that it will not grant any bulk or block license to include the same, without the written ████ of the Writer in each instance, except (i) that the Publisher may grant such licenses with respect ██ electrical transcription for broadcasting purposes, but in such event, the Publisher shall pay to the Writer ████ proportion of 50% of the gross amount received by it under each such license as the number of uses of the composition under each such license during each such license period bears to the total number of uses of the Publisher's copyrighted musical compositions under each such license period in computing the number of the Publisher's copyrighted musical compositions for this purpose, there shall be excluded musical compositions in the public domain and arrangements thereof and those with respect to which the Publisher does not currently publish and offer for sale regular piano copies; (ii) that the Publisher may appoint agents or representatives in countries outside of the United States and Canada to use and to grant licenses for the use of the composition on the customary royalty fee basis under which the Publisher shall receive not less than 10% of the marked retail selling price in respect of regular piano copies, and 50% of all other revenue; if, in connection with any such bulk or block license, the Publisher shall have received any advance or guarantee to share therein, but no part of said advance shall be deducted in ██████████ the composition's earnings under said bulk or block license. A bulk or block license shall be deemed to mean any license or agreement, domestic or foreign, whereby rights are granted in respect of two or more ████████

**Television and New Uses** (j) ██████████████████████████████████████████ performing rights licensing organization with which Writer and Publisher are affiliated ██████ the rights or the right to grant licenses therefor, it is agreed that no licenses shall be ██████████ without the written consent, in each instance, of the Writer for the use of the composition ██████ means of television, or by any means, or for any purposes not commercially ██████████ or for which licenses were not granted by the Publisher on musical compositions prior to ████

**Writer's Consent to Licenses** (k) ██████████████████████████████████████████ use the title of the composition, or (ii) for the exclusive use of the composition in any form or for any purpose, or for any period of time, or for any territory, other than its customary arrangements with foreign publishers, or (iii) to give a dramatic representation of the composition or to dramatize the plot or story thereof, or (iv) for a vocal rendition of the composition in synchronization with sound motion pictures, or (v) for synchronization use thereof, or (vi) for the use of the composition or a quotation or excerpt therefrom in any article, book, periodical, advertisement or other similar publication. If, however, the Publisher shall ██ to the Writer written notice by certified mail, return receipt requested, or telegram, specifying the right or license to be given or granted, the name of the licensee and the terms and conditions thereof, including the price or other compensation to be received therefor, then, unless the Writer (or any one or more of them shall, within five business days after the delivery of such notice to the address of the Writer hereinafter designated, object thereto, the Publisher may grant such right or license in accordance with the said notice without first obtaining the consent of the Writer. Such notice shall be deemed sufficient if sent to the Writer ██ the address or addresses hereinafter designated or at the address or addresses last furnished to the Writer.

**Trust for Writer** (l) Any portion of the receipts which may become due to the Writer from license fees (in excess of offsets), whether received directly from the licensee or from any licensing agent of the Publisher, shall, if not paid immediately on the receipt thereof by the Publisher, belong to the Writer and shall be held in trust for the Writer until payment is made; the ownership of said trust fund by the Writer shall not be questioned whether the monies are physically segregated or not.

**Writer Participation** (m) ██████████████████████████████████████████

**Writer Credit** (n) On all regular piano copies, orchestrations, band or other arrangements, octavos, quartets, commercial sound recordings and other reproductions of the composition or parts thereof, in whatever form and however produced, Publisher shall include or cause to be included, in addition to the copyright notice, the name of the Writer, and Publisher shall include a similar requirement in every license or authorization issued by it with respect to the composition.

**Power of Attorney** 5. The Writer covenants and agrees to make, execute and deliver any and all further instruments, documents and writings that may be requested by the Publisher for the purpose of perfecting and confirming in the Publisher the rights and interests in the renewal(s) of the copyright(s) in the composition herein granted, and the Writer hereby nominates and appoints the Publisher his true and lawful attorney to make, execute and deliver any and all such instruments, documents and writings in the name of the Writer and to renew and extend the copyright in the composition and to make applications therefor in the name of the Writer, subject to the terms of this contract.

**Exploitation** 6. (a) ██████████████████████████████████████████ form customarily published by it, (ii) include and retain at all times the title of the composition in its cue ██ compositions, and (iii) use every reasonable effort and means to exploit and promote the sale of the various uses of the composition. Unless the aggregate amount of any advances (as provided in paragraph 4 shall █, and the royalties paid to the Writer within two years from the date hereof, shall equal or exceed the sum of ██.00, the Publisher shall pay to the Writer the difference between said aggregate amount and said sum of ██.00.

