**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| TAMMY LIVINGSTON, individually, and as Beneficiary and Co-Trustee of the Livingston Music Interest Trust, | ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:22-cv-00532 |
| | ) |
| JAY LIVINGSTON MUSIC, INC., a Tennessee corporation; and TRAVILYN LIVINGSTON, in her individual capacity, | ) Chief Judge Crenshaw ) Magistrate Judge Newbern ) |
| | ) |
| Defendants. | ) |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Plaintiff has filed a response to Defendants' motion to dismiss that is rambling and disorganized. (*See generally* Doc. 24.) Plaintiff's apparent effort to overcomplicate and obfuscate, however, does not save her claims. Each of the four declaratory judgments sought by Plaintiff fails as a matter of law. Plaintiff's response does not address each of the four declaratory-judgment issues in the order they were presented in either the Complaint[1] or Defendants' motion to dismiss. For clarity, Defendants address each of Plaintiff's arguments in that order.

## I.     Jay assigned the copyrights to JLM, not to himself.

Plaintiff seeks a declaration that the copyright-termination notices are invalid "as the songwriter renewal contracts were between Jay Livingston and himself." (Doc. 17 ¶ 70(a).) In her response, Plaintiff claims a "question of fact remains" as to whether Travilyn "owned [JLM] at the time Jay Livingston entered into contracts with it." (Doc. 24 at 13.)

---

[1] Each of the defined terms herein has the same meaning as the defined terms contained in Defendants' memorandum in support of their motion to dismiss (Doc. 20).

On the face of the pleadings, however, there is no "question of fact." First, the 1984 Agreement states that "TRAVILYN LIVINGSTON is the sole owner of the music publishing company known as JAY LIVINGSTON MUSIC." (Doc. 17-4 at PageID #: 346 ¶ 2.) Second, the signature block for Jay Livingston Music designates "TRAVILYN LIVINGSTON" as the signor. (*Id.*) Third, the document incorporated in Plaintiff's pleadings contradicts her allegation, so her claim fails as a matter of law. *See Jones v. Select Portfolio Servicing, Inc.*, 672 Fed. App'x 526, 531 (6th Cir. 2016); *Creelgroup, Inc. v. NGS Am., Inc.*, 518 Fed. App'x 343, 347 (6th Cir. 2013); *Thomas v. Publishers Clearing House, Inc.*, 29 Fed. App'x 319, 322-323 (6th Cir. 2002).

To attempt to manufacture a fact issue, Plaintiff submits two documents outside the pleadings: (1) a 2002 declaration from Jay's former lawyer and (2) a 1985 newspaper article. (Docs. 24-2 & 24-3.) Neither document changes the futility of Plaintiff's claim. First, these extrinsic materials may not be considered under Rule 12(b)(6). *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009).[2] Second, the documents consist of inadmissible hearsay. *See* FED. R. EVID. 801(a). The declaration recites out-of-court statements allegedly made by Jay to his lawyer. The newspaper article relies on statements allegedly made by Jay to a reporter. *See Davis v. Detroit Pub. Sch. Cmty. Dist.*, 835 F. App'x 18, 22 (6th Cir. 2020) (holding "newspaper articles" were "inadmissible hearsay"). Third, the documents do not even support Plaintiff's argument that Jay owned JLM. The declaration states "all of Jay's copyrights and publisher royalty

---

[2] While Rule 12(d) authorizes a court to consider extrinsic materials by converting the motion to one for summary judgment, conversion is not appropriate here. Plaintiff did not request conversion in her response (Doc. 24), thus waiving any such request. Additionally, conversion is available only if the *party who files the motion* presents matters outside the pleadings. *See, e.g.*, *Richards v. Gutho*, 2018 U.S. Dist. LEXIS 17412, at *3-4 (E.D. Wis. Feb. 2, 2018); *United States ex rel. Dixie Communs. Sys. v. Travelers Cas. & Sur. Co. of Am.*, 2019 U.S. Dist. LEXIS 162223, at *10 (S.D. Ga. Sep. 23, 2019). In other words, a nonmoving party cannot avoid a motion to dismiss by forcing conversion through submission of extrinsic materials. Here, Plaintiff—the nonmoving party—filed the materials.

2

rights had been effectively sold." (Doc. 24-2 at 2.) The newspaper reporter's informal description of JLM as "his [Jay's] music publishing company" says nothing about the legal ownership of JLM. (Doc. 24-3.)

## II.    The 2000 Agreement was not a "new" grant.

Plaintiff's Complaint seeks a declaration that the copyright-termination notices are invalid "because they are an attempt to terminate the [2000 Agreement], itself a new grant, and termination of the same is not timely." (Doc. 17 ¶ 72(b).) In moving to dismiss, Defendants explained that the 2000 Agreement was, on its face, an amendment of the AGAC Agreements, not a novation of the AGAC Agreements creating a "new" grant. (Doc. 20 at 7-8.) Plaintiff makes no effort to refute that point. (*See generally* Doc. 24.)

Instead, Plaintiff offers two entirely new arguments for invalidating the termination notices. (*Id.* at 3-12.) First, Plaintiff claims that because the 2000 Agreement used the term "Popular Songwriter Agreements"—rather than "Popular Songwriters Renewal Contracts"—the 2000 Agreement did not actually extend the term of the copyright assignments made pursuant to the form Exhibit B attached to the 1984 Agreement. (*Id.* at 9-10.) Plaintiff's argument fails as a matter of law because the pleadings plainly establish that Jay and JLM intended to extend the term of the copyright assignments made pursuant to the form Exhibit B. *See Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 887 (Tenn. 2002) ("The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern."). The 1984 Agreement referred to the form Exhibit B as a "Popular Songwriters Agreement" (Doc. 17-4 at 5 ¶ 2), so the 2000 Agreement was consistent with the language used to describe the form Exhibit B. Moreover, the 2000 Agreement specifies the musical compositions whose terms were extended (Doc. 17-5), and those musical compositions include songs assigned

pursuant to an executed form Exhibit B (*Compare* Doc. 17-5 at 9 (listing "Whatever Will Be, Will Be (Que Sera, Sera)", *with* Doc. 17-4 at 14 (executed form Exhibit B for "Whatever Will Be, Will Be (Que Sera, Sera)").)

