# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| TAMMY LIVINGSTON, individually, and as Beneficiary and Co-Trustee of the Livingston Music Interest Trust, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 3:22-cv-00532<br>) |
| JAY LIVINGSTON MUSIC, INC., a Tennessee corporation; and TRAVILYN LIVINGSTON, in her individual capacity, | ) Chief Judge Crenshaw<br>) Magistrate Judge Newbern<br>)<br>) |
| Defendants. | )<br>) |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Defendants respectfully request that the Court deny Plaintiff's motion for leave to file a proposed second amended complaint ("PSAC") (Doc. 36) because the PSAC is futile. *See, e.g.*, *Amadasu v. Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008) ("Because the proposed amended complaint was futile, the magistrate judge properly denied [plaintiff] leave to file his amended complaint.").

When Defendants moved to dismiss Plaintiff's original complaint for failure to state a claim (Doc. 9), Plaintiff filed a first amended complaint as a matter of right (Doc. 17). Defendants moved to dismiss Plaintiff's first amended complaint (Doc. 19), and the parties fully briefed that motion by November 4, 2022 (Docs. 20, 24, & 27).

More than two months later, Plaintiff has moved for leave to file a second amended complaint adding new, equally frivolous reasons why she believes the notices of termination at issue are invalid. Because Plaintiff's PSAC, like her prior two pleadings, does not state a viable claim, Plaintiff should not be permitted to continue trying to outrun her meritless claims by seeking

leave to amend once a motion to dismiss is fully briefed. Defendants respectfully request that the Court deny Plaintiff's motion as futile.

## FACTS

### I. 1984 Agreement.

Jay Livingston is a famous composer who authored several well-known songs, such as "Que Sera, Sera (Whatever Will Be Will Be)." (Doc. 36-1 at 2.) Travilyn Livingston is the daughter of Jay. (*Id.* ¶ 3.) Plaintiff is the granddaughter of Jay and daughter of Travilyn. (*Id.* ¶ 1.)

In 1984, Travilyn solely owned JLM. (Doc. 17-4 at PageID #: 346 ¶ 2 ("WHEREAS, TRAVILYN LIVINGSTON is the sole owner of the music publishing company known as 'JAY LIVINGSTON MUSIC'")).[1] As a music publisher, JLM licenses songs to third parties, collects royalties, and distributes those royalties. (Doc. 17 ¶ 2.)

On July 15, 1984, Jay and JLM entered into a contract—which has no title—dated July 15, 1984 ("1984 Agreement"). (Doc. 17-4 at PageID #: 346.) Under Paragraph 1, Jay "shall assign to [JLM] his copyright interest in all musical compositions set forth in Exhibit 'A.'" (*Id.* ¶ 1.) Jay agreed to "use reasonable efforts to assign to [JLM] his copyright interest in musical compositions which he hereafter owns or controls." (*Id.*)

Under Paragraph 2, the parties agreed to accomplish the transfer of each copyright by executing a separate piece of paper for each musical composition (*Id.* ¶ 2.) Paragraph 2 stated:

> With respect to each musical composition assigned to [JLM] by Jay Livingston, the parties shall enter into a separate popular songwriters agreement in the form of the Popular Songwriters Agreement attached hereto as Exhibit "B," attached hereto and by this reference made a part hereof. Writers royalties shall be paid solely in accordance with the terms and conditions of Exhibit "B."

---

[1] The PSAC references certain exhibits that, although previously filed in this action, Plaintiff failed to attach to the PSAC. When referring to these exhibits, Defendants therefore cite the document number associated with the previously filed exhibit.

(*Id.*) While Paragraph 2 of the 1984 Agreement referred to Exhibit B as a "Popular Songwriters Agreement," the document actually attached to the 1984 Agreement as Exhibit B was titled "Popular Songwriters *Renewal Contract*." (*Id.* at PageID #: 350 (emphasis added).) The 1984 Agreement thus interchangeably used two terms—"Popular Songwriters Agreement" and "Popular Songwriters Renewal Contract"—to refer to the same document.

