IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TAMMY LIVINGSTON, individually, and as Beneficiary and Co-Trustee of the Livingston Music Interest Trust, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 3:22-cv-00532 ) |
| JAY LIVINGSTON MUSIC, INC., a Tennessee corporation; and TRAVILYN LIVINGSTON, in her individual capacity, | ) Chief Judge Crenshaw ) Magistrate Judge Newbern ) ) |
| Defendants. | ) |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
<u>**SECOND AMENDED VERIFIED COMPLAINT**</u>

**I.      The copyright-termination notices are valid.**

    **A.      The grants did not terminate 28 years after their execution.**

Plaintiff argues that that the 2000 Agreement did not extend the term of the grants because Jay entered into the contract "individually," rather than expressly as a "trustee." (Doc. 51 at 6.) The California probate petition Plaintiff previously filed, however, definitively established that Jay's contracts were deemed to have validly extended the term of the grants regardless of whether he signed expressly as a trustee. (Doc. 24-1 at 19 ¶¶ 69-71; Doc. 280-1 at 3 ¶ 12.)[1]

    **B.      The 2000 Agreement validly extended the terms of the copyright assignments.**

Plaintiff asks the Court to ignore the California probate order because it supposedly made

---

[1] Relying on documents outside the pleadings, Plaintiff claims that the 2000 Agreement did not include, and thus did not extend the term of, a single song titled "What a Deal." But whether that song was included in the 2000 Agreement is irrelevant because the Assignment of Copyright filed by Plaintiff provides that Jay assigned "any renewals or extensions" of the copyright. (Doc. 52-1 at PageID #: 969.) Thus, the assignment of "What a Deal" did not terminate after just 28 years.

1

"no finding regarding the capacity" of Jay to execute contracts. (Doc. 51 at 7-9.) Plaintiff's argument contradicts the California probate petition, which made clear that the purpose of the petition was to foreclose the very argument Plaintiff makes here: that Jay had somehow failed to transfer his rights by not "specifically sign[ing] . . . in his capacity as Trustee." (Doc. 24-1 at ¶¶ 69-71.) Plaintiff's final argument is that the California probate order established ownership only as of 2003 but not 2023. (Doc. 51 at 8.) This is frivolous; property continues to be owned by the same person or entity until it is transferred.

      C.    **The notices of termination reasonably identified the date of publication.**

Plaintiff cites no authority (Doc. 51 at 8-9) rebutting the rule—codified in the Copyright Act—that when a work was initially published prior to the date of the grant, the date of publication "under the grant" is deemed to be the date of the grant, *see* 17 U.S.C. § 203(a)(3); *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 33 (2d Cir. 2015). That is the end of the analysis; the notices correctly identified the date of publication "under the grant." Plaintiff also cites no authority holding that incorrectly identifying the date of publication would be anything more than harmless. (Doc. 51 at 8-9.)[2] Here, whether the calculation is 35 years from the date of execution of the grant or 35 years from publication "under the grant" (when that date is deemed to be the date of the execution of the grant) makes no difference since it results in exactly the same date.

      D.    **The notices of termination contain a complete and unambiguous statement of the facts required to be contained in the notice.**

Plaintiff fails to cite authority establishing that 37 C.F.R. § 201.10(b)(3) does anything

---

[2] Again relying on documents outside the pleadings, Plaintiff claims that the stated date of publication for "Give It All You Got" was inaccurate because Jay later executed an assignment dated January 1, 1987 for the same song. (Doc. 51 at 9; *see* Doc. 52-3 at PageID #: 995-98.) There was no inaccuracy because the 1987 assignment pertained to a derivative version of the song. Regardless, the 1987 assignment is irrelevant because the 1984 assignment covered the original work and any "adaptations, arrangements and versions thereof." (*Id.* at PageID #: 995 ¶ 1.)

more than prohibit a party from making reference to another document in lieu of setting forth the individual pieces of information required to be listed in the preceding subsections of the regulation. (*See* Doc. 51 at 9-10 (failing to acknowledge or rebut *Siegel v. Warner Bros. Entm't*, 690 F. Supp. 2d 1048, 1063 (C.D. Cal. 2009).) Her argument thus fails as a matter of law.

### E. The 2000 Agreement amended the AGAC Agreements, so it was not a "new" grant.

Plaintiff's arguments for why the 2000 Agreement "constituted a new grant" are not clear. (*See* Doc. 51 at 10.) Plaintiff appears to restate her argument that the 2000 Agreement did not validly transfer any rights because Jay did not expressly sign in his capacity as trustee. (*Id.*) That argument (rebutted above) has no logical connection to whether the AGAC Agreements were "new" grants. Plaintiff next appears to argue that the 2000 Agreement was a "new" grant because "Jay Livingston Music" is a different entity than "Jay Livingston Music, Inc." As Plaintiff has admitted, though, Jay Livingston Music, Inc. is the legal successor to Jay Livingston Music, and thus stands in the same shoes as Jay Livingston Music with respect to the AGAC Agreements. (Doc. 17 ¶ 41 n.9.) Moreover, Jay Livingston Music was not a "debtor" or "creditor" under the AGAC Agreements as would be required to establish a novation under California law. (*See* Doc. 51 at 10 (citing Cal. Civ. Code § 1531).) Jay Livingston Music was, instead, merely an assignee of certain copyright assignments.

### F. Each AGAC Agreement was a grant by the author and thus capable of termination.

It is undisputed that Jay was the "author" of the works. Jay signed the 2000 Agreement, so the document was "executed by the author" as required by the Copyright Act. 17 U.S.C. § 203(a).

