**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **TAMMY LIVINGSTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:22-cv-00532** |
| | ) | |
| **JAY LIVINGSTON MUSIC, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

Before the Court is the Report and Recommendation ("R&R") by Magistrate Judge Luke A. Evans (Doc. No. 109) recommending that the Court grant the motion for attorney's fees filed by Jay Livingston Music, Inc. ("JLM") and Travilyn Livingston ("Travilyn") (Doc. No. 98) and award $385,979.05 in attorney's fees. Tammy Livingston ("Tammy") filed objections to the R&R (Doc. No. 110), and Defendants responded (Doc. No. 111). For the reasons below, the Court will adopt the R&R in part as modified by this Memorandum Opinion and grant in part and deny in part the motion.

## I. Factual and Procedural Background

The Court's prior Memorandum Opinion, the Sixth Circuit's opinion, and the R&R recount the history necessary to resolve this motion. (Doc. Nos. 79, 96, 109). In short, Tammy challenged notices terminating grants of her grandfather Jay Livingston's copyrights. She sought a declaration that the notices were invalid under § 203 of the Copyright Act or, alternatively, that she remained entitled to songwriter royalties following termination. The Court dismissed her Second Amended Verified Complaint on February 21, 2024, and the Sixth Circuit affirmed on July 7, 2025. Livingston v. Jay Livingston Music, Inc., No. 3:22-CV-00532, 2024 WL 713780 (M.D. Tenn. Feb. 21, 2024), aff'd, 142 F.4th 433 (6th Cir. 2025).

Defendants renewed their motion for attorney's fees, seeking compensation for defending this case and the appeal. (Doc. No. 98). The Magistrate Judge concluded that Tammy's legal positions and litigation conduct were objectively unreasonable, that compensation and deterrence favored an award, and that the requested amount was reasonable. The Magistrate Judge recommended granting the motion in full and awarding Defendants $385,979.05 in attorney's fees. (Doc. No. 109 at 4–16).

## II. Legal Standard

The Copyright Act authorizes the Court, in its discretion, to award "a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. The statute grants courts wide latitude to award attorney's fees based on the totality of circumstances. Kirtsaeng v. John Wiley & Sons, Inc., 579 U.S. 197, 203 (2016). Several nonexclusive factors guide the Court's decision, including "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence." Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994). Objective reasonableness receives substantial weight, and the Court retains discretion to award fees after considering the other factors. Kirtsaeng, 579 U.S. at 208–10. The party seeking fees bears the burden of establishing the reasonableness of the requested amount. Yellowbook Inc. v. Brandeberry, 708 F.3d 837, 848 (6th Cir. 2013). The Court maintains the discretion to reduce the award based on equitable concerns. Coles v. Wonder, 283 F.3d 798, 803–04 (6th Cir. 2002).

## III. Analysis

Tammy objects to the R&R on four grounds. First, she argues that the Magistrate Judge treated her unsuccessful claims as objectively unreasonable without adequately considering the difficult legal questions and the information available to her. (Doc. No. 110 at 4–11). Second, she argues that the Magistrate Judge found her litigation conduct unreasonable while giving

insufficient weight to Defendants' conduct. (Id. at 11–14). Third, she argues that the Magistrate Judge failed to meaningfully consider her legitimate motivation and financial circumstances. (Id. at 15–18). Fourth, she challenges the reasonableness of the requested fees, including the hourly rates, overlapping work by two firms, block billing, and specific disputed entries. (Id. at 18–23).

Defendants respond that the Sixth Circuit affirmed the dismissal based on defects in Tammy's claims that were apparent from the pleadings. (Doc. No. 111 at 11–12). They argue that her repeated amendments and discovery disputes increased their expenses. (Id. at 12–14). They also argue that their declarations and billing records support the reasonableness of the requested fees. (Id. at 14–16).

The Court reviews de novo the portions of the R&R to which Tammy specifically objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

A. Objective Reasonableness of Tammy's Legal Positions

The Magistrate Judge found Tammy's claims objectively unreasonable and frivolous because they contradicted documents before the Court, sought to relitigate an issue resolved by the California probate court, and failed to satisfy basic pleading requirements. (Doc. No. 109 at 4–7). The Magistrate Judge also rejected Tammy's reliance on the case's complexity because this Court and the Sixth Circuit resolved the issues in Defendants' favor. (Id. at 6–7).

Tammy objects that the R&R substitutes the outcome of the case for an assessment of whether her positions were reasonable when advanced. She relies on the late production of the "Show Cause Assignment," the limited language of the probate order, and cases recognizing that unsuccessful positions in difficult copyright disputes may be reasonable. (Doc. No. 110 at 4–11). Defendants respond that the Sixth Circuit affirmed on grounds independent of the assignment and rejected Tammy's attempt to revisit the probate order. (Doc. No. 111 at 11–12).