**Failure to Exploit** (b) Should the Publisher fail to comply with the provisions of subdivision ██ hereof, the Writer shall be entitled to demand in writing the return of the composition at any time after the expiration of said two-year period, whereupon the Publisher must within one month after the receipt of ██ notice either comply with the provisions of subdivision (a) hereof, in which event this contract will continue in full force and effect, or upon its failure so to comply, this contract shall terminate and all rights of any and every nature in and to the composition and in and to any and all copyrights and renewal copyrights ██████ therein in the United States and throughout the world (subject, however, to the terms of paragraph 7 hereof), shall re-vest in and become the property of the Writer and shall be reassigned to him by the Publisher. ██ Writer shall not be obligated to return or pay to the Publisher any outright payment, advance or indebtedness as a condition of such reassignment; the said reassignment shall be in accordance with and subject to the provisions of paragraph 8 hereof, and in addition, the Publisher shall pay to the Writer all gross sums █████████

**Foreign Copyright** 7. (a) Each copyright on the composition in countries other than the United States shall be secured only in the name of the Publisher, and the Publisher shall not at any time divest itself of said foreign copyright directly or indirectly.

**Foreign Publication** (b) No rights shall be granted by the Publisher in the composition to any foreign publisher or licensee inconsistent with the terms hereof.

**Foreign Advance** (c) If foreign rights in the composition are separately conveyed, otherwise than as a part of the Publisher's current and/or future catalog, not less than 50% of any advance received in respect thereof shall be credited to the account of and paid to the Writer.

foreign sources] or for advances made by such foreign sources to the Publisher [████████] the Writer shall have received [████████] of said advances.

**No Foreign Allocations** ████ a **portion** ████████████ **except to the extent** (c) ████████ pictures, or in respect of any world-wide licenses, or in respect of [████████] granted by the Publisher for use of the composition in countries other than the United States, his amount shall be deducted for payments or allocations to

**Termination or Expiration of Contract**

8. Upon the termination or expiration of this contract, all rights of any and every nature in and to the composition and in and to any and all copyrights secured thereon in the United States and throughout the world, shall revest in and become the property of the Writer, and shall be re-assigned to the Writer by the Publisher free of any and all encumbrances of any nature whatsoever, provided that:

(a) If the Publisher, prior to such termination or expiration, shall have granted a domestic license for the use of the composition, not inconsistent with the terms and provisions of this contract, the re-assignment may be subject to the terms of such license.

(b) Publisher shall assign to the Writer all rights which it may have under any such agreement or license referred to in subdivision (a) in respect of the composition, including, but not limited to, the right to receive all royalties or other monies earned by the composition thereunder after the date of termination or expiration of this contract. Should the Publisher thereafter receive or be credited with any royalties or other monies so earned, it shall pay the same to the Writer.

(c) The Writer shall not be obligated to return or pay to the Publisher any advance or indebtedness as a condition of the re-assignment provided for in this Paragraph 8, and shall be entitled to receive the plates and copies of the composition in the possession of the Publisher.

(d) Publisher shall pay any and all royalties which may have accrued to the Writer prior to such termination or expiration.

(e) The Publisher shall execute any and all documents and do any and all acts or things necessary to effect any and all re-assignments to the Writer herein provided for.

**Negotiations for New or Unspecified Uses**

9. ████████████████████████████████████████████ but for which no specific provision has been made herein, the Publisher shall give [████████████████████] hereof. Negotiations respecting all the particulars of [████] position shall thereupon be entered into between the Publisher and the

**Royalty Statements and Payments**

10. The Publisher shall render to the Writer, hereafter, royalty statements accompanied by remittance of the amount due at the times such statements and remittances are customarily rendered by the Publisher, provided, however, that such statements and remittances shall be rendered either semi-annually or quarterly and not more than [███████████] the end of each such semi-annual or quarterly period, as the case may be. The Writer may at any time, or from time to time, make written request for a detailed royalty statement, and the Publisher shall, within sixty days, comply therewith. Such royalty statements shall set forth in detail the various items, foreign and domestic, for which royalties are payable thereunder and the amounts thereof, including, but not limited to, the number of copies sold and the number of uses in each royalty category. If a use is made in a publication of the character provided in Paragraph 4, subdivision (e) hereof, there shall be included in said royalty statement the title of said publication, the publisher or issuer thereof, the date of and number of uses, the gross license fee received in connection with each publication, the share thereof of all the writers under contract with the Publisher, and the Writer's share thereof. There shall likewise be included in said statement a description of every other use of the composition, and if by a licensee or licensees their name or names, and if said use is upon a part of an instrument serving to reproduce the composition mechanically, the type of mechanical reproduction, the title of the label thereon, the name or names of the artists performing the same, together with the gross license fees received, and the Writer's share thereof, **to the extent publisher has such infor-mation.**

**Examination of Books**

11. (a) The Publisher shall from time to time, upon written demand of the Writer or his representative, permit the Writer or his representative to inspect at the place of business of the Publisher, all books, records and documents relating to the composition and all licenses granted, uses had and payments made therefor, such right of inspection to include, but not by way of limitation, the right to examine all original accountings and records relating to uses and payments by manufacturers of commercial sound recordings and music rolls; and the Writer or his representative may appoint **\*after reasonable written notice herein of and** an accountant who shall [████████████] during usual business hours have access to all records of the Publisher relating to the composition for the purpose of verifying royalty statements rendered or which are delinquent under the terms hereof.