Second, Plaintiff claims that certain of the trusts—for which Jay was the trustee—"partially owned" an interest in the musical compositions subject to the 2000 Agreement. (Doc. 24 at 9-11.) Plaintiff claims that because the 2000 Agreement states that Jay entered into the contract "individually," rather than expressly as a "trustee," the trusts did not assign any of their copyright interests to JLM. (*Id.*) As a result, Plaintiff argues, the 2000 Agreement failed to extend the term of the copyright assignments beyond 28 years; the copyright assignments "expir[ed]" with all rights reverting back to the trusts; and thus there were no still-active copyright assignments for Travilyn to terminate. (*Id.* at 11-12.)

Plaintiff's argument is frivolous. As set forth in Paragraphs 69 through 71 of the California probate petition Plaintiff attached to her response,[3] although Jay "did not specifically sign . . . in his capacity as Trustee," the 2000 Agreement "covered both interests in songs" that were owned by Jay individually and those owned by the trusts Jay established. (Doc. 24-1 at 19 ¶¶ 69-71.) That fact was evidenced by "the parties conduct[ing] themselves as though all of the copyrights and publisher's royalty interests in the relevant songs had been fully transferred" from the trusts. (*Id.* ¶ 70.) As a result of that petition, the California probate court entered an order, attached hereto as **Exhibit 1**, that dispelled any doubt that the 2000 Agreement validly assigned all of the trusts' copyright interests to JLM: "The FAMILY TRUST holds no publishing royalty interests and no copyright interests and all such interests ever owned by JAY or LYNNE are now owned by Jay

---

[3] The Court may take judicial notice of this court record without converting the motion to dismiss into a motion for summary judgment. *See Hancock v. Miller*, 852 F. App'x 914, 918 (6th Cir. 2021) (holding "courts take notice of 'developments in related proceedings in other courts'").

Livingston Music Inc." (Ex. 1 at 3 ¶ 12.)

### III. The notices of termination reasonably identified the grants being terminated.

Plaintiff seeks a declaration that the copyright-termination notices are invalid "because they incorrectly describe the transfer or grant Defendants purport to terminate as a 'Popular Songwriter Contract' instead of a 'Popular Songwriter Renewal Contract.'" (Doc. 17 ¶ 72(c).) In moving to dismiss, Defendants explained that the notices of termination reasonably identified the grants being terminated, so Plaintiff's claim has no merit. (Doc. 20 at 8-10.) Plaintiff's response does not address the arguments raised by Defendants. (*See generally* Doc. 24.) Plaintiff has therefore effectively abandoned her claim and conceded that it fails as a matter of law, *see Blackshaw v. MSC Indus. Direct Co.*, 2013 U.S. Dist. LEXIS 100520, at *9 (E.D. Tenn. July 18, 2013) ("It is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (quotation omitted)).

### IV. Plaintiff would not be entitled to the payment of royalties after termination.

Plaintiff seeks a declaration that, even if the copyright-termination notices are valid, they do not "terminate Plaintiff's right to share in, collect and receive songwriter's royalties as a beneficiary of" Jay's trusts. (Doc. 17 ¶ 72(d).) In moving to dismiss this claim, Defendants explained that Plaintiff's claim failed because only Travilyn—*not* JLM—would own the copyrights in the compositions after termination under 17 U.S.C. § 203. (Doc. 20 at 10-12.) Plaintiff's response does not dispute, and therefore effectively concedes, this point. (*See* Doc. 24 at 15-17.)

Plaintiff instead argues that if Travilyn "reassigned" the copyright interests in a musical composition to JLM, then JLM "would remain obligated" under state law to pay Plaintiff for the

exploitation of those musical compositions pursuant to the 2000 Agreement. (Doc. 24 at 16.) As explained in Defendants' prior briefing, to the extent such reassignments occurred, Defendants do not, and have never, disputed that Plaintiff retained her contractual right to receive royalties from the exploitation of those musical compositions by JLM. (Doc. 20 at 12 n.5.) Because there is no controversy in that regard, Plaintiff fails to state a claim for declaratory judgment. *See Robin Prods. Co. v. Tomecek*, 465 F.2d 1193, 1198 (6th Cir. 1972).

<u>**CONCLUSION**</u>

Defendants respectfully request that the Court dismiss Plaintiff's Complaint with prejudice for failure to state a claim upon which relief can be granted.

Respectfully submitted,

s/ Tim Warnock
Tim Warnock (12844)
Keane Barger (33196)
LOEB & LOEB LLP
35 Music Square East, Suite 310
Nashville, TN 37203
(615) 749-8300
(615) 749-8308 (facsimile)
twarnock@loeb.com
kbarger@loeb.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via the

Court's ECF filing system upon:

Jonathan M. Wolf
JONATHAN M. WOLF, PLLC
1515 Demonbreun Street, Suite 1408
Nashville, TN 37203
jonathan@wolf.lawyer

*Counsel for Plaintiff*

this the 4th day of November, 2022.

s/ Tim Warnock