During his lifetime, Jay executed an Exhibit B for each of his songs. (Doc. 17-4 at PageID #: 343 ¶ 3.) Under each document, JLM kept 50% of the royalties for certain music-publishing services and paid the other 50% to Mr. Livingston (or his heirs). (*Id.*)

## II. Jay's right to receive royalties passed through and into various trusts.

During his lifetime, Jay established various trusts. (Doc. 36-1 ¶¶ 8-44.) Jay, his first wife, and his second wife, died. (*Id.* ¶¶ 8 & 30.) As a result of their deaths, Jay's right to receive royalties pursuant to the 1984 Agreement, and the accompanying executed Exhibit Bs, passed through and into his trusts, including the Livingston Music Interest Trust. (*Id.* ¶¶ 8-44.)

Ultimately, the "trusts" stepped into the shoes of the writer (Jay) with regard to the 1984 Agreement and the executed Exhibit Bs. (*See id.* ¶ 10 ("Jay Livingston assigned all of his assets, whether real or personal, to [the trusts].").) As a result, the trusts received a certain percentage of the royalties JLM collected. (*Id.* ¶ 38.) Those royalties were ultimately paid to the beneficiaries of the trusts, one of whom is Plaintiff. (*See* Doc. 17-2; Doc. 17-3.)

## III. 2000 Agreement.

On May 18, 2000, Jay and JLM executed an agreement "to amend and modify" the "Popular Songwriter Agreements" entered into for each of Jay's songs ("2000 Agreement"). (Doc. 17-5 at PageID #: 369 ¶ D.) The parties agreed to refer to each of the referenced "Popular Songwriter Agreements" as "AGAC Agreements." (*Id.* ¶ B.) Under Paragraph 3, for each AGAC

Agreement, the parties "amend[ed] Paragraph 1" to extend the term of each copyright assignment to "a term equal to the entire term of the copyright, including all renewals and extensions thereof." (*Id.* at Page ID #: 370 ¶ 3.)

IV. **Travilyn terminated certain copyright transfers made pursuant to the AGAC Agreements.**

Beginning on May 28, 2015, Travilyn served notices terminating Jay's transfer of his copyrights in certain musical compositions to JLM, pursuant to 17 U.S.C. § 203(a). The introductory paragraph of the notice terminating the AGAC Agreement for "Que Sera, Sera" correctly referred to the AGAC Agreement as the "Popular Songwriters Renewal Contract" and then defined that term as the "Popular Songwriter's Contract" for the sake of brevity:

> This letter is in reference to the Popular Songwriters Renewal Contract between Jay Livingston Music and Jay Livingston executed as of July 15, 1984 ("Popular Songwriter's Contract"), as amended by the agreement between Jay Livingston Music and Jay Livingston executed as of May 18, 2000 . . . This is a Notice of Termination under Section 203 of Title 17 U.S.C. of the Copyright Act with respect to author's, Jay Livingston's, termination interest in the Composition that is subject to the Popular Songwriter's Contract, and which is currently within its termination window.

(Doc. 71-6 at PageID #: 380.)[2] Section 3 identified the grant to which the notice applied as

> All right, title and interest in copyright or of any right under copyright in the Composition granted or transferred in the Popular Songwriter's Contract between Jay Livingston Music and Jay Livingston dated July 15, 1984 and the amendment thereto dated May 18, 2000.

(*Id.* at PageID #: 381 § 3.) Travilyn served additional notices of termination since May 2015. (Doc. 17 ¶¶ 50 & 53.)

## LEGAL STANDARD

A court should deny a motion for leave to amend when "the proposed amendment would

---

[2] Jay and JLM executed the AGAC Agreement for "Que Sera, Sera" on July 15, 1984, the same date that they executed the 1984 Agreement. (Doc. 17-4 at Page #: 355.)

be futile." *In re Est. of Zakora*, 44 F.4th 452, 480 (6th Cir. 2022). A proposed amendment is futile if it could not "withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000).

Rule 12(b)(6) requires dismissal of a lawsuit that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). A complaint must demonstrate "facially plausible claims," a standard satisfied by pleading facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[M]ere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 556-57. A plaintiff's claims will not survive if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

Dismissal is appropriate when the complaint includes allegations or references documents that show on their face some insuperable bar to relief. *Thomas v. Publishers Clearing House, Inc.*, 29 Fed. App'x 319, 322-323 (6th Cir. 2002).