### G. Jay assigned the copyrights to JLM, not to himself.

Plaintiff claims a "question of fact remains" as to whether Travilyn owned JLM at the time

Jay Livingston contracted with it. (Doc. 51 at 11-12.) On the face of the pleadings, however, there is no "question of fact." First, the 1984 Agreement states that "TRAVILYN LIVINGSTON is the sole owner of the music publishing company known as JAY LIVINGSTON MUSIC." (Doc. 39-4 at PageID #: 806 ¶ 2.) Second, the signature block for Jay Livingston Music designates "TRAVILYN LIVINGSTON" as the signor. (*Id.*) Third, the document incorporated in Plaintiff's pleadings contradicts her allegation, so her claim fails as a matter of law. *See, e.g.*, *Jones v. Select Portfolio Servicing, Inc.,* 672 Fed. App'x 526, 531 (6th Cir. 2016).

To attempt to manufacture a "fact issue" (which is itself an anomaly at this stage of the proceedings), Plaintiff cites two documents outside the pleadings: (1) a 2002 declaration from Jay's former lawyer and (2) a 1985 newspaper article. (Docs. 24-2 & 24-3.) Neither document changes the futility of Plaintiff's claim. First, these extrinsic materials may not be considered under Rule 12(b)(6). *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009). Second, the documents consist of inadmissible hearsay. *See* Fed R. Evid. 801(a).[3] Third, the documents do not even support Plaintiff's argument that Jay owned JLM. The declaration states "all of Jay's copyrights and publisher royalty rights had been effectively sold." (Doc. 24-2 at 2.) The newspaper reporter's informal description of JLM as "his [Jay's] music publishing company" says nothing about the legal ownership of JLM. (Doc. 24-3.)

### H. The notices of termination reasonably identified the grants being terminated.

In moving to dismiss, Defendants explained that the notices of termination reasonably identified the grants being terminated. (*See* Doc. 51 at 13-14.) Plaintiff's response does not address

---

[3] The declaration recites out-of-court statements allegedly made by Jay to his lawyer. The newspaper article relies on statements allegedly made by Jay to a reporter. *See Davis v. Detroit Pub. Sch. Cmty. Dist.*, 835 F. App'x 18, 22 (6th Cir. 2020) (holding "newspaper articles" were "inadmissible hearsay").

the arguments raised by Defendants (Doc. 51 at 13-14), so Plaintiff has effectively abandoned her claim and conceded that it fails as a matter of law, *see Blackshaw v. MSC Indus. Direct Co.*, 2013 U.S. Dist. LEXIS 100520, at *9 (E.D. Tenn. July 18, 2013) ("It is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (quotation omitted)).[4]

Plaintiff's reliance on *Mtume v. Sony Music Entm't*, 408 F. Supp. 3d 471 (S.D.N.Y. 2019) is misplaced. The alleged termination notice errors in that case were unique to "gap grants," i.e. works "transferred and/or assigned by an agreement dated before January 1, 1978 but were not created until after this date." *Id.* at 475.

## II.     Plaintiff would not be entitled to the payment of royalties after termination.

Plaintiff seeks a declaration that, even if the copyright-termination notices are valid, they do not "terminate Plaintiff's right to share in, collect and receive songwriter's royalties as a beneficiary of" Jay's trusts. (Doc. 45 ¶ 158(d).) In moving to dismiss this claim, Defendants explained that Plaintiff's claim failed because only Travilyn—*not* JLM—would own the copyrights in the compositions after termination under 17 U.S.C. § 203. (Doc. 20 at 10-12.) Plaintiff's response does not dispute, and therefore effectively concedes, this point. (*See* Doc. 51 at 14-16.)

Plaintiff instead argues that if Travilyn "assigned certain copyright interests back to" JLM, then JLM "would remain obligated" under state law to pay Plaintiff for the exploitation of those

---

[4] The only argument raised by Plaintiff—and which relies entirely on documents outside the pleadings—is that the stated date of publication for "Give It All You Got" was allegedly inaccurate because of a later assignment. (Doc. 51 at 9; *see* Doc. 52-3 at PageID #: 995-98.) As explained above in footnote two, Plaintiff's claim is false and, in any event, legally irrelevant.

musical compositions pursuant to the 2000 Agreement. (Doc. 24 at 16.) To the extent such reassignments occurred, Defendants do not, and have never, disputed that (1) JLM has a duty to pay[5] and (2) Plaintiff has a contractual right to receive royalties from the exploitation of those musical compositions by JLM. Because there is no controversy in that regard, Plaintiff fails to state a claim for declaratory judgment. *See Robin Prods. Co. v. Tomecek*, 465 F.2d 1193, 1198 (6th Cir. 1972).

### III.   Plaintiff is not entitled to the remedy of a constructive trust.

Plaintiff's claims for declaratory relief fail for the reasons described above, so she is not entitled to the remedy of a constructive trust.

Respectfully submitted,

s/ Tim Warnock
Tim Warnock (12844)
Keane Barger (33196)
LOEB & LOEB LLP
35 Music Square East, Suite 310
Nashville, TN 37203
(615) 749-8300
(615) 749-8308 (facsimile)
twarnock@loeb.com
kbarger@loeb.com

*Counsel for Defendants*

---

[5] Defendants have not made a "cute" distinction between their duty to "pay" or Plaintiff's right to "receive." (Doc. 51 at 16-17.) Whatever semantic significance Plaintiff attributes to those words, Defendants do not dispute either duty with respect to reassigned musical compositions.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via the Court's ECF filing system upon:

Jonathan M. Wolf
JONATHAN M. WOLF, PLLC
1515 Demonbreun Street, Suite 1408
Nashville, TN 37203
jonathan@wolf.lawyer

*Counsel for Plaintiff*

this the 10th day of May, 2023.

                                                                s/ Tim Warnock

7

Case 3:22-cv-00532   Document 55   Filed 05/10/23   Page 7 of 7 PageID #: 1025