The Court agrees with the Magistrate Judge that several of Tammy's positions were objectively unreasonable. The Sixth Circuit rejected Tammy's claims for reasons independent of the Show Cause Assignment and based on information available to Tammy when she pursued them. See Livingston v. Jay Livingston Music, Inc., 142 F.4th 433, 439–43 (6th Cir. 2025). First, the Sixth Circuit rejected Tammy's theory that the Family Trust owned the copyrights because Jay had failed to validly extend the popular songwriters agreements. Tammy argues that the probate order did not expressly decide whether Jay signed the May 2000 Agreement in his individual or trustee capacity. True. But the Sixth Circuit held that Tammy's ownership claim was "identical" to the claim resolved by the probate order, which declared that the Family Trust held no copyright interests and that Jay Livingston Music, Inc. owned them. Id. at 440–41. Thus, even if the probate order did not expressly analyze Jay's capacity, she pursued a theory that, according to the Sixth Circuit, the judgment precluded. See id. Tammy was a party to that case, and the probate order and underlying materials were available long before this case.

Second, Tammy's remaining theories suffered from pleading defects independent of any lack of information available to her at the time. Her argument that Jay transferred "Que Sera, Sera" to his own sole proprietorship depended on an ownership premise contradicted by the agreement attached to her own complaint. Id. at 441–42. Her argument that Travilyn had failed to prove ownership misplaced the pleading burden. Id. at 442. Her challenges to the other termination notices lacked specific factual allegations, which she attempted to raise in briefing. Id. at 442–43. The relative complex nature of the transactions does not account for those pleading deficiencies, especially after Tammy amended the complaint twice.

Finally, the Sixth Circuit rejected Tammy's claim to continued royalties because she identified neither a state-law cause of action nor a specific state-law right. Id. at 443. She asserted

only that some unspecified aspect of state law entitled her to royalties under the terminated agreements. Id. The Sixth Circuit held that this "barebones" allegation failed to state a claim under Rule 12(b)(6). Id. That holding did not depend on the Show Cause Assignment or any information that was unavailable to Tammy at the time of pleading.

With that said, the Court agrees with Tammy that this case presented difficult questions. The interaction among copyright grants, trust instruments, and probate proceedings required considerable time and attention. Tammy correctly argues that the Court should consider the case's complexity. See, e.g., Everly v. Everly, No. 3:17-cv-01440, 2019 WL 1470603, at *4 (M.D. Tenn. Apr. 3, 2019). The Court will do so in determining a reasonable award.

Even so, the defects identified above support a finding of objective unreasonableness. The Court will overrule Tammy's first objection to the finding of objective unreasonableness and adopt the Magistrate Judge's finding of objective unreasonableness.

B. Reasonableness of the Parties' Conduct

The Magistrate Judge concluded that Tammy's unreasonable litigation conduct also favored fees, citing her successive amended complaints, continued pleading deficiencies, and contribution to discovery disputes. The Magistrate Judge found that such conduct prolonged the case. (Doc. No. 109 at 7–9).

Tammy objects that her conduct was reasonable in light of Defendants' failure to timely disclose relevant documents, particularly the Show Cause Assignment. (Doc. No. 110 at 11–15). Defendants respond that she identifies no specific discovery request or motion to compel requiring its production, that her claims failed independently of it, and that she fails to justify her repeated pleading and discovery practices. (Doc. No. 111 at 12–13).

The Court agrees with the Magistrate Judge that Tammy's conduct generated unnecessary expense. Her successive amendments required renewed dismissal briefing while leaving

fundamental defects unresolved. Her final complaint remained a "morass of argument and legalese" that failed to supply facts necessary to support several claims. Livingston, 2024 WL 713780, at *3. Viewed together with her objectively unreasonable positions, that conduct supports a fee award.

Defendants' conduct, however, should also be considered. The Show Cause Assignment addressed the continuing royalty interests at issue, and earlier disclosure could have clarified the dispute. The Court will consider the timing of disclosure and the parties' shared contribution to discovery conflict in determining the award.

The Court will overrule Tammy's second objection to the finding that her litigation conduct supports fees and adopt that finding. The Court will give Defendants' contribution to the expense weight in determining the total award.

C. Motivation, Financial Circumstances, and the Purposes of the Copyright Act

The Magistrate Judge found that Defendants had failed to establish that Tammy had an improper motive in bringing this case and gave that factor no weight in favor of fees. (Doc. No. 109 at 9–10). The Magistrate Judge nevertheless concluded that compensation and deterrence favored an award because Tammy advanced unreasonable positions and needlessly prolonged the case. (Id. at 10–11). The Magistrate Judge rejected Tammy's financial-hardship argument because ability to pay is not an enumerated factor and she was represented by counsel. (Id. at 11).