(b) The Publisher shall, upon written demand of the Writer or his representative and use any licensing agent in the United **use best efforts to** States and Canada to furnish to the Writer or his representative, statements showing in detail all licenses granted, uses had and payments made in connection with the composition, which licenses or permits were granted, or payments were received, by or through said licensing agent, and to permit the Writer or his representative to inspect at the place of business of such licensing agent, all books, records and documents of such licensing agent, relating thereto. Any and all agreements made by the Publisher with any licensing agent shall provide that any such licensing agent will comply with the terms and provisions hereof. [████████████████████████████████] agent to furnish to the Writer or his representative statements as provided for herein [███████████] the inspection of the books, records and documents as herein provided. [████████████████████] agent should refuse to comply with the said instructions or any of them [████████████] agrees to institute and prosecute diligently and in good faith such

(c) With respect to foreign licensing agents, the Publisher shall make available the books or records of said licensing agents in countries outside of the United States and Canada to the extent such books or records are available to the Publisher, except that the Publisher may in lieu thereof make available any accountants' reports and audits which the Publisher is able to obtain.

(d) ████████████████████████████████████████████████████████████████████████████ it is determined that, with respect to any royalty statement rendered by or on behalf of the Publisher to the Writer, the Writer is owed a sum equal to or greater than five [████] of the sum shown on that royalty statement as being due to the Writer, then the Publisher shall pay to the Writer the entire cost of such examination, not to exceed 50% of [████████████████████████]

(e) (i) ████████████████████████████████████████████████████████████████████ mechanically reproduce the composition rather than employing a licensing agent for that purpose, the Publisher shall include in each license agreement a provision permitting the Publisher, the Writer or their respective representatives to inspect, at the place of business of such licensee, all books, records and documents of such licensee relating to such license. Within 30 days after written demand by the Writer, the Publisher shall commence to inspect such licensee's books, records and documents and shall furnish a written report of such inspection to the Writer within 90 days following such demand. If the Publisher fails, after written demand by the Writer, to so inspect the licensee's books, records and documents, or fails to furnish such report, the Writer or his representative may inspect such licensee's books, records and documents at his own expense.

(ii) In the further event that the Publisher and the licensee referred to in subdivision (i) above are subsidiaries or affiliates of the same entity or one is a subsidiary or affiliate of the other, then, unless the Publisher employs a licensing agent to administer the licenses referred to in subdivision (i) above, the Writer shall have the right to make the inspection referred to in subdivision (i) above without the necessity of making written demand on the Publisher as provided in subdivision (i) above.

(iii) If as a result of any inspection by the Writer pursuant to subdivisions (i) and (ii) of this subparagraph (e) the Writer recovers additional monies from the licensee, the Publisher and the Writer shall share equally in the cost

**Default in Payment or Prevention of Examination**

12. If the Publisher shall fail or refuse, within sixty days after written demand, to furnish or cause to be furnished, such statements, books, records or documents, or to permit inspection as provided for in Paragraphs 10 and 11 hereof, or within thirty days after written demand, to make the payment of any royalties due under this contract, then the Writer shall be entitled, upon ten days' written notice, to terminate this contract. However if the Publisher shall:

(a) Within the said ten-day period serve upon the Writer a written notice demanding arbitration: and

(b) Submit to arbitration its claim that it has complied with its obligation to furnish statements, books, records or documents, or permitted inspection thereof or to pay royalties, as the case may be, or both, and thereafter comply with any award of the arbitrator within ten days after such award or within such time as the arbitrator may specify;

then this contract shall continue in full force and effect as if the Writer had not sent such notice of termination. If the Publisher shall fail to comply with the foregoing provisions, then this contract shall be deemed to have been terminated as of the date of the Writer's written notice of termination.

**Derivative Works**

13. No derivative work prepared under authority of Publisher during the term of this contract may be utilized by Publisher or any other party after termination or expiration of this contract.