## ARGUMENT

### I. Plaintiff has failed to comply with Local Rule 15.01.

Under Local Rule 15.01, a party who moves to amend a pleading "must include an as appended exhibit the signed proposed amended pleading." L.R. 15.01(a)(1). The amended pleading "must restate the entirety of the pleading." L.R. 15.01(b).

Although Plaintiff attached the PSAC to her motion, the PSAC references six exhibits that are not attached to the PSAC. (*See* Doc. 36-1 (referencing Exhibits A through F.).) Accordingly, Plaintiff has failed to "append" the "signed proposed amended pleading" and "restate the entirety

5

of the pleading." The Court should therefore deny Plaintiff's motion for violating Local Rule 15.01.

## II. The copyright-termination notices are valid, so Plaintiff has failed to state a claim upon which relief may be granted.

Plaintiff's Complaint fails to state a claim upon which relief can be granted. Although the PSAC is far from a model of clarity, Plaintiff appears to argue that the copyright-termination notices are invalid for eight reasons. (Doc. 17 ¶¶ 72(a)-(c).) As set forth below, each of Plaintiff's asserted reasons for seeking to invalidate the terminations fails as a matter of law.

### A. The grants did not terminate 28 years after their execution because the 2000 Agreement extended those grants to cover the entire term of the copyright.

Plaintiff seeks a declaration that the notices of termination are invalid because the copyright assignments "terminated in accordance with their terms approximately 28 years after their execution . . . prior to the time a copyright could be terminated." (Doc. 36-1 ¶158(a) & (i).)

Plaintiff's argument fails because the 2000 Agreement extended the term of each AGAC Agreement. As explained below, the 2000 Agreement validly extended the duration of the AGAC Agreements. The 2000 Agreement extended each assignment to "a term equal to the entire term of the copyright, including all renewals and extensions thereof." (*Id.* at Page ID #: 370 ¶ 3.)

The duration for copyrighted works authored prior to January 1, 1978 is 95 years. 17 U.S.C. § 304(b) ("Any copyright still in its renewal term at the time that the Sonny Bono Copyright Term Extension Act becomes effective [effective Oct. 27, 1998] shall have a copyright term of 95 years from the date copyright was originally secured."). As result, the assignments continued until such time as the copyrights could be terminated.

### B. The 2000 Agreement validly extended the terms of the copyright assignments.

Plaintiff alleges that, in 1985, Jay and his wife assigned their property interests into Jay's

6

Case 3:22-cv-00532    Document 38    Filed 01/19/23    Page 6 of 17 PageID #: 661

trusts. (Doc. 36-1 ¶ 158(b).) Plaintiff claims that because the 2000 Agreement states that Jay entered into the contract "individually," rather than expressly as a "trustee," the 2000 Agreement could not extend the term of the copyright assignments. (*Id.*) As a result, Plaintiff argues, the 2000 Agreement failed to extend the term of the copyright assignments beyond 28 years; the copyright assignments expired with all rights reverting back to the trusts; and thus there were no still-active copyright assignments for Travilyn to terminate. (*Id.* ¶ 158(b) & (h).)

Plaintiff's argument has no merit because it contradicts a California probate order clarifying the effect of the 2000 Agreement. As set forth in Paragraphs 69 through 71 of the California probate petition Plaintiff previously filed in this Court,[3] although Jay "did not specifically sign . . . in his capacity as Trustee," the 2000 Agreement "covered both interests in songs" that were owned by Jay individually and those owned by the trusts Jay established. (Doc. 24-1 at 19 ¶¶ 69-71.) That fact was evidenced by "the parties conduct[ing] themselves as though all of the copyrights and publisher's royalty interests in the relevant songs had been fully transferred." (*Id.* ¶ 70.)

As a result of that petition, the California probate court entered an order that dispelled any doubt that the 2000 Agreement validly extended the terms of the assignments to JLM: "The FAMILY TRUST holds no publishing royalty interests and no copyright interests and all such interests ever owned by JAY or LYNNE are now owned by Jay Livingston Music Inc." (Doc. 28-1 at 3 ¶ 12.)