Tammy objects that her effort to protect royalty income and fulfill her obligations as co-trustee was a proper motive to bring this case that weighs against fees. (Doc. No. 110 at 15–16). She also argues that the Magistrate Judge gave insufficient consideration to her financial circumstances and that an award of this size would threaten her livelihood and discourage reasonable copyright litigation. (Id. at 16–18). Defendants respond that the Magistrate Judge

properly weighed Tammy's motivation to bring the case and her financial circumstances. (Doc. No. 111 at 13–14).

The Court agrees with the Magistrate Judge that Tammy's motivation to bring the case neither weighs in favor of nor against fees. Tammy's stated reasons for seeking relief and Defendants' assertions of an improper purpose give this factor no weight in either direction. The Court will overrule Tammy's objection and adopt that portion of the R&R.

The Court, however, agrees with Tammy that her financial circumstances warrant consideration. The Sixth Circuit permits consideration of relative resources insofar as they bear on encouraging reasonable copyright litigation and furthering the Copyright Act's purposes. See Bridgeport Music, Inc. v. Sony Music Ent., Inc., 114 F. App'x 645, 652–53 (6th Cir. 2004). Tammy identifies her dependence on royalty income, limited employment prospects, and substantial medical expenses. (Doc. No. 110 at 16–17). The Court considers those asserted hardships in deciding what amount of fees would advance the Act's purposes. See id.

The Court will sustain Tammy's third objection to the extent she seeks consideration of her financial circumstances. Considering those circumstances together with the findings above, the Court agrees with the Magistrate Judge that fees are warranted and turns to the amount.

D. Reasonableness of the Requested Fees

The Magistrate Judge found that Defendants' requested rates were reasonable and that their billing records were sufficiently detailed to establish that defense counsel reasonably expended the hours billed. (Doc. No. 109 at 11–15).

Tammy objects that the R&R fails to address her annotated invoices, specific disputed entries, and proposed alternative calculation of $128,559.08. (Doc. No. 110 at 18–20). She challenges defense counsel's rates, repeated review by several attorneys, and block billing. (Id. at 20–23). Defendants respond that their declarations support the rates, consultation among counsel

was necessary in this case to promote efficiency, and that the billing descriptions are sufficient even if block-billed. (Doc. No. 111 at 14–16).

Defendants employed two firms. Loeb & Loeb LLP ("Loeb") served as litigation counsel and handled the defense of this action and the appeal. (Doc. No. 100 ¶¶ 1, 5). Eisner LLP ("Eisner") served as Defendants' transactional counsel. Eisner had represented Defendants for decades, handled their copyright matters, and prepared the termination notices that formed the basis of Tammy's claims. (Id. ¶¶ 2, 19–20; Doc. No. 101 ¶¶ 1–2). Defendants contend that Loeb's copyright-litigation experience and Eisner's historical knowledge of the underlying transactions justified the firms' involvement and the hours billed. (Doc. No. 111 at 14–16).

The Court agrees with Tammy that Defendants' requested fees require closer review. Defendants bear the burden of establishing the reasonableness of both their rates and their hours. Yellowbook, 708 F.3d at 848. Defendants' declarations in support of their motion report the following hours, effective hourly rates, and fees. (Doc. No. 100 ¶ 17; Doc. No. 101 ¶ 13).

| **Attorney** | **Firm** | **Hours** | **Effective hourly rate** | **Requested fees** |
|---|---|---|---|---|
| Tim Warnock | Loeb | 231.2 | $500.92 | $115,813.80 |
| Keane Barger | Loeb | 210.8 | $493.28 | $103,985.00 |
| Owen Sloane | Eisner | 166.5 | $650.00 | $108,225.00 |
| Courtney Dillaplain | Eisner | 85.0 | $679.15 | $57,727.75 |
| Jeremiah Reynolds | Eisner | 2.75 | $810.00 | $2,227.50 |
| **Total reported** | | **696.25** | | **$387,979.05** |

Loeb requests $219,798.80 after courtesy discounts, and Eisner requests $166,180.25,[1] for a total of $385,979.05. (Doc. No. 100 ¶ 17; Doc. No. 101 ¶ 13).

[1] The Court notes that Eisner's individual fee figures exceed its stated request by $2,000. The Court uses the lower requested amount.