**Notices**

14. All written demands and notices provided for herein shall be sent by certified mail, return receipt requested.

**Suits for Infringement**

15. Any legal action brought by the Publisher against any alleged infringer of the composition shall be initiated and prose-cuted at its sole cost and expense, but if the Publisher should fail, within thirty days after written demand, to institute such action, the Writer shall be entitled to institute such suit as his cost and expense. All sums recovered as a result of any such action shall, after the deduction of the reasonable expense thereof, be divided equally between the Publisher and the Writer. No settlement of any such action may be made by either party without first modifying the other. In the event that either party should object to such

**Infringement Claims**

16. (a) If a claim is presented against the Publisher alleging that the composition is an infringement upon some other work or a violation of any other right of another, and because thereof the Publisher is jeopardized, it shall forthwith serve a written notice upon the Writer setting forth the full details of such claim. The pendency of said claim shall not relieve the Publisher of the obligation to make payment of the royalties to the Writer hereunder, unless the Publisher shall deposit said royalties as and when they would otherwise be payable, in an account in the joint names of the Publisher and the Writer ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ contract resides East of the Mississippi River ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. If no suit be filed within ▓▓▓▓▓▓▓▓ after said written notice from the Publisher to the Writer, all monies deposited in said joint account shall be paid over to the Writer plus any interest which may have been earned thereon. **\* 18 months**

(b) Should an action be instituted against the Publisher claiming that the composition is an infringement upon some other work or a violation of any other right of another, the Publisher shall forthwith serve written notice upon the Writer containing the full details of such claim. Notwithstanding the commencement of such action, the Publisher shall continue to pay the royalties hereunder to the Writer unless it shall, from and after the date of the service of the summons, deposit said royalties as and when they would otherwise be payable, in an account in the joint names of the Publisher and the Writer ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ West of the Mississippi River. If the said suit be finally adjudicated in favor of the Publisher or shall be settled, there shall be released and paid to the Writer all of such sums held in escrow less any amount paid out of the Writer's share with the Writer's written consent in settlement of said action. Should the said suit finally result adversely to the Publisher, the said amount on deposit shall be released to the Publisher to the extent of any expense or damage it incurs and the balance shall be paid over to the Writer.

(c) In any of the foregoing events, however, the Writer shall be entitled to payment of said royalties or the money so deposited at and after such time as he files with the Publisher a surety company bond, or a bond in other form acceptable to the Publisher, in the sum of such payments to secure the return thereof to the extent that the Publisher may be entitled to such return. The foregoing payments or deposits or the filing of a bond shall be without prejudice to the rights of the Publisher or Writer in the premises.

**Arbitration**

17. Any and all differences, disputes or controversies arising out of or in connection with this contract shall be submitted to arbitration before a sole arbitrator under the then prevailing rules of the American Arbitration Association. The location of the arbitration shall be New York, New York, if the Writer on the date of execution of this contract resides East of the Mississippi River, or Los Angeles, California, if the Writer on the date of execution of this contract resides West of the Mississippi River. The parties hereby individually and jointly agree to abide by and perform any award rendered in such arbitration. Judgment upon any such award rendered may be entered in any court having jurisdiction thereof.

**Assignment**

18. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ the Publisher shall not ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ or otherwise dispose of the composition or the copyright or copyrights secured thereon without the ▓▓ written consent of the Writer. The Writer has been induced to enter into this contract in reliance ▓▓▓▓▓▓▓▓▓▓▓▓ the personal service and ability of the Publisher in the exploitation of the composition ▓▓▓▓▓▓▓▓▓▓▓▓ it be the intention of the parties and the essence of the relationship between the parties ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ herein granted to the Publisher shall remain with the Publisher and that the same shall not ▓▓▓▓▓▓▓▓▓▓▓▓▓ person, including, without limitations, successors to or receivers or trustees of the property of the Publisher. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ In the event of the voluntary or involuntary bankruptcy of the Publisher, this contract shall terminate, provided, however, that the composition may be included by the Publisher in a bona fide voluntary sale of its music business or its entire catalog of musical compositions, or in a merger or consolidation of the Publisher with another corporation, in which event the Publisher shall immediately give written notice thereof to the Writer; and provided further that the composition and the copyright therein may be assigned by the Publisher to a subsidiary or affiliated company generally engaged in the music publishing business. If the Publisher is an individual, the composition may pass to a legatee or distributee as part of the inheritance of the Publisher's music business and entire catalog of musical compositions. Any such transfer or assignment shall, however, be conditioned upon the execution and delivery by the transferee or assignee to the Writer of an agreement to be bound by and perform all of the terms and conditions of this contract to be performed on the part of the Publisher.

**Subsidiary Defined**

19. A subsidiary, affiliate, or any person, firm or corporation controlled by the Publisher or by such subsidiary or affiliate, as used in this contract, shall be deemed to include any person, firm or corporation, under common control with, or the majority of whose stock or capital contribution is owned or controlled by the Publisher or by any of its officers, directors, partners or associates, or whose policies and actions are subject to domination or control by the Publisher or any of its officers, directors, partners or associates.

**Amounts**

20. The amounts and percentages specified in this contract shall be deemed to be the amounts and percentages agreed upon by the parties hereto, unless other amounts or percentages are inserted in the blank spaces provided therefor.

**Modifications**

21. This contract is binding upon and shall enure to the benefit of the parties hereto and their respective successors in interest (as hereinbefore limited). If the Writer (or one or more of them) shall not be living, any notices may be given to, or consents given by, his or their successors in interest. No change or modification of this contract shall be effective unless reduced to writing and signed by the parties hereto.

The words in this contract shall be so construed that the singular shall include the plural and the plural shall include the singular where the context so requires and the masculine shall include the feminine and the feminine shall include the masculine where the context so requires.

**Paragraph Headings**

22. The paragraph headings are inserted only as a matter of convenience and for reference, and in no way define, limit or describe the scope or intent of this contract nor in any way affect this contract.

**Special Provisions**

23.

**Writers Respective Shares**

24. Whenever the term "Writer" is used herein (except as provided in Paragraph 3 hereof), it shall be deemed to mean all of the persons executing this agreement and, the same being the authors and composers of said compositions or their respective lawful successors), and any and all royalties herein provided to be paid to the Writer shall be paid jointly to the following persons executing this agreement if there be more than one, and shall be divided among them as follows:

| Name and Soc. Sec. # | Address | Share | Signature |
|---|---|---|---|
| JAY LIVINGSTON | 782 TORTUOSO WAY | | *Jay Livingston* |
| 093164748 | LOS ANGELES, CA 90077 | | |

Witness: *Ann Torrence*

Publisher JAY LIVINGSTON MUSIC

By *[signature]*

Address P.O. BOX 120004
NASHVILLE, TENNESSEE 37212

**FOR YOUR PROTECTION,**
**SEND A COPY OF THE FULLY SIGNED CONTRACT TO AGAC.**

# EXHIBIT 3

# AGREEMENT

This agreement is entered into by Jay Livingston Music, Inc., a California corporation ("Corporation"), and Jay Livingston, individually ("Livingston"), at Los Angeles, California, this **18th** day of May, 2000, in reference to the following facts:

    A.      Corporation is the successor in interest to Travilyn Livingston dba Jay Livingston Music ("the DBA").

    B.      The DBA and Livingston are parties to various Popular Songwriter Agreements. The songs covered by each agreement and the dates of each agreement are set forth on Exhibit A hereto. Said agreements are herein called "The AGAC Agreements."

    C.      On **04/10** 2000, the DBA assigned all of its right, title and interest in and to all the songs listed on Exhibit A, together with all the AGAC Agreements in respect to such songs, to Corporation.

    D.      The parties hereto wish to amend and modify the AGAC Agreements on the terms herein set forth.

NOW THEREFORE IT IS AGREED as follows:

    1.      Livingston acknowledges, consents to and ratifies the assignments referred to in Paragraph C above.

51972 Agreement 5.11.00         -1-

2.    Corporation agrees to be bound by and to perform all of the terms and conditions of the AGAC Contracts to be performed on the part of Publisher.

3.    Livingston and Corporation hereby amend Paragraph 1 (or equivalent paragraph dealing with the length of the term of the Agreement) of each and every AGAC Agreement referred to in Exhibit A, effective as of the date of each such Agreement, to replace the fixed term of years as set forth in each AGAC Agreement with a term equal to the entire term of copyright, including all renewals and extensions thereof, in each song covered by each AGAC Agreement.

Other than as amended and modified herein, each AGAC Agreement shall be and remain as it now is and each is hereby ratified and affirmed.

IN WITNESS WHEREOF the parties have caused this agreement to be entered into as of the day and date above set forth.

JAY LIVINGSTON MUSIC, INC.

By:_____
        President

_____
JAY LIVINGSTON

Case 3:22-cv-00532   Document 19-1   Filed 07/14/21   Page 20 of 26 PageID #: 2407

# SCHEDULE A

**TITLES**                                                    **Contract Dates**

1.   A Brain She Ain't                                              02/28/00
2.   A Coach And Four (termination effective as of                 06/06/02
3.   Adios, Senorita                                               01/01/94
4.   A Jockey's Lullaby                                            02/28/00
5.   All I Want For Christmas Is You                               01/10/99
6.   All Mine                                                      01/01/99
7.   All The Time                                                  01/01/87
8.   Alley Oop                                                     07/15/84
9.   The American Dream                                            01/10/98
10.  Angel (Theme From "Those Calloways")                          01/01/93
11.  Angel In The Night                                            02/28/99
12.  Angel Town                                                    01/01/88
13.  Anniversary Rose                                              02/25/99
14.  Anonymous                                                     02/28/99
15.  Anywhere But Here                                             01/10/99
16.  Any Other Way                                                 02/15/00
17.  A Public Servant                                              02/15/00
18.  Are You Happy In Your Work? (termination effective as of)     06/14/01
19.  A Rose And A Rainbow                                          02/15/00
20.  As I Love You                                                 07/15/84
21.  A Square In The Social Circle (termination effective as of)   06/16/01
22.  A Very Proper Town                                            01/01/87
23.  Back Home                                                     07/15/84
24.  Banana Boat                                                   07/15/84
25.  Band Baby                                                     01/05/90
26.  The Beat Of The Blues                                         01/01/98
27.  The Best Undressed Girl In Town                               04/19/99
28.  Billy Bamboo                                                  02/15/00
29.  Bittersweet                                                   04/19/99
30.  Blessed Event                                                 01/28/99
31.  Bonanza                                                       01/01/88
32.  Bounce                                                        03/01/99
33.  Broads Ain't People                                           01/01/90
34.  The Broadway Melody Of 1929                                   02/28/00
35.  Buy Bonds For Bob                                             08/21/85
36.  Bye-Bye                                                       01/01/94
37.  The Calico Run                                                03/15/84
38.  Canteen Kate (termination period now in effect)              03/01/99
39.  C'est La Guerre                                               10/01/93
40.  Calcutta                                                      01/01/87

| 41. | Captain Henry St. James | 01/01/87 |
| 42. | Cat And The Canary | 10/01/93 |
| 43. | Chihuahua Choo-Choo | 07/15/84 |
| 44. | Cincinnati | 07/15/84 |
| 45. | Clink, Clank, Clunk | 07/15/84 |
| 46. | Come A-Runnin' | 01/01/91 |
| 47. | Come To Broadway | 02/28/00 |
| 48. | Country Mornin' Young | 02/15/00 |
| 49. | Cyd Charisse cues | 02/28/00 |
| 50. | Dear Heart | 01/01/93 |
| 51. | Don't Take My Heart | 02/28/00 |
| 52. | Double Standard | 01/01/87 |
| 53. | The Dreamer | 02/15/00 |
| 54. | Dreamers On The Street | 02/28/00 |
| 55. | Dreamsville | 01/01/88 |
| 56. | East To Nashville, South To Atlanta | 02/15/00 |
| 57. | Era Of Jazz | 02/28/00 |
| 58. | Evergreen | 01/01/89 |
| 59. | Everything Beautiful | 01/01/90 |
| 60. | The Female He-Male Hoedown Song | 02/15/00 |
| 61. | Femininity | 01/01/87 |
| 62. | Finale | 02/28/00 |
| 63. | Finesse | 02/15/00 |
| 64. | Finisce Qui | 02/15/00 |
| 65. | Firin' Up The Seminole Express | 02/15/00 |
| 66. | The Flee That Flew | 02/28/00 |
| 67. | For Your Applause | 07/15/84 |
| 68. | The Fourth Of July | 04/01/86 |
| 69. | Fox Trot | 02/15/99 |
| 70. | France | 02/28/99 |
| 71. | Frangipani Blossom, Frangiapani Blossom | 07/15/84 |
| 72. | French Heels | 08/01/85 |
| 73. | G'Bye-ee (termination period now in effect) | 02/28/99 |
| 74. | G'Bye Now | 12/01/97 |
| 75. | Gee, It's Gonna Be Wonderful (termination effective as of 02/05/07) | 07/15/84 |
| 76. | Give It All You Got | 01/01/87 |
| 77. | Go Away My Love | 07/15/84 |
| 78. | Good Luck, Charlie | 02/28/00 |
| 79. | Good Ol' Mountain Love | 02/15/00 |
| 80. | Good People | 02/28/00 |
| 81. | Got An Invitation (termination effective as of) | 06/14/01 |
| 82. | Hallelujah U.S.A. | 04/01/86 |
| 83. | Happy Birthday, Erwin | 01/01/90 |
| 84. | Hear That Band (Based On Hear Dem Bells) Adaptation | 01/01/94 |
| 85. | Heigh-Ho The Hoe-Down Way (termination period now in effect) | 02/28/98 |
| 86. | Hellzapoppin' Polka (termination period now in effect) | 02/28/99 |

| | | |
|---|---|---|
| 87. | He Needs You | 01/01/90 |
| 88. | Henriette | 02/25/99 |
| 89. | Hey Jimmy Joe John Jim Jack (aka Through Children's Eyes) | 01/01/90 |
| 90. | Hey Jose (termination effective as of) | 07/02/01 |
| 91. | Hey, Madame | 01/01/87 |
| 92. | The Highway Polka | 02/25/99 |
| 93. | His Own Little Island | 01/01/90 |
| 94. | Holy Cow | 07/15/84 |
| 95. | Home Wrecker | 02/25/00 |
| 96. | Honey, Oh, My Honey (termination effective as of | 08/12/08 |
| 97. | Honorable Congratulations | 08/01/85 |
| 98. | How Do We Know We're In Love? | 08/01/85 |
| 99. | How Long Is Forever? | 01/01/96 |
| 100. | How Many Heartbeats? | 02/25/99 |
| 101. | How Much Will I Love You? | 01/01/92 |
| 102. | How Shall We Begin? | 01/01/97 |
| 103. | I Came Out Of The Dark (And Found You) | 02/25/00 |
| 104. | If Love Were Gold | 01/01/97 |
| 105. | Ignatz | 01/01/92 |
| 106. | I'll Eat My Hat (termination effective as of | 06/14/01 |
| 107. | I'll Learn Ya | 01/01/90 |
| 108. | In The Arms Of Love | 01/01/95 |
| 109. | I Promise | 07/15/84 |
| 110. | I Tried | 02/05/85 |
| 111. | It's Never Quite The Same | 01/01/87 |
| 112. | It's Your Turn To Have The Blues | 01/01/88 |
| 113. | I've Been There And I'm Back | 01/01/87 |
| 114. | I've Had Enough | 07/15/84 |
| 115. | I Waited So Long | 01/01/87 |
| 116. | I Was A Little Too Lonely (And You We're A Little Too Late) | 07/15/84 |
| 117. | I Wouldn't Have Had To | 01/01/90 |
| 118. | J.J. Jones | 01/01/88 |
| 119. | Jubilie Jubilo | 02/25/99 |
| 120. | Just An Honest Mistake From "Let It Ride!" | 01/01/90 |
| 121. | Ka-Boom-Boom | 01/01/95 |
| 122. | Keep It Simple | 01/01/87 |
| 123. | Kentucky Lucky | 02/25/00 |
| 124. | Kolin Kelly | 01/01/92 |
| 125. | Krazy Kat | 01/01/92 |
| 126. | The Late Scene | 02/25/99 |
| 127. | Laughing At Love | 02/25/00 |
| 128. | Laughter And Tears | 01/01/97 |
| 129. | Let It Ride ; From "Let It Ride!" | 01/01/90 |
| 130. | Let Me Be Loved ; From The James Dean Story | 08/01/85 |
| 131. | Let Me Hear You Whisper | 07/15/84 |
| 132. | Let Me So Love | 01/01/94 |
| 133. | Let's | 07/15/84 |

Case 3:21-cv-00582 Document 19-1 Filed 07/14/21 Page 23 of 26 PageID #: 1470

| | | |
|---|---|---|
| 134. | Let's Be Lovers | 02/25/99 |
| 135. | Let's Capture This Moment (termination effective as of) | 06/14/01 |
| 136. | Let's Go Home (termination effective as of 02/28/0 1) | 02/28/99 |
| 137. | Let's Make Love | 02/25/99 |
| 138. | Life Does A Man A Favor | 01/01/87 |
| 139. | Life Is A Carousel | 02/25/00 |
| 140. | Little Red Apple | 01/01/96 |
| 141. | Livingston & Evans' Melody | 01/01/90 |
| 142. | Love Is A Private Affair | 01/01/91 |
| 143. | Love, Let Me Know; From "Let It Ride!" | 01/01/90 |
| 144. | Love's Old And New Sweet Song | 02/25/00 |
| 145. | Madame | 07/15/84 |
| 146. | Mama, Mama, Mama, Where You Get De Cigar? | 07/15/84 |
| 147. | Mancini Song Book; Volume One | 01/01/94 |
| 148. | Marie Marimba | 07/15/84 |
| 149. | A Million Dreams | 02/25/00 |
| 150. | Mister Ed | 01/01/89 |
| 151. | Monday, Wednesday, Friday | 08/01/85 |
| 152. | Moon Dreams | 11/06/87 |
| 153. | More Amore | 02/25/00 |
| 154. | Mother Brown | 01/01/94 |
| 155. | Mr. Lucky | 01/01/89 |
| 156. | Mrs. Kwakk-Kwakk | 01/01/92 |
| 157. | My Sons, My Sons | 01/01/91 |
| 158. | Nashville, Tennessee | 04/01/86 |
| 159. | Nobody Cares | 07/15/84 |
| 160. | Nobody Listens, Nobody Cares | 02/25/00 |
| 161. | Nostalgia (aka Andy's Mystery Tune) | 02/28/99 |
| 162. | Not Quite A Waltz | 01/01/88 |
| 163. | Nothing Will Keep Me Away | 01/01/88 |
| 164. | Offissa Pup | 01/01/92 |
| 165. | Ol' Guitar | 02/25/00 |
| 166. | On My Way | 01/01/93 |
| 167. | Once Upon A Horse | 01/01/87 |
| 168. | One Hand Tied Behind My Back | 02/25/99 |
| 169. | Oo-Wah-Oh | 08/01/85 |
| 170. | Oom-Pah Papa | 07/15/84 |
| 171. | Open Your Arms | 07/15/84 |
| 172. | Open Your Arms (Let Me Walk Right In) | 01/01/99 |
| 173. | Punch And Judy; From Charade | 01/01/94 |
| 174. | Put It In A Box | 02/25/00 |
| 175. | Round And Round The Christmas Tree (aka Round And Round The Romance Tree) | 01/01/94 |
| 176. | Round And Round The Romance Tree (aka Round And Round The Christmas Tree) | 01/01/94 |
| 177. | Run, Run, Run | 08/01/85 |

| 178. | Sailor Beware | 05/12/86 |
| 179. | Sally Seal | 02/25/99 |
| 180. | Satins 'N' Spurs | 07/15/84 |
| 181. | See You Around | 01/01/95 |
| 182. | Sepulveda | 01/01/85 |
| 183. | Sin | 01/01/88 |
| 184. | The Single Girl | 02/25/00 |
| 185. | Someday You'll Be Sorry | 01/01/94 |
| 186. | Sorry 'Bout That | 01/01/95 |
| 187. | Straight To Baby | 01/01/88 |
| 188. | Stratosphere Love | 01/01/90 |
| 189. | Straw Hat | 02/25/00 |
| 190. | Stuff Like That There | 01/01/85 |
| 191. | Sugar Baby Bounce | 09/15/94 |
| 192. | Sugar Boat | 01/01/97 |
| 193. | Surprise | 01/01/87 |
| 194. | Take A Giant Step | 01/01/88 |
| 195. | Tammy | 07/15/84 |
| 196. | Tel Aviv | 02/25/99 |
| 197. | That Ain't Right | 02/25/99 |
| 198. | That Codger Bowl Town | 05/09/88 |
| 199. | That Travelin' Two-Beat | 01/01/94 |
| 200. | That's How It Is | 07/15/84 |
| 201. | That's Life ; From "That's Life" | 07/15/84 |
| 202. | That's The News! That's The News! That's The News! | 09/01/88 |
| 203. | That's What You Mean To Me | 07/15/84 |
| 204. | The "Do It Yourself"Cha Cha Cha | 07/15/84 |
| 205. | The Beat Of The Blues | 01/01/88 |
| 206. | The Daughter Of Molly Malone | 01/01/94 |
| 207. | The Fourth Of July | 04/01/86 |
| 208. | The Little Bear Theme | 01/01/90 |
| 209. | The Little Rock Roll | 07/15/84 |
| 210. | The Livin' Lovin' Doll | 07/15/84 |
| 211. | The Magic Touch | 01/01/87 |
| 212. | The Media | 08/29/86 |
| 213. | The Melting Pot | 04/01/86 |
| 214. | The Mole People | 08/01/85 |
| 215. | The Morning Music Of Montmartre | 01/01/87 |
| 216. | The New Vienna Woods | 01/01/94 |
| 217. | The Nicest Thing | 01/01/90 |
| 218. | The Second Greatest Sex ; From "The Second Greatest Sex" | 07/15/84 |
| 219. | The Temple Of An Understanding Heart | 07/15/84 |
| 220. | The Wish | 01/01/88 |
| 221. | There's Something About A Horse | 01/01/90 |
| 222. | This Could Have Been Mine | 01/01/96 |
| 223. | This Happy Feeling | 01/01/87 |
| 224. | To My Love | 01/01/94 |

Case 3:12-cv-00762 Document 19-1 Filed 07/14/21 Page 25 of 26 PageID #: 1452

| | | |
|---|---|---|
| 225. | To Rome With Love | 01/08/98 |
| 226. | Too Little Time | 02/25/99 |
| 227. | Unforgivable | 08/01/85 |
| 228. | Warm Sun, Cold Moon | 07/15/84 |
| 229. | We'll Love Again | 07/15/84 |
| 230. | We're Not Children | 01/01/87 |
| 231. | We've Loved Before | 01/01/95 |
| 232. | Whatever Will Be, Will Be (Que Sera, Sera) | 07/15/84 |
| 233. | What Fools These Mortals Be | 02/25/99 |
| 234. | What's The Use Of Crying? | 01/01/94 |
| 235. | What's Yours? | 01/01/93 |
| 236. | Who's Doing What To Erwin? | 01/01/90 |
| 237. | Whattaya Think About Me | 02/25/99 |
| 238. | Whoop-Diddy-Ay | 07/15/84 |
| 239. | Why Am I In Love | 07/15/84 |
| 240. | Wildcat Smathers | 07/15/84 |
| 241. | With All My Heart; From The Bob Mathias Story | 07/15/84 |
| 242. | With Love | 01/01/97 |
| 243. | Without Him | 07/15/84 |
| 244. | Woman Take Over | 07/15/84 |
| 245. | Words, Music, And Dreams | 02/28/00 |
| 246. | You Don't Know Him | 01/01/87 |
| 247. | You Have Been Good For Me | 02/25/99 |
| 248. | You're So Right For Me | 01/01/87 |

Case 3:22-cv-00532   Document 19-1   Filed 07/14/21   Page 26 of 26 PageID #: 1243