    **C.**    **The notices of termination reasonably identified the date of publication.**

Plaintiff next argues that the notices of termination are invalid because publication of the

---

[3] The Court may take judicial notice of this court record without converting the motion to dismiss into a motion for summary judgment. *See Hancock v. Miller*, 852 F. App'x 914, 918 (6th Cir. 2021) (holding "courts take notice of 'developments in related proceedings in other courts'").

musical compositions at issue did not "actually occur[] on the publication date stated in the applicable Notices of Termination," namely, July 15, 1984. (Doc. 36-1 ¶ 158(c)(k).) Plaintiff asserts that the musical compositions were published prior to July 15, 1984, which is the date that Jay and JLM entered into the 1984 Agreement.

Plaintiff's argument fails as a matter of law. 17 U.S.C. § 203(a)(3) states, in relevant part, that "if the grant covers the right of publication of the work, the period beings at the end of thirty-five years from the date of publication of the work *under the grant*." (emphasis added). When a work was initially published prior to the date of the grant, the date of publication "under the grant" is deemed to be the date of the grant. *See Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 33 (2d Cir. 2015) (holding that publication "under the grant" occurred in 1981—the year of the grant at issue—even though work was initially published in 1934).

Here, the notices of termination correctly identified the date of publication "under the grant:" when Jay and JLM executed the 1984 Agreement on July 15, 1984. (Doc. 36-1 ¶ 113.) Indeed, the notices of termination made clear that the referenced date was the date of termination "under the grant" rather than the initial date of publication. The notices of termination state, "The publication occurred as of the date of the grant." (*Id.*)

Even if the notices did not correctly identify the date of publication "under the grant" (they did), such an error would be harmless. The regulations provide that "[h]armless errors in a notice . . . shall not render the notice invalid. For purposes of this paragraph, an error is 'harmless' if it does not materially affect the adequacy of the information required to serve the purposes of 17 U.S.C. § 203." 37 C.F.R. § 201.10(e)(1); *see also* Compendium of U.S. Copyright Office Practices, Third Edition § 2310.12 (2021) ("Harmless errors in a notice of termination do not render the notice invalid.").

The purpose of these regulations is to avoid precisely what Plaintiff seeks here: using an alleged errant, immaterial formality to defeat a statutory heir's termination rights. *See Siegel v. Warner Bros. Entm't, Inc.*, 658 F. Supp. 2d 1036, 1091 (C.D. Cal. 2009) ("Defendants, for their part, advocate a harsh rule: A mistake, even one of omission, is a mistake of consequence; where such a mistake is made, the authors and their heirs must suffer whatever consequences that flow from the resulting invalidity of the copyright notice. The Court cannot countenance such a harsh, per se rule that is divorced from the underlying facts.").

Whether the notices correctly stated the date of publication did not affect the purpose of the notices: to give the affected parties notice of when the rights were being terminated. The date of termination is correctly calculated as thirty-five years from the date of the grant. Plaintiff, at most, quibbles with only an alleged harmless error, and her effort to invalidate the notices is futile.

**D. The notices of termination contain a complete and unambiguous statement of the facts required to be contained in the notice.**

37 C.F.R. § 201.10(b)(2)(3) provides that "[c]lear identification of the information specified by paragraphs (b)(1) and (b)(2) of this section requires a complete and unambiguous statement of facts in the notice itself, without incorporation by reference of information in other documents or records." Plaintiff alleges that the notices of termination do not comply with § 201.10(b)(2)(3) because they "failed to mention that the grants were subject to 'the mutual covenants, promises, and undertaking set forth in the Publishing Agreement between the undersigned and the assignee hereunder Jay Livingston dated July 15, 1984.'" (Doc. 136-1 at 4; Doc. 136-1 ¶ 158(d).)

Plaintiff does not explain, however, why Section 201.10(b)(2)(3) requires that the notice of termination include the phrase that Plaintiff quotes from the 1984 Agreement. Indeed, the

9

connection Plaintiff apparently tries to draw between § 201.10(b)(2)(3) and the quoted phrase is unintelligible.

Section 201.10(b)(2)(3) simply prohibits a party from making reference to another document in lieu of setting forth the individual pieces of information required to be listed in the preceding subsections. *See Siegel v. Warner Bros. Entm't*, 690 F. Supp. 2d 1048, 1063 (C.D. Cal. 2009) ("But here the clause at issue does not make reference to information in other documents or records; rather, it clearly identifies, within the notice itself, that the terminating party seeks for the notice to apply to that work in which the "planet Krypton" aspect of the "Superman character's" copyright was first secured. Far from a reference to something else, the clause serves as a declaration within the notice of what it sought to accomplish.").

The notices of termination at issue list the specific categories of information required by the federal regulations, rather than make reference to or incorporate information in other documents or records. Plaintiff's claim accordingly fails as a matter of law.

### E. The 2000 Agreement amended the AGAC Agreements, so it was not a "new" grant.

Plaintiff seeks a declaration that the copyright-termination notices are invalid because they "constituted a second grant by author Jay Livingston, which is not capable of termination pursuant to 17 U.S.C. § 203." (Doc. 136-1 ¶ 158(e).) But the plain terms of the 2000 Agreement contradict Plaintiff's allegation of a "second grant."

Under California law,[4] a "novation is a substitution, by agreement, of a new obligation for an existing one, with intent to extinguish the latter." *Klepper v. Hoover*, 21 Cal. App. 3d 460, 463

---

[4] The pertinent contracts do not specify which state's law governs. Whether applying California law or Tennessee law, however, the result is the same. *See TWB Architects, Inc. v. The Braxton, LLC*, No. M2013-02740-COA-R3-CV, 2014 Tenn. App. LEXIS 703, at **10-11 (Tenn. Ct. App. Oct. 30, 2014) ("A novation is a contract substituting a new obligation for an old one, thereby

10
Case 3:22-cv-00532    Document 38    Filed 01/19/23    Page 10 of 17 PageID #: 665

(Cal. Ct. App. 1971); Cal. Civ. Code § 1530 ("Novation is the substitution of a new obligation for an existing one."). A novation "requires an intent to discharge the old contract, a mutual assent, and a consideration." *Kleppter*, 21 Cal. App. 3d at 463; *see Brumley v. Albert E. Brumley & Sons, Inc.*, 822 F.3d 926, 933 (6th Cir. 2016) (applying state law to interpret contract relating to copyright-termination rights).

Here, the 2000 Agreement is not a "second grant" because the 2000 Agreement does not reflect "an intent to discharge the old contract," *i.e.*, each AGAC Agreement. To the contrary, Jay and JLM agreed "to amend and modify" the AGAC Agreements by extending the copyright term for each composition. (Doc 17-5 at PageID #: 369-70 ¶¶ D & 3.) The parties expressly stated their intent was *not* to extinguish the AGAC Agreements but rather to ratify and affirm those agreements. (*Id.* at PageID #: 149 ("Other than as amended and modified herein, each AGAC Agreement shall be and remain as it now is and each is hereby ratified and affirmed.").) Plaintiff's alleged basis for invalidating the copyright-termination notices therefore fails as a matter of law.

F. **The 1984 Agreement was a grant by the author, Jay Livingston, so the 1984 Agreement is a grant capable of termination.**

Plaintiff alleges that the notices of termination are invalid if Jay's *trust*, rather than Jay individually, entered into the 2000 Agreement that amended and modified the 1984 Agreement to extend the copyright assignments. (Doc. 36-1 ¶ 158(e).) Plaintiff argues that 17 U.S.C. § 203 permits termination only of a grant "executed by the author," Jay's trust was not the "author" of the works at issue, so the notices of termination are invalid. (*Id.*)

---

extinguishing the existing contract. The four essential elements of a novation are: (1) a prior valid obligation, (2) an agreement supported by evidence of intention, (3) the extinguishment of the old contract, and (4) a valid new contract." (quotations and internal alterations omitted)).

Plaintiff's argument fails because the "grants" at issue—which were terminated by the notices —are the AGAC Agreements. The AGAC Agreements were indisputably "executed" by Jay. As explained above, the 2000 Agreement merely modified and amended those AGAC Agreements by extending their terms.

Moreover, it is indisputable that Jay did, in fact, "execute" the 2000 Agreement. Whether Jay signed only in his individual capacity, on behalf of the trust for which he was the trustee, or both, is irrelevant. He signed, *i.e.*, executed, the 2000 Agreement.

### G. Jay assigned the copyrights to JLM, not to himself.

Plaintiff seeks a declaration that the copyright-termination notices are invalid because they were "grants to himself, not capable of termination pursuant to § 203." (Doc. 36-1 ¶ 158(g).

The plain terms of the 1984 Agreement, however, contradict Plaintiff's allegations that Jay assigned the copyrights to himself. Paragraph 2 of the 1984 Agreement states, "TRAVILYN LIVINGSTON is the sole owner of the music publishing company known as JAY LIVINGSTON MUSIC." (Doc. 17-4 at PageID #: 346 ¶ 2.) Thus, Jay did not assign the copyrights to himself. He assigned the copyrights to JLM, which was solely owned by Travilyn.

Dismissal under Rule 12 is appropriate when a written contract referenced in the pleading contradicts the allegations in the pleading. *Creelgroup, Inc. v. NGS Am., Inc.*, 518 Fed. App'x 343, 347 (6th Cir. 2013) (stating a plaintiff "cannot survive a motion to dismiss, even if it has pleaded the existence of a contract, if the written instrument plainly contradicts the pleadings"); *Jones v. Select Portfolio Servicing, Inc.*, 672 Fed. App'x 526, 531 (6th Cir. 2016) (dismissing allegations contradicting written instruments referenced in, but not attached to, complaint); *Jimmerson v. Wilson & Assocs., PLLC*, 2015 U.S. Dist. LEXIS 53888, at *8 (W.D. Tenn. 2015) (stating "the Court is not constrained to accept as truth conflicting pleadings that make no sense, or that would

render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely"). Plaintiff's allegation contradicts the plain terms of the 1984 Agreement, so her claim fails as a matter of law.

**H.      The notices of termination reasonably identified the grants being terminated.**

Plaintiff argues the copyright-terminations notices are invalid "because they incorrectly describe the transfer or grant Defendants purport to terminate as a 'Popular Songwriter Contract' instead of a 'Popular Songwriter Renewal Contract.'" (Doc. 36-1 ¶ 158(j).) Plaintiff contends that each notice had to include the verbatim title of Exhibit B to the 1984 Agreement, otherwise the termination is defective.[5] Plaintiff's claim fails as a matter of law because the notices of termination (1) correctly described the grants being terminated and (2), even if they did not, the notices still reasonably identified the rights being terminated.

First, Plaintiff's allegation that the notices described the grant as only a "Popular Songwriter's Contract," rather than a "Popular Songwriters Renewal Contract," contradicts the plain terms of the notice of termination Plaintiff has filed with the Court. (*See* Doc. 17-6 at PageID #: 380-81.) The first paragraph of the notice refers to the "Popular Songwriters Renewal Contract" and then defines that term as the "Popular Songwriter's Contract." (*Id.*) The notice thus contains the description that Plaintiff alleges is missing.

Moreover, the use of both terms in the notice was accurate because the 1984 Agreement used both terms to refer to Exhibit B. (Doc. 17-4 at PageID #: 346 ¶ 2; *id.* at PageID #: 350.) Using both terms—just as the 1984 Agreement did—left no doubt regarding the grant to which the termination applied.

---

[5] Ironically, in the PSAC Plaintiff inaccurately refers to the title of Exhibit B as a "Popular Songwriter Renewal Contract" (Doc. 36-1 ¶¶ 72 n. 28 &158(j)), even though Exhibit B is titled "Popular Songwriters Renewal Contract" (Doc. 17-4 at PageID #: 350).

Second, even if the notices had only used the term "Popular Songwriter Contract," that error would be harmless. *See* 37 C.F.R. § 201.10(e)(1); *see also Compendium of U.S. Copyright Office Practices, Third Edition* § 2310.12 (2021) ("Harmless errors in a notice of termination do not render the notice invalid.").

Whether the notices used the phrase "Popular Songwriter's Contract" or "Popular Songwriters Renewal Contract" did not materially affect the purpose of the notices: to give the affected parties notice of which rights were being terminated. No one reading the notices of termination could reasonably be confused about the grants being terminated. The notice attached Plaintiff filed with the Court refers to "all right title and interest" in the musical composition transferred pursuant to the contract "between Jay Livingston Music and Jay Livingston dated July 15, 1984 and the amendment thereto dated May 18, 2000." (Doc. 17-6 at PageID #: 381.)

The copyright-termination notices reasonably identified the grant being terminated, and any alleged error was harmless. Plaintiff has therefore failed to state a claim upon which relief can be granted.

**III.     Plaintiff would not be entitled to the payment of royalties after termination.**

Finally, Plaintiff claims that, even if the copyright-termination notices were valid, they do not "terminate Plaintiff's right to share in, collect and receive songwriter's royalties as a beneficiary of" Jay's trusts or have any "impact of any type or kind on Plaintiff's right to share in, collect and receive royalties emanating from the exploitation of the song catalog of [JLM]." (Doc. 36-1 ¶ 158(dn.) Plaintiff's argument has no merit, however, because only Travilyn would own the copyrights after termination.

Under the Copyright Act, Travilyn owned the "entire termination interest" for each composition because she was Jay's only surviving child. *See* 17 U.S.C. § 203(a)(2)(B) ("Where

an author is dead, his or her termination interest is owned, and may be exercised, as follows: . . . The author's surviving children, and the surviving children of any dead child of the author, own the author's entire termination interest unless there is a widow or widower, in which case the ownership of one-half of the author's interest is divided among them."); 3 NIMMER ON COPYRIGHT § 11.03[A][2][a](1) (2022) ("If there is no surviving spouse, the children own the entire termination interest, equally divided among them.").

Because Travilyn owned the entire termination interest, she would own the entire copyright in each musical composition as a result of termination. *See id.* § 203(b) ("Upon the effective date of termination, all rights under this title that were covered by the terminated grants revert to the author, authors, and other persons owning termination interests under clauses (1) and (2) of subsection (a) . . . ."); 3 NIMMER ON COPYRIGHT § 11.04 (2022) ("Anyone who had the right to terminate a given grant, not just someone who in fact joined in requesting the termination, automatically owns the rights thus terminated to the extent of her proportionate share of the termination interest.").

Thus, after termination, only Travilyn—*not* JLM—would own the copyrights in the compositions. Unlike JLM, Travilyn would have no legal obligation to pay Plaintiff anything for exploiting the musical compositions pursuant to the AGAC Agreements. Any royalties or other money derived from Travilyn's exploitation of the copyrights would flow directly to Travilyn.[6]

---

[6] Plaintiff alleges that upon termination "Travilyn subsequently assigned certain copyright interests back to JLM." (Doc. 36-1 ¶ 139.) To the extent such assignments back to JLM occurred, Defendants do not dispute that Plaintiff retained her right to right to receive royalties from the exploitation of the musical compositions as a beneficiary of her grandfather's trusts. Because there is no controversy in that regard, Plaintiff fails to state a claim for declaratory judgment. *See Robin Prods. Co. v. Tomecek*, 465 F.2d 1193, 1198 (6th Cir. 1972) ("The scope of relief under the Declaratory Judgment Act extends only to cases 'of actual controversy', and thus the finding of absence of actual controversy would appear to justify a motion to dismiss under Rule 12(b)(6)."). Defendants also do not dispute that the terminations do not affect the grant with respect to

## IV. Plaintiff is not entitled to a constructive trust.

Plaintiff "requests a constructive trust be placed upon all of the assets of JLM." (Doc. 36-1 at ¶ 158(m). A constructive trust is not a cause of action; rather, it is a "judicially crated remedy." *United States v. Union Planters Bank Checking Account No. XXXXXX1839 in the Name World Money Club*, 2006 U.S. Dist. LEXIS 37844, at *5 (E.D. Tenn. June 7, 2006 (citing *Healy v. Comm'r*, 345 U.S. 278, 282 (1953)). Because Plaintiff is not entitled to any declaratory relief, for the reasons set forth above, she is also not entitled to the remedy of a constructive trust.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion for leave to the PSAC as futile.

Respectfully submitted,

s/ Tim Warnock
Tim Warnock (12844)
Keane Barger (33196)
LOEB & LOEB LLP
35 Music Square East, Suite 310
Nashville, TN 37203
(615) 749-8300
(615) 749-8308 (facsimile)
twarnock@loeb.com
kbarger@loeb.com

*Counsel for Defendants*

---

exploitations "outside the United States." (Doc. 36-1 ¶ 158(m).) Thus, there is no justiciable controversy with respect to foreign royalties, either. *See Robin*, 465 F.2d at 1198.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via the Court's ECF filing system upon:

Jonathan M. Wolf
JONATHAN M. WOLF, PLLC
1515 Demonbreun Street, Suite 1408
Nashville, TN 37203
jonathan@wolf.lawyer

*Counsel for Plaintiff*

this the 19th day of January, 2023.

                                                             s/ Tim Warnock