The Court begins with the lodestar—the number of hours reasonably expended multiplied by a reasonable hourly rate. Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 551–52 (6th Cir. 2008). Start with defense counsel's requested rates. The Magistrate Judge found Loeb's rates reasonable based on Warnock's experience, the market information in his declaration, and the Court's familiarity with rates charged for comparable work in this district. (Doc. No. 109 at 12–13). The Court adopts that finding. Warnock has practiced copyright and intellectual-property litigation for more than three decades, and the declaration supports the conclusion that Loeb's rates are commensurate with or below rates charged by comparable Nashville firms. (Doc. No. 100 ¶¶ 7–13).

The Magistrate Judge likewise found Eisner's rates reasonable. (Doc. No. 109 at 13–14). The Court adopts that finding as well. Eisner represented Defendants for decades and had firsthand knowledge of the copyright grants, the underlying transactions, and the termination notices at issue. (Doc. No. 100 ¶ 20; Doc. No. 101 ¶¶ 4–8). Sloane's declaration establishes substantial experience in entertainment, music publishing, and copyright matters. (Doc. No. 101 ¶¶ 4–8). Those circumstances support Eisner's rates.

Defendants' requested hours, however, warrant a reduction to the total award. The Court agrees with Defendants that block billing is permissible when the descriptions adequately identify the work performed. See, e.g., Smith v. Serv. Master Corp., 592 F. App'x 363, 371 (6th Cir. 2014) ("[T]his court has held that so long as the description of the work performed is adequate, block-billing can be sufficient."). But the Court finds certain entries in defense counsel's billing records problematic. Some entries, for example, reflect extensive overlap in attorney review among attorneys from both firms. Eisner's September 2022 entries show Sloane and Dillaplain separately reviewing the motion to dismiss, revised drafts, and related correspondence while Loeb attorneys

prepared and revised the motion. (Doc. No. 100-5 at 10; Doc. No. 101-1 at 8). Likewise, Loeb's February 2024 entries record Barger's drafting and revising the response to the order to show cause, Warnock's review, and extensive review of email correspondence and conferences concerning that response. (Doc. No. 100-5 at 60). Eisner's entries then record Sloane's and Dillaplain's repeated review of the same response and supporting declaration, along with additional conferences and correspondence. (Doc. No. 101-1 at 57). The records do not explain why both Eisner attorneys needed to perform overlapping review of work being handled by Loeb, Defendants' litigation counsel.

Other entries are too vague for the Court to assess. Sloane's August 4 and 5 entries describe time only as "email CAD" and "email CAD re: assignment," while the August 9 entry describes time as "review randy email re: Shirley; email CAD." (Doc. No. 101-1 at 5). Likewise, Sloane's January 17 and 18, 2023 entries report a half hour for "email CAD" and a half hour for "emails re: motion to dismiss." (Id. at 18). Those entries do not identify the substance of the work or permit the Court to determine whether it duplicated Dillaplain's time.

Tammy also objects to $4,371.25 in charges involving estate assignments, arbitration, potential confidentiality protections, and redactions or unexplained adjustments. (Doc. No. 110 at 19–20, 22). Defendants respond that work concerning a confidentiality agreement or protective order may be necessary even when no protective order is ultimately entered, and that related arbitration may affect litigation strategy. (Doc. No. 111 at 16). The Court agrees that those categories of work are not categorically unrecoverable. But Defendants' response does not establish the connection between the prelawsuit estate work and this litigation or explain the redacted and otherwise unclear charges. The Court accounts for those deficiencies in the overall reduction.

The Court turns from the individual billing entries to the equitable determination of the total award. The Court finds that reducing the Magistrate Judge's recommended award of $385,979.05 by 12%, or $46,317.49, to $339,661.56 would best advance the purposes of the Copyright Act. The Court has found that the case involved difficult copyright, trust, and preclusion issues, that both sides contributed—at least in part—to the expense of discovery and motion practice, and that Tammy's financial hardships warrant consideration. Those circumstances support a reduction, even though Defendants are entitled to compensation for the necessary work performed in defending the action and appeal. Tammy's request for a reduced award of $128,559.08, however, goes too far in the other direction. That calculation would eliminate roughly two-thirds of the total award and excludes too many hours that are supported by Defendants' declarations. A 12% reduction compensates Defendants for the necessary work performed while accounting for vague descriptions, overlapping work by two firms, the parties' shared responsibility for litigation expense, the complexity of the case, and Tammy's financial circumstances.

## IV. Conclusion

For the reasons above, Tammy's objections (Doc. No. 110) will be sustained in part and overruled in part, and the R&R (Doc. No. 109) will be adopted in part as modified by this Memorandum Opinion. Defendants' motion for attorney's fees (Doc. No. 98) will be granted in part and denied in part. Defendants will be awarded $339,661.56 in attorney's fees.

An appropriate order will enter.

WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE